DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Proposed Attorneys for
PAPPAS PIPING SERVICE, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-10033-MH |
| PAPPAS PIPING SERVICE, INC., | Chapter 11 |
| Debtor. | DEBTOR'S MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL TO CONFIRM THAT ITS SECURED CREDITOR IS ADEQUATELY PROTECTED; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF WILLIAM BUTLER, MIKE PAPPAS, AND JOSHUA TEEPLE IN SUPPORT |
| | Hearing:<br>Date: TO BE SET<br>Time: TO BE SET<br>Ctrm: TO BE SET<br>Place: 411 West Fourth Street<br>        Santa Ana, CA 92701 |

1  TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT

2  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED

3  PARTIES:

4      Debtor and Debtor-in-Possession, Papas Piping Service, Inc., ("Pappas" or "Debtor") in the

5  above-captioned case, files this motion for an order authorizing it to use cash collateral and

6  determining that its secured creditor is adequately protected ("Motion") and the declarations of

7  William Butler ("Butler Decl."), Mike Pappas ("Pappas Decl."), and Joshua Teeple ("Teeple Decl.")

8  (collectively, the "Declarations") in support.

9  **1.    Summary of Argument**

10     Debtor is a full-service design build piping company that specializes in commercial process

11  and other specialized piping that is used in critical infrastructure for commercial clients. Despite

12  decades of success, Debtor encountered cash flow issues after it relied on short term high interest

13  loans to fund its operations. The weekly draws from its operating account made it impossible for

14  Debtor to continue doing business, purchase materials, and pay its vendors. This Chapter 11 case

15  was filed to allow Debtor to maintain operations, maximize the value of its assets, and reorganize its

16  liabilities under a proposed Chapter 11 Plan of reorganization. Critically, Debtor is pleased to say

17  that it is virtually current on all outstanding vendors (i.e., unsecured debt), and this instant matter

18  was filed to assist and/or restructure the existing secured debt.

19     Debtor requires the use of cash collateral in order to continue operating and pay its ongoing

20  expenses, including payroll, rent, utilities, and supplies. As set forth in the Budget (as defined

21  below), Debtor will be able to make the monthly adequate protection payments to the Debtor's

22  senior secured lender, Live Oak (as defined below), and will be able to continue to operate. Thus,

23  Debtor asks for an order permitting it to use cash collateral in order to operate in the ordinary course

24  of its business, including making the payments contemplated in the Budget.[1]

25  / / /

26

27  _____

28  [1] The Budget includes a line item for post-petition bankruptcy professional fees that will be segregated in a separate DIP account by the Debtor pending approval of interim fee requests.

## 2.    Background

### A.    Debtor's Operations

Debtor is a full-service design build piping company that specializes in commercial process and other specialized piping that is used in critical infrastructure for commercial clients. *See* Butler Decl., ¶7. Pappas was founded in 1988 by Mike Pappas ("Mr. Pappas") and Guillermo Silva Jr. ("Mr. Silva") who owned the company 50/50. *See* Pappas Decl., ¶6. Since its founding, the Debtor served a premier set of customers, including top-tier general contractors, leading property management firms, and direct clients within the commercial real estate market. *Id.*; *see also* Butler Decl., ¶7. The Debtor's expertise is essential to maintaining and developing critical infrastructure in one of the nation's most dynamic commercial zones, confirming our solid operational relevance and stability. *Id.*

In 2022, Mr. Butler purchased the Debtor from Mr. Pappas and Mr. Silva, when Mr. Pappas and Mr. Silva decided to retire. *See* Pappas Decl., ¶7; *see also* Butler Decl., ¶8. The structure of the sale in 2022, was that a holding company, Ormond Corporation, a Delaware Corporation ("Ormond Corp") purchased the shares of the Debtor. *Id*. Mr. Butler then became President, Chief Financial Officer and Secretary of the Debtor. *See* Butler Decl., ¶8. On April 28, 2022, Live Oak Banking Company ("Live Oak") financed Ormond Corp's original purchase of the Debtor. *Id.* As part of the loan, Live Oak has a second lien on William and Anne Butler's home. *Id.*

### B.    Debtor's Financial Difficulties and Bankruptcy Filing

Soon after Mr. Butler's acquisition of the Debtor in the early half of 2022, three separate factors came into play that dramatically changed the viability of the business and affected its operations. *See* Butler Decl., ¶¶10-14. First, shortly after the acquisition, Debtor lost nearly 40% of its revenue due to a loss of a large $3 million contract. *Id.*, ¶11. Second, the Debtor's traditional customers (general contractors and their clients) were reticent in moving forward with some projects due to the high-interest-rate environment and general macroeconomic uncertainty associated with the election cycle. *Id.* This created a temporary lag in new project awarding and initiation. *Id.*, ¶12. Third, the overall piping and general contractor industry is relatively close-knit and based on relationships. *Id.*, ¶13; *see also* Pappas Decl., ¶8. The transition from the decade's long ownership of

1  Mr. Pappas and Mr. Silva to Mr. Butler, in a post-covid world, was difficult, and included multiple

2  growing pains. *Id.*

3          As the three factors were intensifying, the Debtor borrowed funds to make payroll and

4  purchase materials, some from Mr. Butler and his family, and some in the form of high-interest rate

5  business loans from "MCA" style lenders. *See* Butler Decl., ¶14. While necessary at the time, the

6  expense of this debt structure added unsustainable pressure to the monthly cash flow. *Id.*

7                    **1.      Live Oak and Pre-Petition Negotiations**

8          In turn, the cash crunch on the Debtor resulted in the Debtor having difficulties maintaining

9  its obligation to Live Oak. *See* Butler Decl., ¶15. Mr. Butler and his wife tried to sell their home in

10  May 2025, and Live Oak approved a sales price of $5.8 million. *Id.* However, the Butlers had to

11  reduce the sales price to $5.5 million. *Id.* Live Oak would not approve the sale unless someone else

12  could pay Live Oak the $300,000 shortfall. *Id.* Unfortunately, the Butlers did not have $300,000 to

13  pay Live Oak for the shortfall, the sale of the home fell through. *Id.* The sale of the house would

14  have paid down the Live Oak loan by $1.2 million. *Id.*

15          As a result, on June 5, 2025, Debtor missed a payment to Live Oak. *See* Butler Decl., ¶16.

16  Shortly thereafter, "A Notice of Right to Cure Default" dated July 24, 2025, was issued by Live Oak

17  to Ormond Corp and the Debtor. *Id.* After months of emails and some discussion, Ormond Corp and

18  the Debtor finally ended up with a forbearance agreement dated September 9, 2025 ("Forbearance

19  Agreement"). *Id.* During discussions with Live Oak, Mr. Butler informed Live Oak that he and his

20  wife would have to file for personal bankruptcy because of a business debt owed to Bank of

21  America. *Id.*

22          As part of the Forbearance Agreement, Debtor paid Live Oak the first payment of $20,000 by

23  September 10, 2025, but Debtor missed the next payment of $5,000 due October 5, 2025. *See* Butler

24  Decl., ¶17. At this point, the Butlers again tried to sell their home to assist in paying down the Live

25  Oak secured debt. *Id.* The proposed sale was set to close on October 1, 2025, and was set to pay Live

26  Oak $1,589,098.99. *Id.* Again, sadly, the sale did not close because of a last minute judgment lien

27  recorded against the residence by Bank of America. *Id.*

28

MOTION FOR CASH COLLATERAL

1    As a result of the cancellation of the sale of the Butlers' residence, on October 23, 2025, Live

2  Oak sent a notice of default and acceleration of its note. *See* Butler Decl., ¶18. As soon as this notice

3  was received, Debtor paid the $5,000. *Id.* In order to continue ongoing negotiations, Live Oak

4  demanded that the Debtor had to pay the $73,914.23 in back interest as well, which the Debtor paid.

5  *Id.* Live Oak generally refused to speak or respond to emails after this payment. *Id.*

6    On November 24, 2025, Live Oak then demanded $350,000 as a good faith payment only in

7  order for Live Oak to "continue considering forbearance terms at its discretion." *See* Butler Decl.,

8  ¶19. The Debtor requested that if it paid $350,000, would Live Oak agree to reinstate the loan? *Id.*

9  The answer from Live Oak was no, it only allowed the Debtor to continue to negotiate with Live

10  Oak. *Id.*

## 2.    The Butler's personal bankruptcy

12    In order to sell their personal residence, the Butlers were forced to file their own personal

13  Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California, on

14  November 20, 2025, commencing Case No. 25-51814. *See* Butler Decl., ¶20. A true and correct

15  copy of this Court's webPACER Docket for Case No. 25-51814 is attached to the Butler Declaration

16  as **Exhibit "1."** The Butlers stated intention in their personal bankruptcy case is to sell their personal

17  residence, which will significantly reduce the principal balance owed to Live Oak. *Id.*

## C.    Mr. Pappas returns and Mr. Teeple is appointed as Chief Restructuring Officer

20    In light of the operational issues after purchasing the Debtor, Mr. Butler reached out to Mr.

21  Pappas to assist in turning around the Debtor's operations and cash flow issues. *See* Butler Decl.,

22  ¶22; *see also* Pappas Decl., ¶9. At that time, Mr. Pappas was living in South Carolina, but he cared

23  deeply about the viability of the business he founded, his former employees, and his former clients.

24  *See* Pappas Decl., ¶9. Mr. Pappas agreed to assist the Debtor in turning its operations around and

25  utilized his relationships to obtain advances from certain general contractors and/or clients to assist

26  in the working capital needs and operational cash flow. *Id.* As a result, the Debtor has fully paid off

27  one of the high interest MCA loans and is current on its ongoing vendor debt and the sole remaining

28

1  MCA loan. *Id.*; *see also* Butler Decl., ¶22. As of the date of filing, the only known unsecured

2  creditors (beyond trade vendors) are the seller's notes to Mr. Pappas and Mr. Silva. *Id.*[2]

3         Additionally, in light of the various circumstances, Mr. Butler's personal Chapter 11

4  bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to

5  retain Mr. Joshua Teeple of Grobstein Teeple LLP as its Chief Restructuring Officer. *See* Pappas

6  Decl., ¶11; *see also* Butler Decl., ¶23; *see also* Teeple Decl., ¶7. Mr. Teeple has many years of

7  experience as a fiduciary and is working with both Mr. Butler and Mr. Pappas to continue to turn the

8  Debtor's operations around. *See* Teeple Decl., ¶4.

9         Notwithstanding its past financial difficulties, the Debtor, Mr. Butler, Mr. Pappas, and Mr.

10  Teeple have begun to turn around operations. *See* Pappas Decl., ¶12; *see also* Butler Decl., ¶24; *see*

11  *also* Teeple Decl., ¶8. Since Mr. Pappas' return, the Debtor has lined up $11 million in specialty

12  project work that is now in the design phase. *Id*. This specialty work is slated to begin at the

13  beginning of 2026 and take the Debtor through 2026 and into 2027. *Id*. This work does not include

14  the everyday plumbing bids that the Debtor will handle throughout the year that are anticipated to

15  contribute another 6 million in revenue. *Id*. Accordingly, the Debtor believes that it has a viable

16  business that can be operated profitably going forward. *See* Pappas Decl., ¶13; *see also* Butler Decl.,

17  ¶25; *see also* Teeple Decl., ¶9.

18  ## D.    Bankruptcy Filing

19         In order to protect its business, continue paying its employees, and continue servicing its

20  customers, Debtor commenced this Chapter 11 bankruptcy case on January 6, 2026 ("Petition

21  Date").

22  ## E.    Debtor's Secured and Purportedly Secured Creditors

23         Debtor's UCC search revealed five active UCC-1 financing statements and two primary

24  secured creditors. *See* Teeple Decl., ¶10. A copy of the UCC search and copies of the UCC-1

25  financing statements are attached as **Exhibits "2," "3," "4," and "5,"** to the Teeple Decl. As

---

[2] Note, Mr. Pappas is not a statutory insider as defined by 11 U.S.C. § 101(31). Pappas Decl., ¶10.
Mr. Pappas is no longer an owner, director, officer, etc., of the Debtor, and is working as a W-2
employee for the Debtor to save the company's legacy. *Id*.

1  described above, the primary and first position secured lender is Live Oak. Live Oak appears to

2  assert liens on all of Debtor's assets. *Id.*, ¶12.[3] The other three UCC's are believed to be MCA's,

3  most of which have been paid off pre-petition, and the Debtor has obtained a settlement with the sole

4  remaining MCA (Pirs Capital LLC). *See* Butler Decl., ¶26; *see also* Teeple Decl., ¶13.[4] Indeed, one

5  of the MCA's have informed the Debtor that they will be issuing a termination of their lien. *Id.* The

6  other remaining UCC was filed by one of companies owned by Mr. Butler's father-in-law, for

7  loan(s) provided since the purchase of the Debtor. *See* Butler Decl., ¶27. The Debtor is informed that

8  Mr. Butler's father-in-law consents to the use of cash collateral, will defer payments until

9  confirmation of a proposed Chapter 11 Plan of Reorganization, and will work with the Debtor to

10  facilitate a consensual Chapter 11 Plan of Reorganization. *Id.*

11      To the extent that the Debtor's assets are Live Oak's cash collateral, Debtor seeks use of the

12  Live Oak's cash collateral. Attached as **Exhibit "6"** to the Teeple Declaration is Debtor's budget for

13  the first 13 weeks of this case ("Budget"). *See* Teeple Decl., ¶14, Ex. 6. As can be seen in the

14  Budget, the Debtor proposes to pay Live Oak its fully monthly payment as adequate protection

15  payments post-petition. *Id.* A true and correct copy of a recent monthly statement from Live Oak is

16  attached to the Teeple Declaration as **Exhibit "7."**

17      **F.    Other First Day Motions**

18      Concurrently with the filing of this Motion, Debtor is filing motions to (1) prohibit utility

19  providers from discontinuing services, (2) authorize payment of prepetition wages; (3) authorizing

20  use of a cash management system, payment procedure for subcontractors with lien rights, and

21  existing payroll provider. *See* Teeple Decl., ¶20.

22  / / /

23  / / /

24

25  [3] There are two UCC's recorded in favor of Great American Leasing Corporation, dated March 3,
26  2008, and July 1, 2010, the Debtor believes those UCC's are for certain leased equipment, and, that
the Debtor is current on the obligations and will continue to pay timely post-petition. *See* Butler
27  Decl., ¶26; *see also* Teeple Decl., ¶13.
[4] A true and correct copy of the Pirs Capital LLC settlement is attached to the Teeple Declaration as
28  Exhibit "8." The Budget includes a line item for the settlement with Pirs Capital LLC. *Id.*, Ex. 6, pg.
33.

**3.      Legal Argument**

**A.      The Court May Authorize Debtor to Use Cash Collateral**

A debtor may use, sell, or lease property of the estate in the ordinary course of business without court approval. 11 U.S.C. §363(c)(1). But a debtor "may not use, sell or lease cash collateral . . . unless: (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2); *see, e.g., Secured Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 440 (B.A.P. 9th Cir. 2004).

Here, Debtor seeks to use cash collateral to pay the expenses set forth in the Budget attached to this Motion. *See* Teeple Decl., ¶14, Ex. 6. Debtor submits that payment of the expenses shown in the Budget are within the ordinary course of Debtor's business and Debtor is projecting to be cash flow positive since the inception of this case. *Id*., ¶16, Ex. 6.

**B.      Secured Lenders are Adequately Protected**

To the extent that an entity has a valid security interest in the revenues generated by property of the estate, those revenues constitute "cash collateral" under §363(a). Debtor's use of cash collateral is governed by 11 U.S.C. § 363, which permits Debtor to use cash collateral only if: (a) each entity having an interest in the cash collateral consents to such use; or (b) the Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2).  In addition, 11 U.S.C. § 363(e) provides that, at the request of a party with an interest in the cash collateral, the Court shall prohibit or condition the use of cash collateral "as is necessary to provide adequate protection of any interest asserted in the cash collateral. 11 U.S.C. § 363(e).

The bankruptcy court can authorize use of said cash collateral under § 363(c)(2)(B) if the court determines that the debtor has provided "adequate protection" of the secured creditor's interest in the cash collateral. *See e.g., In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). Although the term "adequate protection" is not explicitly defined, §361 provides that when adequate protection is required, it may be provided by:

> (1) Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in

1   such property;

2   (2) providing to such entity an additional or replacement lien to the extent
3   that such … use … results in a decrease in the value of such entity's
    interest in such property; or
4
5   (3) Granting such other relief … as will result in the realizing by such
    entity of the indubitable equivalent in such entity's interest in such
6   property.

7   11 U.S.C. §361.

8       Section 361 does not define "interest in property" of which a secured creditor is entitled to

9   adequate protection. But the statute plainly provides that a qualifying interest demands protection

10  only to the extent that the use of the creditor's collateral will result in a decrease in the "value of

11  such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See e.g., First Federal Bank of*

12  *California v. Weinstein (In re Weinstein*), 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998); *In re Deico*

13  *Elecs., Inc*., 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992); *General Electric Mortgage Corp. v. South*

14  *Village, Inc. (In re South Village, Inc.*), 25 B.R. 987, 989-90 n.4 (Bankr. D. Utah 1982). The phrase

15  "value of such entity's interest" was addressed by the Supreme Court in *United Savings Assoc. of*

16  *Texas v. Timbers of Inwood Forest Assoc., Ltd*., 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740

17  (1988). *Timbers* instructs that a secured creditor is entitled to adequate protection only against the

18  diminution in the value of the collateral securing the creditor's allowed secured claim. *Id*. at 630

19  Therefore, where the value of the collateral is not diminishing by its use, sale, or lease, the creditor's

20  interest is adequately protected. Ultimately, what constitutes adequate protection must be decided on

21  a case-by-case basis. *See, In re Swedeland Dev. Group, Inc*., 16 F.3d 552, 564 (3d Cir. 1994);

22  *O'Connor*, 808 F.2d at 1396; *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc*., 300

23  B.R. 861, 865 (Bankr. W.D. Pa. 2003); *In re Columbia Gas Sys., Inc*., 146 B.R. 114 (Bankr. D. Del.

24  1992).

25      In other words, the Court may allow Debtor's use of cash collateral, whether consensual or

26  not, where such use maintains, preserves or enhances the value of the Debtor's estate. For example,

27  in *Stein v. FHA (In re Stein)*, 19 B.R. 458, 460 (Bankr. E. D. Pa. 1982), the court allowed a debtor to

28  use cash collateral where the secured party was under-secured, finding that the use of the cash

1  collateral was necessary to the continued operations of the debtor and the creditor's "secured

2  position can only be enhanced by the continued operation of the [debtor's business]." *Stein*, 19 B.R.

3  at 460; *see also, In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 826 (Bankr. S.D.N.Y. 1982)

4  (debtor permitted to use cash collateral generated from rental income to enhance the value of real

5  property and secured creditor's claim). Further, it is well-established that a bankruptcy court, where

6  possible, should resolve issues in favor of maximizing value for all creditors, not just the secured

7  creditors. *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir.

8  1987); *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).

9         Here, Debtor will provide adequate protection to Live Oak by making regular monthly

10 adequate protection payments, as set forth in the Budget. *See* Teeple Decl., ¶17; Ex. 6.  In addition,

11 to the extent that Debtor's use of its pre-petition accounts receivable results in a decrease in the

12 value of the Live Oaks's interest in the pre-petition accounts receivable, Debtor will provide Live

13 Oak with a replacement lien against its post-petition accounts receivable. *Id*., ¶18; *see also* 11 U.S.C.

14 § 361(2).

15         **C.       The proposed form of order – FRBP 4001(d)(1)(A)**

16         Rule 4001(d)(1)(A) of the Federal Rules of Bankruptcy Procedure requires that a motion for

17 the authority to use cash collateral or for approval of a cash collateral agreement be accompanied by

18 a proposed form of order. The proposed form of order is attached to this Motion as **Exhibit "8."**

19 Thus, the Debtor has complied with the FRBP.

20         **D.       Required Local Form F4001-2.STMT.FINANCE**

21         As required by Local Bankruptcy Rule 4001-2(a), the Debtor will be filing the required local

22 form for approval of the use of cash collateral.

23 **4.    Conclusion**

24         Debtor requests that the Court enter an order as follows:

25         (1)       granting the Motion;

26         (2)       authorizing, on an interim basis pending final hearing on notice to creditors, Debtor's

27 immediate use of any cash collateral;

28         (3)       determining that Live Oak is adequately protected with respect to the Live Oak;

MOTION FOR CASH COLLATERAL

1   (4)   setting a final hearing on this Motion; and

2   (5)   granting such further relief as the Court deems just and proper.

3

4  Dated: January 6, 2026                    MARSHACK HAYS WOOD LLP

5

6                                            By: _/s/ David A. Wood_____
                                                 DAVID A. WOOD,
7                                                MATTHEW W. GRIMSHAW
                                                 AARON E. DE LEEST
8                                                SARAH R. HASSELBERGER
                                                 Proposed Attorneys for
9                                                Pappas Piping Service Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Declaration of William Butler

I, WILLIAM BUTLER, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the President, Chief Financial Officer, and Secretary of the debtor, Pappas Piping Service, Inc. ("Debtor").

5.      I make this Declaration in support Debtor's Motion for Order Authorizing Use of Cash Collateral to Confirm that Its Secured Creditor is Adequately Protected ("Motion").

6.      All terms not defined herein are used as they are defined in the Motion.

7.      Debtor is a full-service design build piping company that specializes in commercial process and other specialized piping that is used in critical infrastructure for commercial clients. Since its founding, the Debtor served a premier set of customers, including top-tier general contractors, leading property management firms, and direct clients within the commercial real estate market. The Debtor's expertise is essential to maintaining and developing critical infrastructure in one of the nation's most dynamic commercial zones, confirming our solid operational relevance and stability.

8.      In 2022, I purchased the Debtor from Mr. Pappas and Mr. Silva, when Mr. Pappas and Mr. Silva decided to retire. The structure of the sale in 2022, was that, Ormond Corporation, a Delaware Corporation ("Ormond Corp") owned by the 401(k) of my wife and I, purchased the shares of the Debtor. I then became the President, Chief Financial Officer and Secretary of the Debtor.

9.      On April 28, 2022, Live Oak Banking Company ("Live Oak") financed Ormond Corp's original purchase of the Debtor. As part of the loan, Live Oak has a second lien on my and my wife, Anne Butler's, home.

10.      Soon after my acquisition of the Debtor in the early half of 2022, three separate factors came into play that dramatically changed the viability of the business and affected its

1   operations.

2       11.    First, shortly after the acquisition, Debtor lost nearly 40% of its revenue due to a loss

3   of a large $3 million contract.

4       12.    Second, the Debtor's traditional customers (general contractors and their clients) were

5   reticent in moving forward with some projects due to the high-interest-rate environment and general

6   macroeconomic uncertainty associated with the election cycle. This created a temporary lag in new

7   project awarding and initiation.

8       13.    Third, the overall piping and general contractor industry is relatively close-knit and

9   based on relationships. The transition from the decade's long ownership of Mr. Pappas and Mr. Silva

10  to me, in a post-covid world, was difficult, and included multiple growing pains.

11      14.    As the three factors were intensifying, the Debtor borrowed funds to make payroll

12  and purchase materials, some from me and my family, and some in the form of high interest rate

13  business loans from "MCA" style lenders. While necessary at the time, the expense of this debt

14  structure added unsustainable pressure to the monthly cash flow.

15      15.    In turn, the cash crunch on the Debtor resulted in the Debtor having difficulties

16  maintaining its obligation to Live Oak. My wife and I tried to sell our home in May 2025, and Live

17  Oak approved a sales price of $5.8 million. However, we had to reduce the sales price to $5.5

18  million. Live Oak would not approve the sale unless someone else could pay Live Oak the $300,000

19  shortfall. Unfortunately, we did not have $300,000 to pay Live Oak for the shortfall, the sale of the

20  home fell through. The sale of our house would have paid down the Live Oak loan by $1.2 million.

21      16.    As a result, on June 5, 2025, Debtor missed a payment to Live Oak. Shortly

22  thereafter, "A Notice of Right to Cure Default" dated July 24, 2025, was issued by Live Oak to

23  Ormond Corp and the Debtor. After months of emails and some discussion, Ormond Corp and the

24  Debtor finally ended up with a forbearance agreement dated September 9, 2025 ("Forbearance

25  Agreement"). During discussions with Live Oak, I informed Live Oak that my wife and I would

26  have to file for personal bankruptcy because of a business debt owed to Bank of America.

27      17.    As part of the Forbearance Agreement, Debtor paid Live Oak the first payment of

28  $20,000 by September 10, 2025, but Debtor missed the next payment of $5,000 due October 5, 2025.

At this point, my wife and I again tried to sell our home to assist in paying down the Live Oak secured debt. The proposed sale was set to close on October 1, 2025, and was set to pay Live Oak $1,589,098.99. Again, sadly, the sale did not close because of a last-minute judgment lien recorded against the residence by Bank of America.

18.     As a result of the cancellation of the sale of our residence, on October 23, 2025, Live Oak sent a notice of default and acceleration of its note. As soon as this notice was received, Debtor paid the $5,000. In order to continue ongoing negotiations, Live Oak demanded that the Debtor had to pay the $73,914.23 in back interest as well, which the Debtor paid. Live Oak generally refused to speak or respond to emails after this payment.

19.     On November 24, 2025, Live Oak then demanded $350,000 as a good faith payment only in order for Live Oak to "continue considering forbearance terms at its discretion." The Debtor requested that if it paid $350,000, would Live Oak agree to reinstate the loan?  The answer from Live Oak was no, it only allowed the Debtor to continue to negotiate with Live Oak.

20.     In order to sell our personal residence, my wife and I were forced to file our own personal Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California, on November 20, 2025, commencing Case No. 25-51814. We stated our intention in our personal bankruptcy case is to sell our personal residence, which will significantly reduce the principal balance owed to Live Oak.

21.     A true and correct copy of this Court's webPACER Docket for Case No. 25-51814 is attached here as **Exhibit "1."**

22.     In light of the operational issues after purchasing the Debtor, I reached out to Mr. Pappas to assist in turning around the Debtor's operations and cash flow issues. Mr. Pappas agreed to assist the Debtor in turning its operations around and utilized his relationships to obtain advances from certain general contractors and/or clients to assist in the working capital needs and operational cash flow. As a result, the Debtor has fully paid off one of the high interest MCA loans, and is current on its ongoing vendor debt and the sole remaining MCA loan. As of the date of filing, the only known unsecured creditors are the seller's notes to Mr. Pappas and Mr. Silva.

/ / /

23.     Additionally, in light of the various circumstances, my personal Chapter 11 bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to retain Mr. Joshua Teeple of Grobstein Teeple LLP as its Chief Restructuring Officer.

24.     Notwithstanding its past financial difficulties, the Debtor, Mr. Pappas, Mr. Teeple, and I have begun to turn around operations. Since Mr. Pappas' return, the Debtor has lined up $11 million in specialty project work that is now in the design phase. This specialty work is slated to begin at the end of 2025/beginning of 2026 and take the Debtor through 2026 and into 2027. This work does not include the everyday plumbing bids that the Debtor will handle throughout the year that is anticipated to contribute another 6 million in revenue.

25.     Accordingly, I believe that the Debtor has a viable business that can be operated profitably going forward.

26.     There are two UCC's recorded in favor of Great American Leasing Corporation, dated March 3, 2008, and July 1, 2010, the Debtor believes those UCC's are for certain leased equipment, and, that the Debtor is current on the obligations and will continue to pay timely post-petition. The other three UCC's are believed to be MCA's, most of which have been paid off pre-petition, and the Debtor has obtained a settlement with the sole remaining MCA (Pirs Capital LLC). Indeed, one of the MCA's have informed the Debtor that they will be issuing a termination of their lien.

27.     The other remaining UCC was filed by one of companies owned by my father-in-law, for loan(s) provided since the purchase of the Debtor. The Debtor is informed that my father-in-law consents to the use of cash collateral, will defer payments until confirmation of a proposed Chapter 11 Plan of Reorganization, and will work with the Debtor to facilitate a consensual Chapter 11 Plan of Reorganization.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 2, 2026.

WILLIAM BUTLER

MOTION FOR CASH COLLATERAL

# Declaration of Mike Pappas

I, MIKE PAPPAS, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I make this Declaration in support Debtor's Motion for Order Authorizing Use of Cash Collateral to Confirm that Its Secured Creditor is Adequately Protected ("Motion").

5.      All terms not defined herein are used as they are defined in the Motion.

6.      I founded the debtor, Pappas Piping Service, Inc. ("Debtor"), with Guillermo Silva Jr. ("Mr. Silva") in 1988. Mr. Silva and I previously owned the company 50/50. Since its founding, the Debtor served a premier set of customers, including top-tier general contractors, leading property management firms, and direct clients within the commercial real estate market. The Debtor's expertise is essential to maintaining and developing critical infrastructure in one of the nation's most dynamic commercial zones, confirming our solid operational relevance and stability.

7.      In 2022, Mr. Butler purchased the Debtor from me and Mr. Silva, when Mr. Silva and I decided to retire. The structure of the sale in 2022, was that a holding company, Ormond Corporation, a Delaware Corporation ("Ormond Corp") purchased the shares of the Debtor.

8.      The overall piping and general contractor industry is relatively close-knit and based on relationships. The transition from the decade's long ownership from me and Mr. Silva to Mr. Butler, in a post-covid world, was difficult, and included multiple growing pains.

9.      In light of the operational issues after purchasing the Debtor, Mr. Butler reached out to me to assist in turning around the Debtor's operations and cash flow issues. At that time, I was living in South Carolina, but I cared deeply about the viability of the business I founded, my former employees, and my former clients. I agreed to assist the Debtor in turning its operations around and utilized his relationships to obtain advances from certain general contractors and/or clients to assist in the working capital needs and operational cash flow. As a result, the Debtor

MOTION FOR CASH COLLATERAL

has fully paid off one of the high interest MCA loans, and is current on its ongoing vendor debt and the sole remaining MCA loan. As of the date of filing, the only known unsecured creditors are the seller's notes to me and Mr. Silva.

10.    I believe that I am not a statutory insider as defined by 11 U.S.C. § 101(31). I am no longer an owner, director, officer, etc., of the Debtor. I am working as a W-2 employee for the Debtor to save the company's legacy.

11.    Additionally, in light of the various circumstances, Mr. Butler's personal Chapter 11 bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to retain Mr. Joshua Teeple of Grobstein Teeple LLP as its Chief Restructuring Officer.

12.    Notwithstanding its past financial difficulties, the Debtor, Mr. Butler, Mr. Teeple, and I have begun to turn around operations. Since my return, the Debtor has lined up $11 million in specialty project work that is now in the design phase. This specialty work is slated to begin at the end of 2025/beginning of 2026 and take the Debtor through 2026 and into 2027. This work does not include the everyday plumbing bids that the Debtor will handle throughout the year that is anticipated to contribute another 6 million in revenue.

13.    Accordingly, I believe that the Debtor has a viable business that can be operated profitably going forward.


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 6, 2026.

MIKE PAPPAS

MOTION FOR CASH COLLATERAL

# Declaration of Joshua Teeple

I, JOSHUA TEEPLE, declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    The facts set forth below are true of my personal knowledge.

4.    I am the Chief Restructuring Officer for the debtor, Pappas Piping Service, Inc. ("Debtor"). I am also one of the founding partners of Grobstein Teeple LLP, an accounting and financial consulting firm.

5.    I make this Declaration in support Debtor's Motion for Order Authorizing Use of Cash Collateral to Confirm that Its Secured Creditor is Adequately Protected ("Motion").

6.    All terms not defined herein are used as they are defined in the Motion.

7.    In light of the various circumstances, Mr. Butler's personal Chapter 11 bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to retain me as its Chief Restructuring Officer.

8.    Notwithstanding its past financial difficulties, the Debtor, Mr. Butler, Mr. Pappas, and I have begun to turn around operations. Since Mr. Pappas's return, the Debtor has lined up $11 million in specialty project work that is now in the design phase. This specialty work is slated to begin at the beginning of 2026 and take the Debtor through 2026 and into 2027. This work does not include the everyday plumbing bids that the Debtor will handle throughout this year that is anticipated to contribute another 6 million in revenue.

9.    Accordingly, I believe that the Debtor has a viable business that can be operated profitably going forward.

10.    Debtor's UCC search revealed five active UCC-1 financing statements and two primary secured creditors.

11.    A copy of the UCC search and copies of the UCC-1 financing statements are attached here as **Exhibits "2," "3," "4," and "5."**

/ / /

12. As described in the Motion, the primary and first position secured lender is Live Oak. Live Oak appears to assert liens on all of Debtor's assets.

13. There are two UCC's recorded in favor of Great American Leasing Corporation, dated March 3, 2008, and July 1, 2010. The Debtor believes those UCC's are for certain leased equipment it is current on the obligations and will continue to pay timely post-petition. The other three UCC's are believed to be MCAs, most of which have been paid off pre-petition, and the Debtor has obtained a settlement with the sole remaining MCA (Pirs Capital LLC). Indeed, I am informed that one MCA's have informed the Debtor that they will be issuing a termination of their lien.

14. To the extent that the Debtor's assets are Live Oak's cash collateral, Debtor seeks use of the Live Oaks cash collateral as set forth in the Budget.

15. Attached here as **Exhibit "6"** is Debtor's budget for the first 13 weeks of this case ("Budget").

16. Debtor submits that payment of the expenses shown in the Budget are within the ordinary course of Debtor's business and Debtor is close to being cash flow positive during the term of the Budget.

17. As can be seen in the Budget, the Debtor proposes to pay Live Oak its full monthly payment as an adequate protection payments post-petition.

18. In addition, to the extent that Debtor's use of its pre-petition accounts receivable results in a decrease in the value of the Live Oaks's interest in the pre-petition accounts receivable, Debtor will provide Live Oak with a replacement lien against its post-petition accounts receivable. 11 U.S.C. §361(2).

19. A true and correct copy of a recent monthly statement from Live Oak is attached to here as **Exhibit "7."**

20. Concurrently with the filing of this Motion, Debtor is filing motions to (1) prohibit utility providers from discontinuing services, (2) authorize payment of prepetition wages; (3) authorizing use of a cash management system (including keeping open the pre-petition account for incoming ACH payments), payment procedure for subcontractors with lien rights, and existing

payroll provider.

21.    A true and correct copy of the Pirs Capital LLC settlement is attached here as **Exhibit "8."** The Budget includes a line item for the settlement with Pirs Capital LLC.

22.    The proposed form of an order granting the Motion is attached as **Exhibit "9."**

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 6, 2026.

_____
JOSHUA TEEPLE

MOTION FOR CASH COLLATERAL

**EXHIBIT 1**

1/6/26, 12:35 PM                                    CANB Live Database

**DsclsDue, DebtEd, PlnDue**

## U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
## Bankruptcy Petition #: 25-51814

|  |  |
|---|---|
| | *Date filed:* 11/20/2025 |
| *Assigned to:* Judge Stephen L. Johnson | *341 meeting:* 01/14/2026 |
| Chapter 11 | *Deadline for filing claims:* 03/16/2026 |
| Voluntary | *Deadline for objecting to discharge:* 02/17/2026 |
| Asset | |

**Debtor**
**William Dokos Butler**
730 Mora Drive
Los Altos, CA 94024
SANTA CLARA-CA
SSN / ITIN: xxx-xx-9634

represented by **Brent D. Meyer**
Meyer Law Group, LLP
268 Bush St. #3639
San Francisco, CA 94104
(415) 765-1588
Fax : (415) 762-5277
Email: brent@meyerllp.com

**Joint Debtor**
**Anne Harmsen Butler**
730 Mora Drive
Los Altos, CA 94024
SANTA CLARA-CA
SSN / ITIN: xxx-xx-4900
*aka* **Anne T. Harmsen**

represented by **Brent D. Meyer**
(See above for address)

**Trustee**
**Not Assigned - SJ**

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

represented by **Phillip John Shine**
DOJ-Ust
280 South First St.
Suite 268
San Jose, CA 95113
(408) 535-5525
Fax : (408) 535-5532
Email: phillip.shine@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 11/20/2025 | 1 (67 pgs) | Chapter 11 Voluntary Petition for Individual, Fee Amount $1738, Filed by William Dokos Butler, Anne Harmsen Butler. Order Meeting of Creditors due by 12/1/2025. (Meyer, Brent) (Entered: 11/20/2025) |
| 11/20/2025 | 2 | Statement of Social Security Number. Filed by Joint Debtor Anne Harmsen Butler, Debtor William Dokos Butler (Meyer, Brent) (Entered: 11/20/2025) |

EXHIBIT 1, PAGE 20

| | | |
|---|---|---|
| 11/20/2025 | 3<br>(1 pg) | Disclosure of Compensation of Attorney for Debtor in the Amount of $ 26738.00 Filed by Joint Debtor Anne Harmsen Butler, Debtor William Dokos Butler (Meyer, Brent)Modified on 11/21/2025 (rdr). (Entered: 11/20/2025) |
| 11/20/2025 | 4<br>(5 pgs) | Chapter 11 Statement of Current Monthly Income ( Filed by Joint Debtor Anne Harmsen Butler, Debtor William Dokos Butler (Meyer, Brent) (Entered: 11/20/2025) |
| 11/20/2025 | 5<br>(1 pg) | Certificate of Credit Counseling Filed by Debtor William Dokos Butler (Meyer, Brent) (Entered: 11/20/2025) |
| 11/20/2025 | 6<br>(1 pg) | Certificate of Credit Counseling Filed by Joint Debtor Anne Harmsen Butler (Meyer, Brent) (Entered: 11/20/2025) |
| 11/20/2025 | 7 | First Meeting of Creditors with 341(a) meeting to be held on 12/16/2025 at 01:00 PM via UST Teleconference San Jose, Call in number: 1-888-330-1716 Passcode: 5397643. Last day to oppose discharge or dischargeability is 2/17/2026. Proofs of Claims due by 3/16/2026. (Scheduled Automatic Assignment) (Entered: 11/20/2025) |
| 11/20/2025 | | Receipt of filing fee for Voluntary Petition (Chapter 11)( 25-51814) [misc,volp11] (1738.00). Receipt number A34219858, amount $1738.00 (re: Doc# 1 Voluntary Petition (Chapter 11)) (U.S. Treasury) (Entered: 11/20/2025) |
| 11/21/2025 | 8<br>(4 pgs; 2 docs) | Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (rdr) (Entered: 11/21/2025) |
| 11/21/2025 | 9<br>(1 pg) | Notice of Appearance and Request for Notice by Phillip John Shine. Filed by U.S. Trustee Office of the U.S. Trustee / SJ (Shine, Phillip) (Entered: 11/21/2025) |
| 11/21/2025 | 10<br>(3 pgs; 2 docs) | Order for Payment of State and Federal Taxes (admin) (Entered: 11/21/2025) |
| 11/23/2025 | 11<br>(5 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 8 Generate 341 Notices). Notice Date 11/23/2025. (Admin.) (Entered: 11/23/2025) |
| 11/24/2025 | 12<br>(4 pgs; 2 docs) | Order and Notice of Chapter 11 Status Conference **Status Conference scheduled for 1/8/2026 at 11:00 AM in/via Tele/Videoconference - www.canb.uscourts.gov/calendars.** Status Conference Statement due by 1/2/2026 (rdr) (Entered: 11/24/2025) |
| 11/26/2025 | 13<br>(1 pg) | Request for Notice Filed by Creditor BMO Bank N.A., c/o AIS Portfolio Services, LLC. (Sharma, Amitkumar) (Entered: 11/26/2025) |
| 11/26/2025 | 14<br>(4 pgs) | Notice of Appearance and Request for Notice by Merdaud Jafarnia. Filed by Creditor Computershare Trust Company N.A. Not in its Individual Capacity But Solely as Trustee Of MFA 2024-NQM3 Trust (Jafarnia, Merdaud) (Entered: 11/26/2025) |
| 11/26/2025 | 15<br>(4 pgs) | BNC Certificate of Mailing - Payment of State and Fed Taxes. (RE: related document(s) 10 Order for Payment of State and Federal Taxes). Notice |

EXHIBIT 1, PAGE 21

| | | Date 11/26/2025. (Admin.) (Entered: 11/26/2025) |
|---|---|---|
| 11/26/2025 | 16 (5 pgs) | BNC Certificate of Mailing (RE: related document(s) 12 Order and Notice of Status Conference Chp 11). Notice Date 11/26/2025. (Admin.) (Entered: 11/26/2025) |
| 12/01/2025 | 17 (4 pgs) | Notice of Appearance and Request for Notice by Edward A. Treder. Filed by Requestor Computershare Trust Company N.A. Not in its Individual Capacity But Solely as Trustee Of MFA 2024-NQM3 Trust (Treder, Edward) (Entered: 12/01/2025) |
| 12/02/2025 | 18 (3 pgs) | Withdrawal of Documents (RE: related document(s)14 Notice of Appearance and Request for Notice. Filed by Creditor COMPUTERSHARE TRUST COMPANY N.A. Not in its Individual Capacity but Solely as Trustee of MFA 2024-NQM3 Trust (Jafarnia, Merdaud) (Entered: 12/02/2025) |
| 12/03/2025 | 19 (2 pgs) | Notice of Appearance and Request for Notice by Bernard Kornberg. Filed by Creditor Live Oak Banking Company (Kornberg, Bernard) (Entered: 12/03/2025) |
| 12/09/2025 | 20 (35 pgs; 6 docs) | Motion for Relief from Stay Fee Amount $199, Filed by Creditor Mercedes-Benz Financial Services USA LLC (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit A - E # 5 Certificate of Service) (Mroczynski, Randall) (Entered: 12/09/2025) |
| 12/09/2025 | 21 (2 pgs) | Notice of Hearing (RE: related document(s)20 Motion for Relief from Stay Fee Amount $199, Filed by Creditor Mercedes-Benz Financial Services USA LLC (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit A - E # 5 Certificate of Service). **Hearing scheduled for 1/20/2026 at 10:00 AM in/via San Jose Courtroom 10 - Johnson.** Filed by Creditor Mercedes-Benz Financial Services USA LLC (Mroczynski, Randall) (Entered: 12/09/2025) |
| 12/09/2025 | | Receipt of filing fee for Motion for Relief From Stay( 25-51814) [motion,mrlfsty] ( 199.00). Receipt number A34244876, amount $ 199.00 (re: Doc# 20 Motion for Relief from Stay Fee Amount $199,) (U.S. Treasury) (Entered: 12/09/2025) |
| 12/17/2025 | | Statement Adjourning 341(a) Meeting of Creditors. Meeting of Creditors Continued . *Debtors did not appear*. 341(a) meeting to be held on 1/14/2026 at 03:30 PM via UST Teleconference San Jose, Call in number: 1-888-330-1716 Passcode: 5397643. (Shine, Phillip) (Entered: 12/17/2025) |
| 12/18/2025 | 22 (37 pgs; 3 docs) | Application to Employ Golden Gate Sotheby's International Realty as Real Estate Broker Filed by Joint Debtor Anne Harmsen Butler, Debtor William Dokos Butler (Attachments: # 1 Declaration of Michael Dreyfus # 2 Certificate of Service) (Meyer, Brent) (Entered: 12/18/2025) |
| 12/19/2025 | 23 (9 pgs; 3 docs) | Application to Employ Meyer Law Group, LLP as General Bankruptcy Counsel Filed by Joint Debtor Anne Harmsen Butler, Debtor William Dokos Butler (Attachments: # 1 Declaration of Counsel Brent D. Meyer # 2 Certificate of Service) (Meyer, Brent) (Entered: 12/19/2025) |

EXHIBIT 1, PAGE 22

CANB Live Database

| 12/19/2025 | 24<br>(2 pgs) | Notice of Appearance and Request for Notice by Jessica M. Simon. Filed by Creditor Bank of America, N.A. (Simon, Jessica) (Entered: 12/19/2025) |
|---|---|---|
| 12/29/2025 | 25<br>(3 pgs) | Order Authorizing Employment of Counsel (Related Doc # 23) (al) (Entered: 12/29/2025) |
| 12/30/2025 | 26<br>(3 pgs) | Order Approving Application to Employ Golden Gate Sotheby's International Realty as Real Estate Broker Filed by Debtors in Possession (Related Doc # 22) (al) (Entered: 12/30/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/06/2026 12:35:11 | | | |
| **PACER Login:** | atty272406 | **Client Code:** | 9999-001 |
| **Description:** | Docket Report | **Search Criteria:** | 25-51814 Fil or Ent: filed From: 11/7/2021 To: 1/6/2026 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

EXHIBIT 1, PAGE 23

**EXHIBIT 2**



Search:        Public Records : Uniform Commercial Code Filings
Terms:         company(pappas piping service)

| No. | Debtor | Filing | Secured Party |
|---|---|---|---|
| 1 | PAPPAS PIPING SERVICE, INC.<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612 | UCC - LIEN FINANCING STMT<br>NUMBER: U250101451421<br>DATE: 01/08/2025<br>JURISDICTION: CA<br><br><br>NUMBER: U250101451421 | PIRS CAPITAL, LLC<br>1688 MERIDIAN AVE STE 700<br>MIAMI BEACH, FL 33139-2713 |
| 2 | PAPPAS PIPING SERVICE<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612<br><br>PAPPAS PIPING SERVICE INC<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612<br><br>PAPPAS PIPING SERVICES<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612<br><br>PAPPAS PIPING SERVICES INC<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612 | UCC - LIEN FINANCING STMT<br>NUMBER: U240098435130<br>DATE: 12/26/2024<br>JURISDICTION: CA<br><br><br>NUMBER: U240098435130<br><br>TERMINATION<br>DATE: 12/08/2025<br>NUMBER: U250217472232 | C T CORPORATION SYSTEM, AS REPRESENTATIVE<br>330 N BRAND BLVD STE 700<br>GLENDALE, CA 91203-2336 |
| 3 | PAPPAS PIPING SERVICE<br>1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112-4612 | UCC - LIEN FINANCING STMT<br>NUMBER: U240026990432 | C T CORPORATION SYSTEM, AS REPRESENTATIVE<br>330 N BRAND BLVD STE 700 |

pappas_piping_service

| No. | Debtor | Filing | Secured Party |
|-----|--------|--------|---------------|
| | | DATE: 03/21/2024 | GLENDALE, CA 91203-2336 |
| | PAPPAS PIPING SERVICE, INC. | JURISDICTION: CA | |
| | 1450 KOLL CIR STE 108 | | |
| | SAN JOSE, CA 95112-4612 | | |
| | SHAPES SUPPLY | NUMBER: U240026990432 | |
| | 1450 KOLL CIR STE 108 | | |
| | SAN JOSE, CA 95112-4612 | | |
| | SHAPES SUPPLY LLC | | |
| | 1450 KOLL CIR STE 108 | | |
| | SAN JOSE, CA 95112-4612 | | |
| | DECORATIVE PLUMBING DISTRIBUTORS | | |
| | 1450 KOLL CIR STE 108 | | |
| | SAN JOSE, CA 95112-4612 | | |
| | DECORATIVE PLUMBING DISTRIBUTORS LLC | | |
| | 1450 KOLL CIR STE 108 | | |
| | SAN JOSE, CA 95112-4612 | | |
| 4 | PAPPAS PIPING SERVICE, INC. | UCC - LIEN FINANCING STMT | LIVE OAK BANKING COMPANY |
| | 4200 BUSINESS CENTER DR | NUMBER: U220175905829 | 1741 TIBURON DR |
| | FREMONT, CA 94538-6356 | DATE: 03/18/2022 | WILMINGTON, NC 28403-6244 |
| | | JURISDICTION: CA | |
| | | NUMBER: U220175905829 | |
| 5 | PAPPAS PIPING SERVICE, INC. | FINANCING STATEMENT | GREATAMERICA LEASING CORPORATION |
| | 2109 OTOOLE AVE STE P | NUMBER: 107236837087 | 625 1ST ST SE |
| | SAN JOSE, CA 95131-1338 | DATE: 07/01/2010 | CEDAR RAPIDS, IA 52401-2030 |
| | | JURISDICTION: CA | |

pappas_piping_service

| No. | Debtor | Filing | Secured Party |
|---|---|---|---|
| 6 | PAPPAS PIPING SERVICE, INC.<br>2109 OTOOLE AVE STE P<br>SAN JOSE, CA 95131-1338 | FINANCING STATEMENT<br>NUMBER: 087177214542<br>DATE: 10/31/2008<br>JURISDICTION: CA | FREMONT BANK<br>39150 FREMONT BLVD<br>FREMONT, CA 94538-1316 |
| | PAPPAS PIPING SERVICE, INC.<br>2109 OTOOLE AVE STE P<br>SAN JOSE, CA 95131-1338 | <br><br>NUMBER: 087177214542 | FREMONT BANK<br>39150 FREMONT BLVD<br>FREMONT, CA 94538-1316 |
| | | CONTINUATION<br>DATE: 05/01/2013<br>NUMBER: 1373586558 | |
| | | CONTINUATION<br>DATE: 10/17/2018<br>NUMBER: 1876772801 | |
| | | TERMINATION<br>DATE: 05/04/2022<br>NUMBER: U220190162729 | |
| 7 | PAPPAS PIPING SERVICE, INC.<br>2109 OTOOLE AVE STE P<br>SAN JOSE, CA 95131-1338 | FINANCING STATEMENT<br>NUMBER: 087149114661<br>DATE: 03/03/2008<br>JURISDICTION: CA | GREATAMERICA LEASING<br>CORPORATION<br>PO BOX 609<br>CEDAR RAPIDS, IA 52406-0609 |

Page 4 of 4

pappas_piping_service

| No. | Debtor | Filing | Secured Party |
|-----|--------|--------|---------------|

Terms:              company(pappas piping service)
Date/Time:          Tuesday, January 6, 2026 11:29 PM
Permissible Use:    Your DPPA Permissible Use: Litigation
                    Your Secondary DPPA Permissible Use: None
                    Your GLBA Permissible Use: I have no permissible use

Copyright © 2026 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**

EXHIBIT 2, PAGE 27

# EXHIBIT 3




U220175905829

B0479-5539 03/18/2022 9:13 AM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File #: U220175905829

Date Filed: 3/18/2022

Submitter Information:

| | |
|---|---|
| Contact Name | CHRIS COLLIE |
| Organization Name | THE COLLIE FIRM, PLLC |
| Phone Number | (214) 484-4323 |
| Email Address | krista@thecolliefirm.com |
| Address | 3957 GASPAR DRIVE<br>DALLAS, TX 75220 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| PAPPAS PIPING SERVICE, INC. | 4200 BUSINESS CENTER DRIVE<br>FREMONT, CA 94538 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| LIVE OAK BANKING COMPANY | 1741 TIBURON DRIVE<br>WILMINGTON, NC 28403 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:

All tangible and intangible property of the Debtor, whether now owned or hereafter acquired, wherever located, including, but not limited to, the Debtor's interest now owned and hereafter acquired in the following types or items of property (all terms used herein shall have the meanings set forth in Article 9 of the Uniform Commercial Code):

All Accounts. A security interest in all accounts now owned or existing as well as any and all that may hereafter arise or be acquired by Debtor, and all the proceeds and products thereof, including without limitation, all notes, drafts, acceptances, instruments and chattel paper arising therefrom, and all returned or repossessed goods arising from or relating to any which accounts, or other proceeds of any sale or other disposition of inventory, together with any property evidencing or relating to the Accounts (such as guaranties and credit insurance), any security for the Accounts, and all books and records relating thereto (including, but not limited to, computer-generated and/or computer-prepared information).

All Inventory. A security interest in all of Debtor's inventory, including all goods, merchandise, raw materials, goods, goods in process, finished goods, parts, supplies and other tangible personal property, wheresoever located, now owned or hereafter acquired and held for sale or lease or furnished or to be furnished under contracts for service or used or consumed in Debtor's business, and all additions and accessions thereto, and all leases and contracts with respect thereto, and all documents of title evidencing or representing any part thereof, and all products and proceeds thereof, whether in the possession of the Debtor, warehouseman, bailee, or any other person, and all goods and inventory returned, reclaimed or repossessed.

All Equipment, Furniture and other Tangible Property. A security interest in all equipment, furniture and other tangible property of every nature and description whatsoever (whether or not any of the foregoing are affixed to realty), now owned or hereafter acquired by Debtor, including all appurtenances and additions thereto, and substitutions therefor and replacement thereof, wheresoever located, including all tools, parts and accessories used in connection therewith, and the rights of the Debtor under any manufacturer's warranties relating to the foregoing.

General Intangibles. A security interest in all general intangibles and other personal property now owned or hereafter acquired by Debtor (including, without limitation, all payment

EXHIBIT 3, PAGE 28

B0479-5540 03/18/2022 9:13 AM Received by California Secretary of State

intangibles and any personal property, causes of action, goodwill, tax refunds, licenses, franchises, trademarks, trade names, service marks, copyrights, customer lists, and patents, and all rights under license agreements for use of the same) other than goods, accounts, chattel paper, documents or instruments.

Chattel Paper. A security interest in all of Debtor's interest under chattel paper, lease agreements and other instruments or documents (whether tangible or electronic), whether now existing or owned by Debtor or hereafter arising or acquired by Debtor, evidencing both a debt and security interest in or lease of specific goods.

Instruments. A pledge and assignment of and security interest in all of Debtor's Instruments (including, without limitation, all promissory notes and all certificated securities and all certificates of deposit) now owned or existing as well as hereafter acquired or arising instruments and documents.

as well as any accessions, additions and attachments thereto, and the proceeds and products thereof, including without limitation, all cash, general intangibles, accounts, inventory, equipment, farm products, notes, drafts, acceptances, securities, instruments, chattel paper, insurance proceeds payable because of loss or damage, or other property, benefits or rights arising therefrom, and in and to all returned or repossessed goods arising from or relating to any of the property described herein or other proceeds of any sale or other disposition of such property (including, without limitation, whatever is received upon the use, lease, sale, exchange, collections, any other utilization, or any disposition of any of the foregoing property, whether cash or non-cash, all rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, machinery, equipment, inventory, substitutions, additions, accessions, replacements, products, and renewals of, for, or to such property, and all insurance therefor).

| | |
|---|---|
| Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative: | |
| Not Applicable | |

| |
|---|
| Select an alternate Financing Statement type: |
| Not Applicable |

| |
|---|
| Select an additional alternate Financing Statement type: |
| Not Applicable |

| |
|---|
| Select an alternative Debtor/Secured Party designation for this Financing Statement: |
| Not Applicable |

| |
|---|
| Optional Filer Reference Information: |
| LIVE OAK - 312 - WILLIAM BUTLER |

| |
|---|
| Miscellaneous Information: |

| |
|---|
| Search to Reflect: |
| ☐  Order a Search to Reflect |

EXHIBIT 3, PAGE 29

**EXHIBIT 4**

 

U250101451421



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: U250101451421

Date Filed: 1/8/2025

| Submitter Information: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR<br>SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| PAPPAS PIPING SERVICE, INC. | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| PIRS CAPITAL, LLC | 1688 MERIDIAN AVE STE 700<br>MIAMI BEACH, FL 33139 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All Accounts Receivable, and all proceeds thereof.
NOTICE: PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT
TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBRANCE OF THE
COLLATERAL IS A BREACH OF THE AGREEMENT AND MAY CONSTITUTE TORTIOUS INTERFERENCE WITH THE
AGREEMENT BETWEEN DEBTOR AND SECURED PARTY

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
3016 03046

EXHIBIT 4, PAGE 30

B3332-2176 01/08/2025 1:26 PM Received by California Secretary of State

# EXHIBIT 5

 

U240026990432

B2600-2187 03/21/2024 2:10 AM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: U240026990432

Date Filed: 3/21/2024

Submitter Information:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071<br>GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| PAPPAS PIPING SERVICE, INC. | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |
| PAPPAS PIPING SERVICE | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |
| DECORATIVE PLUMBING DISTRIBUTORS LLC | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |
| DECORATIVE PLUMBING DISTRIBUTORS | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |
| SHAPES SUPPLY LLC | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |
| SHAPES SUPPLY | 1450 KOLL CIR STE 108<br>SAN JOSE, CA 95112 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| C T CORPORATION SYSTEM, AS REPRESENTATIVE | 330 N BRAND BLVD, SUITE 700; ATTN: SPRS<br>GLENDALE, CA 91203 |

Indicate how documentation of Collateral is provided:
  Entered as Text

Description:
NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER. IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY. Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to Debtor arising out of goods sold or leased or for services rendered by Debtor, the proceeds thereof and all of Debtor's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); Inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Debtor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Debtor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Debtor or is held by Debtor or by others for Debtor's account

EXHIBIT 5, PAGE 31

(collectively referred to hereinafter as "Inventory"); Goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by Debtor or in which Debtor may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); General intangibles in which Debtor now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); All of the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Debtor, including without limitation the capital stock of all subsidiaries of the Debtor, and the Debtor's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); All cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Debtor's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); All other assets, proceeds and items not directly referred to herein as those terms are defined in Article 9 of the Uniform Commercial Code under applicable federal and state law (collectively referred to hereinafter as "UCC Article 9 Items"); All accessions to, substitutions for, and all replacements, products and proceeds of, the Receivables, Inventory, Equipment, Intangibles, Investments, Cash and UCC Article 9 Items (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and Books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of Debtor pertaining to any of the Collateral).

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:

Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:

97998701

B2600-2188 03/21/2024 2:10 AM Received by California Secretary of State

EXHIBIT 5, PAGE 32

# EXHIBIT 6

## 13 Week Cash Flow

| | 1/11/2026 | 1/18/2026 | 1/25/2026 | 2/1/2026 | 2/8/2026 | 2/15/2026 | 2/22/2026 | 3/1/2026 | 3/8/2026 | 3/15/2026 | 3/22/2026 | 3/29/2026 | 4/5/2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | | | | | | | | | | | | | |
| Cash | $ 149,056.81 | $ 86,375.00 | $ 875.00 | $ 179,375.00 | $ 408,234.00 | $ 412,744.28 | $ 56,062.47 | $ 12,062.47 | $ 192,754.97 | $ 236,765.25 | $ 164,083.44 | $ 81,583.44 | $ 87,583.44 |
| **Revenues** | | | | | | | | | | | | | |
| Received Payments - Contract | $ 15,000.00 | $ 35,000.00 | $ 425,000.00 | $ 350,000.00 | $ 400,000.00 | $ 35,000.00 | $ 80,000.00 | $ 350,000.00 | $ 400,000.00 | $ 25,000.00 | $ 15,000.00 | $ 85,000.00 | $ 350,000.00 |
| **Expenses** | | | | | | | | | | | | | |
| Materials/Job Accts | $ 8,000.00 | $ 60,000.00 | $ 175,000.00 | $ 8,000.00 | $ 275,000.00 | $ 300,000.00 | $ 54,000.00 | $ 25,000.00 | $ 185,000.00 | $ 5,000.00 | $ 30,000.00 | $ 10,000.00 | $ 85,000.00 |
| Payroll | $ 50,000.00 | $ 55,000.00 | $ 69,000.00 | $ 70,000.00 | $ 69,500.00 | $ 68,000.00 | $ 69,000.00 | $ 74,000.00 | $ 70,000.00 | $ 69,000.00 | $ 65,000.00 | $ 67,000.00 | $ 65,000.00 |
| Travelers - Insurance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 26,666.50 | $ - | $ - | $ - | $ - | $ 26,666.50 |
| Kaiser - Health Insurance | $ - | $ - | $ - | $ 18,981.00 | $ - | $ - | $ - | $ 18,981.00 | $ - | $ - | $ - | $ - | $ 18,981.00 |
| Valero - Fleet Gas Card | $ - | $ - | $ - | $ 10,000.00 | $ - | $ - | $ - | $ 10,000.00 | $ - | $ - | $ - | $ - | $ 7,500.00 |
| Doolinger - Rent | $ - | $ - | $ - | $ 12,160.00 | $ - | $ - | $ - | $ 12,160.00 | $ - | $ - | $ - | $ - | $ 12,160.00 |
| Operating Costs (IT, Supplies, Etc) | $ 1,500.00 | $ 5,500.00 | $ 2,500.00 | $ 2,000.00 | $ 1,500.00 | $ 5,500.00 | $ 1,000.00 | $ 2,500.00 | $ 1,500.00 | $ 5,500.00 | $ 2,500.00 | $ 2,000.00 | $ 1,500.00 |
| Legal Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 50,000.00 | $ - | $ - | $ - | $ - |
| **Total Expenses** | $ 59,500.00 | $ 120,500.00 | $ 246,500.00 | $ 121,141.00 | $ 346,000.00 | $ 373,500.00 | $ 124,000.00 | $ 169,307.50 | $ 306,500.00 | $ 79,500.00 | $ 97,500.00 | $ 79,000.00 | $ 216,807.50 |
| **Adequate Protection Payments** | | | | | | | | | | | | | |
| PIRS - Lender | $ 18,181.81 | $ - | $ - | $ - | $ - | $ 18,181.81 | $ - | $ - | $ - | $ 18,181.81 | $ - | $ - | $ - |
| Live Oak - Lender | $ - | $ - | $ - | $ - | $ 49,489.72 | $ - | $ - | $ - | $ 49,489.72 | $ - | $ - | $ - | $ 49,489.72 |
| **Net Cash Flow** | $ (62,681.81) | $ (85,500.00) | $ 178,500.00 | $ 228,859.00 | $ 4,510.28 | $ (356,681.81) | $ (44,000.00) | $ 180,692.50 | $ 44,010.28 | $ (72,681.81) | $ (82,500.00) | $ 6,000.00 | $ 83,702.78 |
| **Ending Balance** | | | | | | | | | | | | | |
| Cash | $ 86,375.00 | $ 875.00 | $ 179,375.00 | $ 408,234.00 | $ 412,744.28 | $ 56,062.47 | $ 12,062.47 | $ 192,754.97 | $ 236,765.25 | $ 164,083.44 | $ 81,583.44 | $ 87,583.44 | $ 171,286.22 |

EXHIBIT 6, PAGE 33

# EXHIBIT 7

**LiveOakBank.**

1741 Tiburon Drive
Wilmington, NC 28403
910-790-5867

WILLIAM D. BUTLER
Pappas Piping Service, Inc.
Ormond Corporation
1450 Koll Circle Ste. 108
San Jose CA  95112

Page:       1
Line:              129412  11/20/2025

### Loan Billing Statement

## 7A RE Loan    433

| Date | Description | Payment Split Principal | Interest | Transaction Amount | Principal Balance |
|------|-------------|-----------|----------|--------------------|-------------------|
| 10/20/2025 | Balance Last Statement | | | | 3,156,417.71 |
| 10/24/2025 | Loan Payment | .00 | 5,000.00 | 5,000.00 | |
| 10/31/2025 | Loan Payment | | | | |
| | | 2,652.70 | 67,876.50 | 73,915.00 | 3,153,765.01 |
| | Late Charge: | 200.00 | Fees: | 3,185.80 | |
| 11/20/2025 | Balance This Statement | | | | 3,153,765.01 |

### Interest Calculation

| From Date | Thru Date | Interest Rate | Daily Periodic Rate | Principal | Days | Accrued Interest |
|-----------|-----------|---------------|---------------------|-----------|------|------------------|
| 11/05/2025 | 12/04/2025 | 6.000000% | .00016438 | 3,153,765.01 | 30 | 15,552.81 |
| | Accrued Interest Adjustment: | | | | | 2.19- |

### Loan Summary

| | |
|---|---|
| Credit Limit: | Interest Accrued From:   11/05/2025 |
| Available Credit: | Interest Accrued Thru:   12/04/2025 |
| Maturity Date:          04/28/2032 | Principal Due:             31,344.78 |
| **Activity This Period** | Interest Due:             18,144.94 |
| Principal Paid:          2,652.70 | Total Payment Due:       49,489.72 |
| Interest Paid:          72,876.50 | Payment Due Date:       12/05/2025 |
| Late Charges Paid:          200.00 | |
| Interest Accrued:       15,552.81 | |

Add additional late charge of 1,979.58 if no payment is received by 12/20/2025

Interest Paid 2025:            179,203.46





MEMBER
FDIC

**LiveOak**Bank.

1741 Tiburon Drive
Wilmington, NC 28403
910-790-5867

Page:    2
Line:                129412  11/20/2025

WILLIAM D. BUTLER

**Loan Billing Statement**

## Remittance Summary

Loan Number
112433 Principal Balance:    3,153,765.01    Interest Due:    18,144.94
Principal Due:        31,344.78    Escrow Due:        .00
Total Due:        49,489.72


Total Principal Balance:    3,153,765.01    Total Interest Due:    18,144.94
Total Principal Due:        31,344.78    Total Escrow Due:        .00


                    ***************************
Total Amount Due by 12/05/2025:  *        49,489.72    *
                    ***************************

* * Please return this portion with your payment * *

L o a n   B i l l i n g   S t a t e m e n t

WILLIAM D. BUTLER                Total Amount Due:        49,489.72
Pappas Piping Service, Inc.        Additional Principal: _____
Ormond Corporation            Additional Payment:   _____
1450 Koll Circle Ste. 108
San Jose CA  95112            Amount Enclosed:

Date Payment Due:        12/05/2025    LIVE OAK BANKING COMPANY
7A RE                        1741 TIBURON DR
Loan Number:            112433    WILMINGTON NC    28403
Regular Payment T/C:        325

MEMBER
FDIC

⑆540000007⑆                    433⑈        325

EQUAL HOUSING
LENDER

EXHIBIT 7, PAGE 35



1741 Tiburon Drive
Wilmington, NC 28403

2125C1N1
3
12/16/2025

PAPPAS PIPING SERVICE, INC.
PAPPAS PIPING SERVICE, INC.
1450 KOLL CIRCLE STE. 108
SAN JOSE, CA 95112

Loan: ████433

Subject: **Please provide insurance information for** 2900 DEER VALLEY DRIVE EAST UNIT C-302, PARK CITY,
UT 84060 ("Property")

PAPPAS PIPING SERVICE, INC. ("Borrower"):

Live Oak Banking Company's ("Lender") records show that the Condominium Association's master policy has
expired, and Lender does not have evidence that Borrower has provided new coverage.

To ensure prompt resolution of this matter, immediately fax or email proof of insurance for the Condo Association.

Fax: (866) 290-8190
Email: liveoak@verifymycoverage.com

Proof of insurance must be provided in written form. Lender will accept either a certificate of insurance or a copy of
the policy declarations page. Please make sure that the document(s) provided includes the following required pieces
of information:

- Insurance Agent (or Insurance Carrier) name and phone number
- Insured property address/description including building & unit number
- Total amount of building coverage
- Type of unit coverage, if any (e.g. "Replacement Cost for Improvements and Betterments")
- Current Policy Period

If you have any questions, please contact us at  (877) 528-4438.

Sincerely,

Insurance Department
Phone: (877) 528-4438

**EXHIBIT 8**

 RECOVERY GROUP

November 4, 2025

William D Butler
Pappas Piping Service, Inc. dba Pappas Piping Service
1450 Koll Circle Ste 108
San Jose, CA 95112

## FIRST AMENDED SETTLEMENT AGREEMENT

RE: PIRS Capital, LLC
Balance: $295,346.00
Reference Number: ██████2638

Dear Mr. Butler,

This company is the servicing and collection agent for PIRS Capital, LLC ("PIRS Capital, LLC"). This letter will set out the terms by which our client will accept a settlement of your account.

Our client agrees that it will not pursue legal action on your account provided you pay as set forth in this letter. You agree to pay PIRS Capital, LLC the sum of $234,000.00. This amount will be paid with an initial payment in the amount of $20,000.00 paid to AMA Recovery Group via wire transfer on or before July 11th, 20225. Thereafter, you agree to pay the remaining settlement balance in accordance with the following payment schedule:

- August 10st - $4,000.00
- September 10th - $4,000.00
- October 10th - 6,000.00
- November 10th - $10,000
- December 10th - $10,000
- January 10th, 2026 through September 10th, 2026 - $18,181.81 Per Month each month
- October 10th, 2026 - Final payment of $34,545.43

Cash, cashier's checks, and money orders are accepted forms of payment and must be mailed to AMA Recovery Group, LLC at 3131 Eastside St., Suite 350, Houston, TX 77098. You may also pay by wire or direct deposit into our Wells Fargo client trust account. Instructions to pay in this manner are enclosed. In addition, AMA confirms that any payments received from any UCC demand shall be credited towards the settlement amount.



AMA Recovery Group, LLC
3131 Eastside St., #435, Houston, TX 77098 | (713) 524-2162 Tel. | (713) 268-0769 Fax
www.amarecovery.com

Ref. Number R2501022638

EXHIBIT 8, PAGE 37



| AMA | RECOVERY GROUP |

The terms of the Merchant Agreement (the "Merchant Agreement") between Pirs Capital, LLC and Pappas Piping Service, Inc. dated on or about July 1st, 2024, the personal guaranty set forth therein, and any amendments thereto, are expressly reaffirmed and incorporated herein by this reference, and shall remain in full force and effect and continue to govern and control the relationship between the parties hereto except to the extent said agreements are inconsistent with, amended or superseded by this Settlement Agreement. To the extent of any inconsistency, this Settlement Agreement shall govern and control.

Once all payments are made as described in the paragraph above, PIRS Capital, LLC will close your account as settled and cease all collection efforts. However, if payments are not received on or before the due dates outlined above, Pirs Capital, LLC may, without further notice, pursue any and all rights it has under the Merchant Agreement and/or this Settlement Agreement, including but not limited to seeking to recover all amounts due under the Merchant Agreement, less a credit for any amounts paid pursuant to this Settlement Agreement.

Please sign below to confirm your agreement of the above terms and return to me. This offer expires if this letter is not signed and returned by November 6, 2025. If you have any questions concerning this matter, please contact Jacob Scott at (713) 352-0741 or jscott@amarecovery.com.

Regards,



By: Michael S. Kelleher, Esq.
Corporate Counsel

AGREED TO:

_____       ___11/5/2025_____
William D Butler                                            Date
Individually and as authorized agent for
Pappas Piping Service, Inc. dba Pappas Piping Service

Encl.:   *Direct Deposit and Wiring Instructions*

AMA Recovery Group, LLC
3131 Eastside St., #435, Houston, TX 77098 | (713) 524-2162 Tel. | (713) 268-0769 Fax
www.amarecovery.com
Ref. Number R2501022638

EXHIBIT 8, PAGE 38



# DIRECT DEPOSIT & WIRING INSTRUCTIONS

Wire payments or direct cash deposits may be made to the following trust account at Wells Fargo.

**AMA RECOVERY GROUP LLC**
Wells Fargo Bank

**Routing #** ▓▓▓▓▓ **(Wire)**
**Routing #** ▓▓▓▓▓ **(ACH)**
**Account #** ▓▓▓▓▓

**\*\*\* Please write** ▓▓▓▓ **2638 and the name of your business on \*\*\***
**the top of the deposit slip for identification purposes.**

**Zelle Transfers:** Send to AMA Recovery Group using the email info@amarecovery.com. You must include your reference number in the memo line for your payment to post to your account.

**Wire Transfers:** Use the above routing and account number to initiate a wire transfer to our Wells Fargo account. Please check with the originating bank regarding any fees applicable to this transaction. AMA Recovery Group is not responsible for fees assessed by other financial insitutions.

**Walk-in Direct Cash Deposit:** If you wish to save wiring fees from the originating bank, you can walk a cash deposit in to any Wells Fargo branch by providing the branch manager the above account number. This method ensures same-day payment.

**\*\*\* Make sure to SEND CONFIRMATION OF YOUR PAYMENT to your \*\*\***
**account representative to verify the payment is posted to your account.**



AMA Recovery Group, LLC
3131 Eastside St., #435, Houston, TX 77098 | (713) 524-2162 Tel. | (713) 268-0769 Fax
www.amarecovery.com

Ref. Number R2501022638

EXHIBIT 8, PAGE 39

# EXHIBIT 9

1  DAVID A. WOOD, #272406
   dwood@marshackhays.com
2  MATTHEW W. GRIMSHAW, #210424
   mgrimshaw@marshackhays.com
3  AARON E. DE LEEST, #216832
   adeleest@marshackhays.com
4  SARAH R. HASSELBERGER, #340640
   shasselberger@marshackhays.com
5  MARSHACK HAYS WOOD LLP
   870 Roosevelt, Irvine, CA 92620
6  Telephone: 949-333-7777
   Facsimile: 949-333-7778
7
   Proposed Attorneys for
8  PAPPAS PIPING SERVICE, INC.

9

10            UNITED STATES BANKRUPTCY COURT

11     CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

12

13  In re                              Case No. 8:26-bk-10033

14  PAPPAS PIPING SERVICE, INC.,       Chapter 11

15        Debtor.                      [PROPOSED] ORDER GRANTING
                                       DEBTOR'S MOTION FOR ORDER
16                                     AUTHORIZING USE OF CASH
                                       COLLATERAL TO CONFIRM THAT ITS
17                                     SECURED CREDITOR IS ADEQUATELY
                                       PROTECTED
18
                                       Hearing:
19                                     Date: TO BE SET
                                       Time: TO BE SET
20                                     Ctrm: TO BE SET
                                       Place: 411 West Fourth Street
21                                            Santa Ana, CA 92701

22

23        On January ___, 2026, the court held a hearing on the Debtor's Motion for Order

24  Authorizing Use of Cash Collateral to Confirm the Secured Creditor is Adequately Protected

25  ("Motion") filed by the Debtor, Papas Piping Service, Inc., ("Debtor") on January 6, 206, as Dk. No.

26  X. All appearances were as noted on the record.

27        Having determined that service of the Motion was proper under the circumstances, and after

28  considering the Motion and all papers in support thereof, the presentation of counsel, and for good

                                      1

1  cause shown,

2  **IT IS ORDERED** that:

3    1.    The Motion is granted on an interim basis.

4    2.    The Debtor is authorized to immediately use all of the Cash Collateral, on an interim

5  basis, pending a final hearing on notice to creditors.

6    3.    Live Oak is adequately protected with respect to Live Oak, as proposed by the Debtor

7  in the Motion and as set forth herein.

8    4.    A final hearing on this Motion shall be scheduled for _____.

9  Debtor will file a notice of continued hearing, and may, but is not required to, file a supplement to

10  the Motion by _____. Any objection to the Motion, or supplement thereto, shall

11  be filed on or before _____. The Debtor may file a reply brief to any objection by

12  _____.

13                                        ###

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL TO CONFIRM THAT ITS SECURED CREDITOR IS ADEQUATELY PROTECTED; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF WILLIAM BUTLER, MIKE PAPPAS, AND JOSHUA TEEPLE IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 6, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **David Wood**    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **January 6, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
1450 KOLL CIRCLE, #108
SAN JOSE, CA 95112

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 6, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Mark D. Houle
United States Bankruptcy Court
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 6, 2026 | Layla Buchanan | | /s/ Layla Buchanan |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**