DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for
PAPPAS PIPING SERVICE, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor. | Case No. 8:26-bk-10033-MH<br><br>Chapter 11<br><br>DISCLOSURE STATEMENT DESCRIBING DEBTOR-IN-POSSESSION'S CHAPTER 11 PLAN OF REORGANIZATION<br><br>Disclosure Statement Hearing<br>Date: August 4, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6C – Via Zoom Gov<br>411 W. Fourth St., Santa Ana, CA 92701<br><br>Plan Confirmation Hearing<br>Date: TBD<br>Time: TBD.<br>Place: 411 W. Fourth St., Courtroom 6C<br>Santa Ana, CA 92701 |

////

DEBTOR'S DISCLOSURE STATEMENT

## TABLE OF CONTENTS

1.    Introduction ................................................................................................................2

    a.    Purpose of this Document ..................................................................................3

    b.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............4

    c.    Time and Place of the Confirmation Hearing .....................................................4

    d.    Deadline for voting for or against the Plan .........................................................4

    e.    Deadline for Objecting to the Confirmation of the Plan......................................4

    f.    Identity of Person(s) to contact for more information regarding the Plan ............5

    g.    Disclaimer ........................................................................................................5

    a.    Debtor's Operations...........................................................................................5

    b.    Debtor's Financial Difficulties and Bankruptcy Filing .........................................6

    c.    Live Oak and Pre-Petition Negotiations .............................................................6

    d.    The Butler's personal bankruptcy .......................................................................7

    e.    Mr. Pappas returns and Mr. Teeple is appointed as Chief Restructuring Officer ................................................................................................................8

    f.    Significant events during the Bankruptcy ............................................................8

    i.    The First Day Motions .......................................................................................8

motions: .........................................................................................................................8

    ii.    Retention of Professionals .................................................................................9

    iii.    Claims Bar Date & Filed Claims .......................................................................10

    iv.    Compliance and Administrative Matters ...........................................................11

    a.    Overview .........................................................................................................11

    b.    What Creditors Will Receive Under the Plan ....................................................12

    c.    Unclassified Claims..........................................................................................12

        i.    Administrative Expenses ...........................................................................12

        ii.    Priority Tax Claims ...................................................................................13

    d.    Treatment of Classified Claims and Interests ....................................................14

      i.          Classes of Secured Claims – Class 1(a), 1(b), and 1(c) ...........................14

ii.      Priority Unsecured Claims...................................................................................16

      iii.     Classes of General Unsecured Claims – Class 2(a) & (b)............................16

      iv.     Class of Equity Interest Holders........................................................................17

2.      Means of Effectuating the Plan and other provisions.........................................17

     a.      Funding for the Plan.............................................................................................17

     b.      Disbursing Agent...................................................................................................18

     c.      Debtor's Post-Confirmation Management ..........................................................18

     d.      Preservation of Causes of Action, Avoidance Actions, and other
         Litigation Claims...................................................................................................18

     e.      Revesting of Property in the Reorganized Debtor ............................................20

     f.      Executory Contracts and Unexpired Leases .....................................................20

     g.      Objection to Claims ..............................................................................................22

     h.      Amendments to Claims; Claims Filed After the Confirmation Hearing..............22

     i.      Estimation of Claims.............................................................................................23

         j.        Distributions to be Made Pursuant to the Plan............................................23

     k.      Fractional Dollars, *De Minimis* Distributions .................................................24

     l.      Disposition of Assets ............................................................................................25

3.      Tax Consequences of the Plan ...............................................................................25

4.      Confirmation Requirements and Procedures ......................................................26

     a.      Who may vote or object to the Plan.....................................................................26

      i.      Who may object to Confirmation of the Plan ...............................................26

      ii.     Who may vote to accept/reject the Plan.........................................................26

      iii.     What Is an Allowed Claim/Interest................................................................27

      iv.     What is an Impaired Claim/Interest ..............................................................27

      v.      Who is *NOT* entitled to vote for the Plan...................................................28

      vi.     Who can vote in more than one class..............................................................28

vii.    **Votes necessary to confirm the Plan**.................................................................**29**

viii.   **Votes necessary for a class to accept the Plan**...........................................**29**

ix.    **Treatment of Nonaccepting Classes**.............................................................**29**

x.    **Request for confirmation despite nonacceptance by impaired class(es)**.......................................................................................................**29**

**5.**    **Liquidation Analysis**.............................................................................................**29**

**6.**    **Feasibility**.................................................................................................................**30**

**7.**    **Effect of Confirmation of Plan**............................................................................**31**

    a.    **Discharge**...............................................................................................**31**

    b.    **Continuing Stay/Injunction**................................................................**31**

    c.    **No Liability for Solicitation or Participation**....................................**32**

    d.    **Limitation of Liability**.........................................................................**32**

    e.    **Revesting of Property in the Reorganized Debtor**............................**33**

    f.    **Preservation of all Litigation and Causes of Action**.......................**33**

    g.    **Modification of the Plan**......................................................................**34**

    h.    **Changes in Rates subject to Regulatory Commission Approval**......**34**

    i.    **Retention of Jurisdiction**....................................................................**35**

**8.**    **Miscellaneous Provisions**.......................................................................................**36**

    a.    **Post-Confirmation Status Report**.......................................................**36**

    b.    **Post-Confirmation Conversion/Dismissal**.........................................**36**

    c.    **Post-Confirmation UST Fees**..............................................................**37**

    d.    **Risk Factors**.........................................................................................**37**

    i.    **Risk of Non-Confirmation of the Plan**...............................................**37**

    ii.    **Risk of Non-Occurrence of the Effective Date**.................................**37**

    iii.    **Risks to recovery by holders of Claims**..............................................**38**

    e.    **Final Decree**.........................................................................................**38**

**TABLE OF AUTHORITIES**

**Statutes**

11 U.S.C §507(a)(5) .......................................................................................................... 16

11 U.S.C. § 101(5) ........................................................................................................... 20

11 U.S.C. § 1112(b) .......................................................................................................... 37

11 U.S.C. § 1123(b)(2) ...................................................................................................... 21

11 U.S.C. § 1125 ............................................................................................................... 35

11 U.S.C. § 1125(e) .......................................................................................................... 32

11 U.S.C. § 1127 ............................................................................................................... 36

11 U.S.C. § 1127(f)(2) ...................................................................................................... 35

11 U.S.C. § 1129(a)(7) ................................................................................................. 30, 31

11 U.S.C. § 1129(b) .......................................................................................................... 30

11 U.S.C. § 1141 ............................................................................................................... 31

11 U.S.C. § 365(a) ............................................................................................................ 21

11 U.S.C. § 502(c) ............................................................................................................ 23

11 U.S.C. § 502(g) ............................................................................................................ 31

11 U.S.C. § 502(h) ............................................................................................................ 31

11 U.S.C. § 502(i) ............................................................................................................. 31

11 U.S.C. § 503(b) ............................................................................................................ 42

11 U.S.C. § 507(a) ............................................................................................................ 16

11 U.S.C. § 507(a)(2) ................................................................................................ 12, 28, 29

11 U.S.C. § 507(a)(3) ..................................................................................................... 28, 29

11 U.S.C. § 507(a)(8) .............................................................................................. 13, 14, 28, 29

11 U.S.C. § 726(a)(5) ........................................................................................................ 31

11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7) ...................................................................... 16

11 U.S.C. §§ 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) ..................................................... 16

11 U.S.C. §§ 510, 541, 542, 544, 547, 548, 549, 550, 551, and/or 553 ............................. 20

11 U.S.C. §§ 544, 547 and 548 ................................................................................................ 19

11 U.S.C. §1123 ....................................................................................................................... 11

11 U.S.C. §507(a)(3) ............................................................................................................... 16

11 U.S.C. §507(a)(4) ............................................................................................................... 16

11 U.S.C. §507(a)(6) ............................................................................................................... 16

11 U.S.C. §507(a)(7) ............................................................................................................... 16

28 U.S.C. § 1930 ..................................................................................................................... 42

28 U.S.C. § 1930(a)(6) ............................................................................................................ 37


§ 1123 of the Bankruptcy Code ............................................................................................... 11

TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

Debtor and Debtor-in-Possession, Papas Piping Service, Inc., ("Pappas" or "Debtor") submits this disclosure statement ("Disclosure Statement") describing Debtor's proposed Chapter 11 Plan of Reorganization ("Plan") as follows:

## 1.      Introduction

On January 6, 2026, a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Petition Date") was filed by Debtor and Debtor-in-Possession, Papas Piping Service, Inc.

Chapter 11 allows Debtor, creditors, and other parties in interest to propose a plan of reorganization. A plan may provide for Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.

Here, the Debtor of the above captioned bankruptcy estate proposes the Chapter 11 Plan of Reorganization Dated June 10, 2026 ("Plan"), which was sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.** The Disclosure Statement is explanatory only; the language used in the Plan is binding. Capitalized terms not defined herein are defined in the Plan.

The Plan is a plan of reorganization with the intent to pay all allowed unsecured creditors 100.0% on account of any *allowed* claims. The primary purpose is to pay the Debtor's secured, administrative, priority unsecured, and unsecured creditors in full.

The Effective Date of the Plan will be the first business day of the first full calendar month which is at least fifteen (15) days following the date of the entry of an order by the Bankruptcy Court ("Court") confirming the Plan ("Confirmation Order"), assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order ("Effective Date").

The Plan is proposing payment to allowed unsecured creditors in full with interest at the federal rate.  Debtor believes that Class 1(a), 1(b), and 2(a) creditors are impaired and entitled to vote on the Plan. Class 1(c) and 2(b) are unimpaired, and under applicable law, deemed to have

accepted the Plan

### a.     Purpose of this Document

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether to confirm the Plan.

<u>**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**</u>:

**(1)     WHO CAN VOTE OR OBJECT;**

**(2)     WHAT THE TREATMENT OF YOUR CLAIM[1] IS (*i.e.*, what you will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION;**

**(3)      THE HISTORY OF SHYAM L. DAHYIA AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE;**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

**(5)     WHAT IS THE EFFECT OF CONFIRMATION; AND**

**(6)     WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.  The Bankruptcy Code requires a disclosure statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court has approved this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the

---

[1] "Claim" is defined by the amount your claim that is deemed allowed under the Bankruptcy Code.

3

DEBTOR'S DISCLOSURE STATEMENT

Plan.

**b.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR, THE REORGANIZED DEBTOR, AND ON ALL CREDITORS, INTEREST HOLDERS, AND INTERESTED PARTIES IN THIS CASE.

**c.      Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether to confirm the Plan will take place on _____, 2026, at ___ **p.m.**, in Courtroom 6C, 411 W. Fourth St., Santa Ana, CA 92701.

**d.      Deadline for voting for or against the Plan**

If you are entitled to vote, it is in your best interest to timely vote by executing the enclosed ballot and returning the executed ballot to:

DAVID A. WOOD
MATTHEW W. GRIMSHAW
AARON E. DE LEEST
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Your ballot must be received by **TBD, 2026, at 5:00 p.m. (Pacific Time),** at the address above, or it will not be counted.

**e.      Deadline for Objecting to the Confirmation of the Plan**

Objections to confirmation of the Plan must be filed with the Bankruptcy Court and served upon counsel for Debtor at the addresses listed in the upper left-hand corner of the first page of this Disclosure Statement TBD, 2026, at 5:00 p.m. (Pacific Time).

4

**f.      Identity of Person(s) to contact for more information regarding the Plan**

Any interested party desiring further information about the Plan should contact Debtor's counsel of record: David A. Wood, Matthew W. Grimshaw, and Aaron E. de Leest of Marshack Hays Wood LLP, 870 Roosevelt Ave., Irvine, CA 92620, telephone: (949) 333-7777, facsimile: (949) 333-7778; and email: mgrimshaw@marshackhays.com, dwood@marshackhays.com, and adeleest@marshackhays.com.

**g.      Disclaimer**

The financial data relied upon in formulating the Plan is based on Debtor's books and records which, unless otherwise indicated, are unaudited. The information contained in this Disclosure Statement is provided by Debtor. To the best of Debtor's knowledge and information, everything stated in this Disclosure Statement is true and correct.

The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**2.      Background Information**

What follows is a brief summary of the dates and circumstances that led to the Debtor's petition for bankruptcy relief and significant events that have occurred during the case.

**a.      Debtor's Operations**

Debtor is a full-service design build piping company that specializes in commercial process and other specialized piping that is used in critical infrastructure for commercial clients. Pappas was founded in 1988 by Mike Pappas ("Mr. Pappas") and Guillermo Silva Jr. ("Mr. Silva") who owned the company 50/50. Since its founding, the Debtor served a premier set of customers, including top-tier general contractors, leading property management firms, and direct clients within the commercial real estate market. The Debtor's expertise is essential to maintaining and developing critical infrastructure in one of the nation's most dynamic commercial zones, confirming our solid operational relevance and stability.

In 2022, Mr. Butler purchased the Debtor from Mr. Pappas and Mr. Silva, when Mr. Pappas and Mr. Silva decided to retire. The structure of the sale in 2022, was that a holding company,

5

DEBTOR'S DISCLOSURE STATEMENT

Ormond Corporation, a Delaware Corporation ("Ormond Corp") purchased the shares of the Debtor. Mr. Butler then became President, Chief Financial Officer and Secretary of the Debtor. On April 28, 2022, Live Oak Banking Company ("Live Oak") financed Ormond Corp's original purchase of the Debtor. As part of the loan, Live Oak has a second lien on William and Anne Butler's home.

### b.    Debtor's Financial Difficulties and Bankruptcy Filing

Soon after Mr. Butler's acquisition of the Debtor in the early half of 2022, three separate factors came into play that dramatically changed the viability of the business and affected its operations.  First, shortly after the acquisition, Debtor lost nearly 40% of its revenue due to a loss of a large $3 million contract.  Second, the Debtor's traditional customers (general contractors and their clients) were reticent in moving forward with some projects due to the high-interest-rate environment and general macroeconomic uncertainty associated with the election cycle. This created a temporary lag in new project awarding and initiation. Third, the overall piping and general contractor industry is relatively close-knit and based on relationships. The transition from the decade's long ownership of Mr. Pappas and Mr. Silva to Mr. Butler, in a post-covid world, was difficult, and included multiple growing pains.

As the three factors were intensifying, the Debtor borrowed funds to make payroll and purchase materials, some from Mr. Butler and his family, and some in the form of high-interest rate business loans from "MCA" style lenders. While necessary at the time, the expense of this debt structure added unsustainable pressure to the monthly cash flow.

### c.    Live Oak and Pre-Petition Negotiations

In turn, the cash crunch on the Debtor resulted in the Debtor having difficulties maintaining its obligation to Live Oak. Mr. Butler and his wife tried to sell their home in May 2025, and Live Oak approved a sales price of $5.8 million. However, the Butlers had to reduce the sales price to $5.5 million. Live Oak would not approve the sale unless someone else could pay Live Oak the $300,000 shortfall. *Id.* Unfortunately, the Butlers did not have $300,000 to pay Live Oak for the shortfall, the sale of the home fell through. The sale of the house would have paid down the Live Oak loan by $1.2 million.

DEBTOR'S DISCLOSURE STATEMENT

As a result, on June 5, 2025, Debtor missed a payment to Live Oak. Shortly thereafter, "A Notice of Right to Cure Default" dated July 24, 2025, was issued by Live Oak to Ormond Corp and the Debtor. After months of emails and some discussion, Ormond Corp and the Debtor finally ended up with a forbearance agreement dated September 9, 2025 ("Forbearance Agreement"). During discussions with Live Oak, Mr. Butler informed Live Oak that he and his wife would have to file for personal bankruptcy because of a business debt owed to Bank of America.

As part of the Forbearance Agreement, Debtor paid Live Oak the first payment of $20,000 by September 10, 2025, but Debtor missed the next payment of $5,000 due October 5, 2025. At this point, the Butlers again tried to sell their home to assist in paying down the Live Oak secured debt. The proposed sale was set to close on October 1, 2025, and was set to pay Live Oak $1,589,098.99. Again, sadly, the sale did not close because of a last minute judgment lien recorded against the residence by Bank of America.

As a result of the cancellation of the sale of the Butlers' residence, on October 23, 2025, Live Oak sent a notice of default and acceleration of its note. As soon as this notice was received, Debtor paid the $5,000. In order to continue ongoing negotiations, Live Oak demanded that the Debtor had to pay the $73,914.23 in back interest as well, which the Debtor paid. Live Oak generally refused to speak or respond to emails after this payment.

On November 24, 2025, Live Oak then demanded $350,000 as a good faith payment only in order for Live Oak to "continue considering forbearance terms at its discretion." The Debtor requested that if it paid $350,000, would Live Oak agree to reinstate the loan? The answer from Live Oak was no, it only allowed the Debtor to continue to negotiate with Live Oak.

### d.      The Butler's personal bankruptcy

In order to sell their personal residence, the Butlers were forced to file their own personal Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California, on November 20, 2025, commencing Case No. 25-51814. The Butlers stated intention in their personal bankruptcy case is to sell their personal residence, which will significantly reduce the principal balance owed to Live Oak (estimated payment to be around $1.25 million).

---

7

### e.      Mr. Pappas returns and Mr. Teeple is appointed as Chief Restructuring Officer

In light of the operational issues after purchasing the Debtor, Mr. Butler reached out to Mr. Pappas to assist in turning around the Debtor's operations and cash flow issues. At that time, Mr. Pappas was living in South Carolina, but he cared deeply about the viability of the business he founded, his former employees, and his former clients. Mr. Pappas agreed to assist the Debtor in turning its operations around and utilized his relationships to obtain advances from certain general contractors and/or clients to assist in the working capital needs and operational cash flow. As a result, the Debtor has fully paid off one of the high interest MCA loans and is current on its ongoing vendor debt and the sole remaining MCA loan. As of the date of filing, the only known unsecured creditors (beyond trade vendors) are the seller's notes to Mr. Pappas and Mr. Silva.

Additionally, in light of the various circumstances, Mr. Butler's personal Chapter 11 bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to retain Mr. Joshua Teeple of Grobstein Teeple LLP as its Chief Restructuring Officer. Mr. Teeple has many years of experience as a fiduciary and is working with both Mr. Butler and Mr. Pappas to continue to turn the Debtor's operations around.

Notwithstanding its past financial difficulties, the Debtor, Mr. Butler, Mr. Pappas, and Mr. Teeple have begun to turn around operations. Since Mr. Pappas' return, the Debtor has lined up $11 million in specialty project work that is now in the design phase. This specialty work is slated to begin at the beginning of 2026 and take the Debtor through 2026 and into 2027. This work does not include the everyday plumbing bids that the Debtor will handle throughout the year that are anticipated to contribute another 6 million in revenue. Accordingly, the Debtor believes that it has a viable business that can be operated profitably going forward.

### f.      Significant events during the Bankruptcy

The following is a list of significant events which occurred during this case:

#### i.      The First Day Motions

On or about January 6, 2026, as Dk. Nos. 2, 3, and 4, the Debtor filed the following first day motions:

DEBTOR'S DISCLOSURE STATEMENT

(1)    Debtor's motion for order authorizing use of cash collateral to confirm that its secured creditor(s) are adequately protected ("Cash Collateral Motion");

(2)    Debtor's motion for order approving maintenance of pre-petition bank accounts and continued use of cash management procedures ("Cash Management Motion");

(3)    Debtor's motion for authorization to pay pre-petition payroll ("Payroll Motion"); and

(4)    Debtor's motion for order (a) prohibiting utility providers from altering, refusing, or discontinuing service, (b) deeming utilities adequately assured of future performance, and (c) establishing procedures for resolving requests for additional adequate assurance of payment ("Utility Motion," collectively the Cash Collateral Motion, Cash Management Motion, and Utility Motion, the "First Day Motions").

The First Day Motions were set for hearing on January 9, 2026. On January 12, 2026, as Dk. Nos. 27, 28, 29, and 30, the Court entered the following orders: (1) granting the Cash Collateral Motion on an interim basis, and setting a final hearing on February 3, 2026; (2) granting in part and denying in part the Cash Management Order; (3) granting the Payroll Motion; and (4) granting on an interim basis the Utility Motion.

At the February 3, 2026, continued hearing on the Cash Collateral Motion, the Court granted the use of Cash Collateral on a final basis. That same day, as Dk. No. 53, the Court entered an order granting the Cash Collateral motion on a final basis ("Final Cash Collateral Order").

### ii.    Retention of Professionals

On January 26, 2026, as Dk. No. 46, Debtor filed an Application to Employ Marshack Hays Wood LLP as General Counsel ("Employment Application"). On February 18, 2026, as Dk. No. 71, the Court entered an order granting the Employment Application.

On February 3, 2026, as Dk. No. 49, Debtor filed an Application to Employ Joshua R. Teeple and Grobstein Teeple LLP as CRO and Financial Advisors ("CRO Application"). On February 24, 2026, as Dk. No. 78, the Court entered an order granting the CRO Application.

On February 5, 2026, as Dk. No. 61, Debtor filed an Application to Employ Stretto, Inc. ("Stretto Application). On February 24, 2026, the Court entered an order granting the Stretto Application.

DEBTOR'S DISCLOSURE STATEMENT

### iii.      Claims Bar Date & Filed Claims

On February 5, 2026, as Dk. No. 59, Debtor filed and served a notice of claims bar date, setting April 10, 2026, as the date by which creditors were required to file a proof of claim. There were seventeen filed claims in this case: [2]

(1)    On January 13, 2026, Hitachi Global Air Power US LLC filed Proof of Claim 1-1 asserting a general unsecured claim for $81,166.68;

(2)    On February 22, 2026, Puretec Industrial Water filed Proof of Claim 2-1 asserting a general unsecured claim for $50,813.98;

(3)    On February 5, 2026, Michael Paul Pappas filed Proof of Claim 3-1 asserting a general unsecured claim for $400,000. The basis for the claim is "sale of business" based on an agreement;

(4)    On February 11, 2026, GreatAmerica Financial Services Corporation filed Proof of Claim 4-1 asserting a general unsecured claim for $12,496.90;

(5)    On February 17, 2026, the Internal Revenue Service filed Proof of Claim 5-1 asserting an unsecured priority claim for $1,000;

(6)    On February 19, 2026, Live Oak Banking Company filed Proof of Claim 6-1 asserting a secured claim for $3,189,601.40 secured by a UCC Security Agreement on all business assets of Debtor;

(7)    On February 27, 2026, American Express National Bank filed Proof of Claim 7-1 asserting a general unsecured claim for $5,144.50;

(8)    On March 6, 2026, PG&E filed Proof of Claim 8-1 asserting a general unsecured claim for $696.69;

(9)    On March 9, 2026, Guillermo Silva filed Proof of Claim 9-1 asserting a general unsecured claim for $400,000;

(10)    On March 10, 2026, Able Plumbing Sewer & Drain filed Proof of Claim 10-1

---

[2] A true and correct copy of this Court's webPACER Claims Register for Case No. 8:26-bk-10033-MH as of June 10, 2026, is attached to the declaration of Joshua Teeple ("Teeple Decl.") as **Exhibit "1."**

10

asserting a general unsecured claim for $7,368;

(11)    On March 12, 2026, American Contractors Indemnity Company filed Proof of Claim 11-1 asserting a general unsecured claim for $0.00, for an Indemnity Agreement;

(12)    On March 23, 2026, West American Finance Corporation filed Proof of Claim 12-1 asserting a secured claim for $1,485,000 secured by a UCC ;

(13)    On April 2, 2026, Sheppard, Mullin, Richter & Hampton LLP filed Proof of Claim 13-1 asserting a general unsecured claim for $69,949.57;

(14)    On April 7, 2026, WEX filed Proof of Claim 14-1 asserting a general unsecured claim for $8,031.43;

(15)    On April 7, 2026, William Butler filed Proof of Claim 15-1 asserting a secured claim for $537,923.70;

(16)    On April 10, 2026, William Butler filed Proof of Claim 16-1 asserting a general unsecured claim for $20,786;

(17)    On April 14, 20206, Franchise Tax Board filed Proof of Claim 17-1 asserting an unsecured priority claim for $2,764.21;

*See* Teeple Declaration, Ex. 1, pgs. 46-51.

### iv.    Compliance and Administrative Matters

Debtor has worked hard to ensure that the Estate remains in full and complete compliance with all the requirements imposed in a Chapter 11 case including the filing of monthly operating reports, and the payment of quarterly fees to the UST.

## 3.    Summary of the Plan of Reorganization

### a.    Overview

The Plan provides a 100% payout with interest to secured, administrative, priority, and general unsecured creditors. As required by § 1123 of the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. *See* 11 U.S.C. §1123. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

DEBTOR'S DISCLOSURE STATEMENT

### b.    What Creditors Will Receive Under the Plan

As required by the Bankruptcy Code, the Plan classifies Claims in various classes according to their priority. The Plan states whether each class of Claim is impaired or unimpaired. The Plan provides the treatment each class will receive.

### c.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. Here, the Plan Proponent has not placed the following claims in a class:

### i.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under 11 U.S.C. § 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment. The following chart lists all the known Section 507(a)(2) administrative claims and their treatment under the Plan:

| **Name** | **Amount Currently Owed** | **Treatment** |
|---|---|---|
| Marshack Hays Wood, LLP –Debtor's Special Litigation and Reorganization Counsel | Current fees through the hearing on Plan Confirmation are estimated to be $100,000. Additional fees may be incurred through the duration of this Chapter 11. | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |
| Grobstein Teeple LLP – CRO and Financial Advisor | $35,000 (estimate) | Paid in full on the Effective Date, unless claimant agrees to a different treatment. |
| Clerk's Office Fees | $0.00 (estimate) | Paid in full on the Effective Date. |
| Stretto, Claims Agent | $25,000 | Paid in full on the Effective Date, unless claimant agrees to a different treatment. |

12

DEBTOR'S DISCLOSURE STATEMENT

| Office of the U.S. Trustee Fees | $0.00 (estimate) | Paid in full on the Effective Date. |
|---|---|---|
| **TOTAL** | $160,000   (estimate) | |

By supporting confirmation of the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any of these Administrative Claims. By supporting confirmation the Plan, creditors also understand the final amount of allowed fees and expenses of the professionals employed in this case may be higher or lower than the figures set forth above, which are just estimates.

The Court must rule on all fees listed in this chart before the fees will be allowed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Plan Proponents best estimate as to the amount of allowed administrative claims estimated to be incurred by professionals prior to the Effective Date. The actual administrative claims may be higher or lower.

### ii.    Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires each holder of Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored non-priority unsecured claim provided for under the Plan. All Priority Tax Claims will be paid as set forth in the below chart. The Reorganized Debtor (as appropriate) reserves all rights to object to any such Priority Tax Claims.

DEBTOR'S DISCLOSURE STATEMENT

The following chart lists all of the § 507(a)(8) priority tax claims and their treatment under the Plan:[3]  The chart is based on the filed and scheduled claims in this case.

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $1,000 (est.)[4] | Paid in full on the Effective Date. |
| Franchise Tax Board | $2,553.31 (est.)[5] | Paid in full on the Effective Date |
| TOTAL | $3,553.31 (est.) | |

### d.     Treatment of Classified Claims and Interests

The Classes below classify Claims (except for Administrative Claims and Priority Tax Claims) against the Estate for all purposes, including voting, confirmation and distribution pursuant to the Plan.

### i.     Classes of Secured Claims – Class 1(a), 1(b), and 1(c)

Secured claims are claims secured by liens on property of the Estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan.

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1(a) | Live Oak Banking Company ("Live Oak")<br><br>Claim Amount - $3,189,601.40<br><br>Collateral – All assets of the Debtor pursuant to a perfected UCC-1 dated March 18, 2022, as Document Number U220175905829 | Yes | Live Oak's will be paid according to the terms of the underling loan documents with a monthly payment of approximately $49,490 per month, with interest shall accrue on Live Oak's at the contractual rate.<br><br>Additionally, Live Oak has an approximate $1.25 million claim against Mr. Butler's personal residence, which is currently being marketed for sale. Upon the sale of the residence and the payment to Live Oak of the $1.25 million, the Plan will then adjust to pay monthly payments |

---

[3] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.
[4] *See* Teeple Decl., Ex. 1, pgs. 46-51.
[5] *Id*., at Ex. 9 (asserting a priority unsecured claim for $2,553.31 and a general unsecured claim for $210.90).

14

DEBTOR'S DISCLOSURE STATEMENT

| | | | |
|---|---|---|---|
| | | | to Live Oak in the amount of $24,745 per month, with interest at the contractual rate until Live Oak is paid in full. Pursuant to the projections attached to the Teeple Declaration as Exhibit "2," Live Oak is anticipated to be paid within three (3) years of the Effective Date.<br><br>Live Oak shall retain its lien against its collateral, with a replacement lien arising as to such assets to the extent permitted by non-bankruptcy law. |
| 1(b) | West American Finance Corporation and/or Steve Harmson ("West American")<br><br>Claim Amount - $469,000<br><br>Collateral – All assets of the Debtor pursuant to a perfected UCC-1 dated March 21, 2024, as Document Number U240026990432 | Yes | Debtor will pay the allowed amount of West American's claim in full with monthly payments of $13,805.00 through the duration of the Plan until West American is paid in full, with 3.8% simple interest.<br><br>West American shall retain its lien against Debtor's collateral. |
| 1(c) | Pirs Capital, LLC ("Pirs Capital")<br><br>Claim Amount – approximate $295,346.00<br><br>Collateral- Junior priority lien on all assets of the Debtor pursuant to a perfected UCC-1 dated January 8, 2025, as Document Number U250101451421 | No | Pirs Capital and the Debtor entered into a pre-petition first amended settlement agreement on or about November 4, 2025 ("First Amended Pirs Settlement"). A true and correct copy of the First Amended Pirs Settlement is attached to the Teeple Declaration as Exhibit "3."<br><br>In the Cash Collateral Motion and Final Cash Collateral Order, Pirs Capital was to be paid in accordance with the First Amended Pirs Settlement. The Plan incorporates the treatment of Pirs Capital as set forth in the First Amended Pirs Settlement herein. |

15

DEBTOR'S DISCLOSURE STATEMENT

## ii.  Priority Unsecured Claims

Certain priority claims that are referred to under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Debtor does not have any creditors with claims entitled to priority under 11 U.S.C. §§ 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7). If it is determined that there are priority claims referred to in 11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7), such claims will be paid on the Effective Date.

## iii.  Classes of General Unsecured Claims – Class 2(a) & (b)

Class 2(a) and 2(b) consists of general unsecured claims. General unsecured claims are unsecured claims not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies this Plan's treatment of the classes containing the general unsecured claims:

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2(a) | Convenience Class – Allowed General Unsecured Claim(s) Class 2(a) Option<br><br>Total Claims: Unknown | No. There may be some insider General Unsecured Claims. To the extent that any holder of an allowed insider General Unsecured Claim votes on the Plan, such vote will not be counted. | Yes (Creditors in this class are entitled to vote on the Plan). | Each holder of an Allowed General Unsecured Claim may voluntarily elect to receive 50% of their Allowed General Unsecured Claim not to exceed $25,000 on the Effective Date or as soon as reasonably practicable after the Disbursing Agent has sufficient cash on hand to pay 50.0% of the claim. Any Allowed General Unsecured Claim holder who opts into this Class 2A will expressly waive any of the creditor's Allowed General Unsecured Claim in excess of $25,000.<br><br>If an Allowed General Unsecured Claim holder fails to submit a ballot or if the submitted ballot does not |

16

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | affirmatively elect to be treated as a Class 2(a) creditor, then such Allowed General Unsecured Claim holder will be treated as Class 2(b) General Unsecured Claim Holder. |
| 2(b) | General Unsecured Claims. A true and correct copy of the General Unsecured Claimants in this class is attached to the Teeple Declaration as Exhibit "4." | No. There may be some insider General Unsecured Claims. To the extent that any holder of an allowed insider General Unsecured Claim votes on the Plan, such vote will not be counted. | No | Unless otherwise agreed by individual claimholders, in full and complete satisfaction of all Class 2(b) claims, claimants shall receive payment of their Allowed General Unsecured Claims in full, including interest at the federal judgment rate as of the Petition Date (3.8%), from the Petition Date until paid in full over the duration of the Plan. A true and correct copy of the Plan Projections are attached to the Teeple Declaration as Exhibit "2." The foregoing treatment shall be in full settlement and satisfaction of all Class 2(B) claims. |

### iv.  Class of Equity Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. Here, Ormond Corp shall retain their ownership of all existing interests in the Debtor without impairment.

## 2.    Means of Effectuating the Plan and other provisions

### a.      Funding for the Plan

It is projected that the Estate will have cash on hand at the Effective Date to make the

necessary Effective Date payments and a percentage of the allowed administrative professional fees on the Effective Date. Thereafter, the Reorganized Debtor will fund the Plan payments through continued operations. A true and correct copy of the Plan Projections are attached to the Teeple Declaration as Exhibit "2." The Debtor's projections demonstrate that through cash on hand and income generated by the Debtor over the life of the Plan, the Debtor will have the ability to make payments due: (1) on the Effective Date; (2) to administrative claim holders; (3) to Class 1(a), 1(b), and 1(c) claim holders; and (4) to Class 2(a) and 2(b) class holders. These projections are based upon the historical income and expenses of the Debtor, as well as the actual income and expenses incurred during the course of the Bankruptcy Case.

As set forth in Class 2(b), general unsecured creditors are expected to be paid in full, and will receive interest (3.8%) at the federal judgment rate, which is significantly more then the approximately 0% general unsecured creditors would receive in a hypothetical chapter 7 liquidation. The Plan term is approximately three (3) years. *See* Teeple Decl., Ex. 2, pgs. X-Y.

### b.      Disbursing Agent

Joshua Teeple shall act as the disbursing agent for the purpose of making all the distributions provided for under the Plan ("Disbursing Agent"). The Disbursing Agent shall be bonded at the expense of the Estate. The Disbursing Agent will receive compensation on an hourly basis at its normal hourly rates. The Disbursing Agent's fees and expenses will be paid as an administrative expense from the Plan payments. The Disbursing Agent may employ professionals, including Grobstein Teeple LLP and Marshack Hays Wood LLP to the extent necessary at their normal hourly rates.

### c.      Debtor's Post-Confirmation Management

The Debtor will become the Reorganized Debtor on the Effective Date. The Reorganized Debtor will be responsible for managing its assets and financial affairs.

### d.      Preservation of Causes of Action, Avoidance Actions, and other Litigation Claims

The Debtor reserves for the Estate, the Reorganized Debtor, and any Chapter 11 or Chapter 7

DEBTOR'S DISCLOSURE STATEMENT

Trustee that may hereafter be appointed, all rights to commence and pursue, as appropriate, any and all causes of action and avoidance actions, whether arising prior to or after the Petition Date, in any court or other tribunal, including without limitation, in an adversary proceeding filed in the Court, except for as otherwise provided in the Plan. On the Effective Date, the Reorganized Debtor will be vested with authority to enforce, file, litigate, prosecute, settle, and collect on any claim or cause of action, including actions under 11 U.S.C. §§ 544, 547 and 548.

Unless a claim for relief or avoidance action against any person is expressly waived, relinquished, released, compromised, or settled as provided or identified in the Plan, any confirmation order, or prior order of the Court, the Debtor expressly reserves all claims for relief and avoidance actions for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims for relief or avoidance actions upon or after confirmation or consummation of the Plan. All avoidance actions and other claims for relief are preserved under the Plan for the benefit of the Estate, except as otherwise provided for in the Plan.

"Avoidance action" means causes of action arising under 11 U.S.C. §§ 510, 541, 542, 544, 547, 548, 549, 550, 551, and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action. This specifically includes the transfers listed on the Debtor's SOFA made during the 90 days, 1 year and 2 years prior to the Petition Date.

"Claim for Relief" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims (as defined in 11 U.S.C. § 101(5)) and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise that the Debtor and/or the Estate may hold against any person as of the Effective Date. This specifically includes, but is not limited to, non-bankruptcy claims such as breach of fiduciary duty, embezzlement, fraud, and malpractice claims.

DEBTOR'S DISCLOSURE STATEMENT

ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF THAT IS AVOIDABLE UNDER THE CODE OR THAT HOLD A CLAIM AGAINST THE ESTATE THAT COULD BE SUBJECT TO AN OBJECTION BASED UPON FAILURE TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE DIRECTED TO REVIEW THEIR RECORDS AND/OR THE DEBTOR'S SCHEDULES FOR FURTHER INFORMATION, HOWEVER, ALL RIGHTS OF THE DEBTOR AND THE ESTATE ARE RESERVED WITH RESPECT TO ANY AND ALL TRANSFERS OR SETOFF WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY CODE.

All professional fees incurred in pursuing the avoidance actions or other causes of action shall be paid by the Reorganized Debtor without the necessity of a Court order. However, the Court will reserve exclusive jurisdiction to decide any and all disputes regarding the payment of the fees and costs related to post-confirmation professional fees, upon request of a party-in-interest and after notice and a hearing.

### e.      Revesting of Property in the Reorganized Debtor

Except as otherwise provided in the Plan, on the Effective Date, all property and rights of the Debtor or the Estate will revest in, or be transferred to, the Reorganized Debtor, free and clear of all claims, liens, and rights of creditors and interests of interest holders. As of the Effective Date, all property of the Reorganized Debtor will be free and clear of all claims, liens, and other rights o creditors and interests of interest holders, except as otherwise expressly provided in this section or otherwise in the Plan.

### f.      Executory Contracts and Unexpired Leases

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date. The entry of the Confirmation Order by the Court shall constitute approval of such assumption and/or rejection as appropriate pursuant to 11 U.S.C. §§ 365(a) and 1123(b)(2).

DEBTOR'S DISCLOSURE STATEMENT

Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed. Presently, Debtor is unaware of any executory contracts or unexpired leases that will be rejected.

To the extent the following are executory contracts and unexpired leases, Debtor seeks to assume such agreements as of the Effective Date:

| Party | Subject of Executory Contract | Cure Amount |
|---|---|---|
| Azuga | Lease of automobile(s) for Fleet Trucking | $0.00 |
| Dollinger Properties, Inc. | Commercial Lease located at 1450 Koll Circle, Suites, 106, 107, 108, San Jose, CA 95112 | $0.00 |
| Shamrock | Printer | $0.00 |
| Spectrum VOIP | Office Phones | $0.00 |
| U.S. Bank Equipment | Plotter Lease | $0.00 |
| BBSI | Employee Benefits, HR & Payroll | $0.00 |

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under this section of the Plan, or that are the subject of a pending motion to assume, and if applicable assign, Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

Any claim for damages arising from the rejection of an executory contract or unexpired lease must be filed and served on counsel for Debtor within thirty (30) days after the Confirmation Order is entered. Any Claim based on the rejection of an Executory Contract will be forever barred from receiving any distribution under the Plan if the proof of claim is not timely filed.

DEBTOR'S DISCLOSURE STATEMENT

**g.      Objection to Claims**

The Reorganized Debtor through the Disbursing Agent, and any party in interest, may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this Case. The deadline to file objections to claims shall be six months (180 days) after the Effective Date. The Court shall retain jurisdiction over this case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any claim. The Reorganized Debtor will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

The Reorganized Debtor, and any party in interest may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this Case. The Court shall retain jurisdiction over this case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any claim.

**h.      Amendments to Claims; Claims Filed After the Confirmation Hearing**

Except as otherwise provided in the Plan, after the Confirmation Hearing, a proof of claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the amount set forth therein. Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of Claim (whether filed to assert a new Claim or to amend a previously filed Claim) filed after the Confirmation Hearing shall be deemed disallowed in full and expunged without any action by the Debtor or Reorganized Debtor.

### i.     Estimation of Claims

The Reorganized Debtor through the Disbursing Agent may, at any time, request that the Court estimate any contingent or unliquidated General Unsecured Claim pursuant to 11 U.S.C. § 502(c) regardless of whether the Reorganized Debtor previously objected to such claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any contingent or unliquidated claim, that estimated amount will constitute the allowed amount of such claim or a maximum limitation on such claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on such claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim.

### j.     Distributions to be Made Pursuant to the Plan

### i.     Distributions on Allowed Claims

Distributions on allowed claims under the Plan will be made by the Disbursing Agent beginning on the Effective Date or as promptly thereafter as practicable. The Disbursing Agent's fees shall be paid from continued operations or the proceeds of any sale. Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Debtor.

Except as otherwise agreed to by the  Reorganized Debtor through the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in Debtor's schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure, or if a different address is stated in a proof of claim duly filed with the Court, to such address. Nothing contained in the Plan shall require Debtor to attempt to locate any holder of an allowed claim.

Checks issued by Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof ("Claiming Period"). Requests for reissuance of any check shall be made to Debtor by the holder of the allowed claim to whom such check originally was

issued, prior to the expiration of the Claiming Period. After such date, the unclaimed property held on account of such voided check or such claim shall revest in the Reorganized Debtor free and clear of all claims and interests and be applied in accordance with the terms of the Plan.

### ii.      No Distribution Pending Allowance of a Claim or Ongoing Litigation

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a disputed claim unless and until all objections to such disputed claim have been settled or withdrawn or have been determined by final order, and the disputed claim, or some portion thereof, has become an allowed claim; provided, however, that if the only dispute regarding a disputed claim is to the amount of the disputed claim, the holder of a disputed claim shall be entitled to a distribution on account of that portion of the disputed claim which the Disbursing Agent does not dispute at the time and in the manner that the Disbursing Agent makes distributions to the holders of allowed claims pursuant to the provisions of the Plan.

A disputed claim is a claim that has not been allowed or disallowed and to which either: (i) a proof of claim has been filed or deemed filed and the Disbursing Agent or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the claim was not scheduled or the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

The Disbursing Agent will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure unless the amount allowed by the compromise does not exceed $5,000, in which case no Court approval is necessary.

### k.      Fractional Dollars, *De Minimis* Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down. Debtor shall have the discretion not to make payments of less than twenty-five dollars ($25) on account of any allowed General Unsecured Claim, unless a specific request is made in writing to the Debtor on or before ninety days after

24

DEBTOR'S DISCLOSURE STATEMENT

allowance of such claim.

## l.      Disposition of Assets

From and after the Effective Date, and consistent with the terms of the Plan, the Debtor or Reorganized Debtor, as applicable, will be entitled to sell, transfer, encumber, or otherwise dispose of any interest in any of the assets of the Estate, the Debtor, or the Reorganized Debtor, as the case may be, without the need for any notice to creditors or other parties in interest, and without the need for obtaining approval of the Bankruptcy Court. The Reorganized Debtor reserves the right to sell all or substantially all of its assets after the Effective Date. In the event of such a sale of all or substantially all of the Debtor's assets, the proceeds of any sale will be held in a segregated account by the Disbursing Agent and distributed pursuant to the Plan.

## 3.      Tax Consequences of the Plan

The following discussion summarizes some of the federal income tax consequences that implementation of the Plan may have on Debtor. This summary does not address the federal income tax consequences to creditors or interest holders. This summary does not address foreign, state, or local income tax consequences, estate or gift tax consequences of the Plan.

To the best of the Plan Proponent's knowledge, Debtor does not expect to incur any substantial tax liability as a result of implementation of the Plan.

THE TAX CONSEQUENCES TO CREDITORS OR INTEREST HOLDERS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH HOLDER. CREDITORS MAY RECOGNIZE INCOME OR LOSS AS A RESULT OF THE PLAN. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

DEBTOR'S DISCLOSURE STATEMENT

THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH CREDITOR OR INTEREST HOLDER. ACCORDINGLY, EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

## 4.      Confirmation Requirements and Procedures

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are *not* the only requirements for confirmation.

### a.      Who may vote or object to the Plan

#### i.      Who may object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

#### ii.      Who may vote to accept/reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or

26

DEBTOR'S DISCLOSURE STATEMENT

interest holder has a claim or interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### iii.      What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest is not timely filed. A claim is deemed allowed if (1) it is scheduled in Debtor's Schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult the Schedules to see how your claim or interest is characterized.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS SET FOR APRIL 10, 2026. Creditors should not deem the lack of an objection to be consent that their claims will be paid under the Plan. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) a proof of claim was filed or it is scheduled on Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### iv.      What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

Here, Debtor does not believe that any members of Class 1, Class 2, or Class 3 are impaired. As a result, the holders of claims in those classes are not entitled to vote to accept or reject the Plan.

DEBTOR'S DISCLOSURE STATEMENT

Parties who dispute Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that Debtor has incorrectly characterized the class.

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Plan Proponent has incorrectly characterized the class.

### v.        Who is *NOT* entitled to vote for the Plan

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to 11 U.S.C. § 507(a)(2), (a)(3), and (a)(8); (4) claims in classes that do not receive or retain any value under the Plan; and (5) claims where there are pending objections and the Court has not estimated the claim for voting purposes. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to 11 U.S.C. § 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### vi.        Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### vii.      Votes necessary to confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes.

### viii.      Votes necessary for a class to accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, vote in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, vote to accept the Plan.

### ix.      Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 11 U.S.C. § 1129(b) and applicable case law.

### x.      Request for confirmation despite nonacceptance by impaired class(es)

If any classes are deemed impaired and vote not to accept the Plan, Debtor will ask the Court to confirm the Plan by cramdown on impaired classes.

## 5.      Liquidation Analysis

Another confirmation requirement is the "Best Interest Test," embodied in 11 U.S.C. § 1129(a)(7) which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if Debtor were liquidated under

Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

The Plan still meets the best interest of creditors test required by 11 U.S.C. § 1129(a)(7), as all classes of creditors are receiving property of value, that is not less than they would receive in a Chapter 7, inclusive of interest at the federal judgment rate (as the Estate is solvent). A true and correct copy of the Debtor's liquidation analysis is attached to the Teeple Declaration as Exhibit "5." Specifically, since creditors are being paid in full, with interest (as required by 11 U.S.C. § 726(a)(5), the Estate believes that the Plan meets the best interest of creditors test under 11 U.S.C. § 1129(a)(7). *Id.*, pg. 71.

## 6.   Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of Debtor or any successor to Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand of the Effective Date to pay all claims and expenses which are entitled to be paid on such date. This aspect of feasibility is satisfied, because, as discussed above, the Debtor will have sufficient cash on hand of the Effective Date, which will pay all allowed Chapter 11 administrative expenses and other claims to be paid and/or segregated on the Effective Date. *See* Teeple Decl., Ex. 3, pgs. 66-68. The Estate professionals have agreed to take payment over time on their approved fees in order to allow the Debtor to reorganize.

DEBTOR'S DISCLOSURE STATEMENT

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required payments under the Plan. Here, the Plan will be funded from the future income generated by the Reorganized Debtor's business operations. *See* Teeple Decl., Ex. 3, pgs. 66-68. The Disbursing Agent believes that sufficient funds will exist at confirmation fo make all payments required by the Plan. As a result, the Debtor has satisfied this aspect of feasibility. *Id.*

**7.    Effect of Confirmation of Plan**

**a.    Discharge**

On the Effective Date, the Debtor and the Reorganized Debtor, to the fullest extent permitted by 11 U.S.C. § 1141, shall be deemed discharged and released from all claims and interests including, without limitation, demands, liabilities, claims, and interests that arose before the Effective Date and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i) regardless of whether: (1) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed; (2) a claim or interest based on such a debt or interest is allowable under 11 U.S.C. § 502; or (3) the person holding the claim or interest based on such debt or interest has accepted the Plan.

**b.    Continuing Stay/Injunction**

The automatic stay is lifted upon confirmation as to property of the bankruptcy Estate. However, as of the Effective Date and subject to the terms of the Plan and the Disclosure Statement, the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all persons and entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against Debtor, the Reorganized Debtor, the Estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or

DEBTOR'S DISCLOSURE STATEMENT

recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section, and jurisdiction of the Bankruptcy Court.

### c.      No Liability for Solicitation or Participation

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### d.      Limitation of Liability

To the maximum extent permitted by law, neither the Reorganized Debtor, the Estate, the Disbursing Agent, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

DEBTOR'S DISCLOSURE STATEMENT

### e.      Revesting of Property in the Reorganized Debtor

Except as otherwise provided in the Plan, on the Effective Date, all property and rights of the Debtor or the Estate will revest in, or be transferred to, the Reorganized Debtor, free and clear of all claims, liens, and rights of creditors and interests of interest holders.  As of the Effective Date, all property of the Reorganized Debtor will be free and clear of all claims, liens, and other rights of creditors and interests of interest holders, except as otherwise expressly provided in this section or otherwise in the Plan.

### f.      Preservation of all Litigation and Causes of Action

After confirmation of the Plan, the Reorganized Debtor shall retain all rights to commence and pursue, as appropriate, any and all claims or causes of action and the Civil Actions, including objections to claims, whether arising before or after the date on which Debtor filed its petition, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Case. The failure to list any potential or existing claims or causes of action is not intended to limit the rights of the Reorganized Debtor to pursue any claims or causes of action not listed or identified. After the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims, including the Civil Actions, without the need for approval by the Court.

Unless a claim, cause of action or Civil Action against a creditor or other entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any other final order of the Court, Debtor expressly reserves such claim, cause of action, or Civil Action for later adjudication (including, without limitation, claims and causes of action not specifically identified or which the Debtor or its Estate may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtor, or the Estate at this time or facts or circumstances which may change or be different from those which Debtor or the Estate now believe to exist). No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, causes of action, or Civil Actions upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the order confirming the

Plan, except where such claims, causes of action, or Civil Actions have been explicitly released in the Plan. In addition, Debtor, and the Estate expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits.

Delivery (by any means) of the Plan or this Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of Debtor, or who has transacted business with Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by Debtor subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by Debtor as disputed, contingent, or unliquidated.

### g. Modification of the Plan

Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification is non-material or relates only to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting of the Plan.

The Reorganized Debtor may also seek to modify the Plan at any time after confirmation of the Plan only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

Moreover, pursuant to 11 U.S.C. § 1127(f)(2), the Plan, as modified, shall become the Plan only after there has been disclosure under 11 U.S.C. § 1125 as the Court may direct, notice and a hearing, and such modification is approved.

### h. Changes in Rates subject to Regulatory Commission Approval

To the best of Debtor's knowledge, Debtor is not subject to governmental regulatory commission approval of its rates.

DEBTOR'S DISCLOSURE STATEMENT

### i.    Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.    To determine the allowability, classification, or priority of claims and interests upon objection by Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.    To determine the extent, validity and priority of any lien asserted against property of Debtor, Reorganized Debtor, or property of the Estate;

d.    To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

e.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f.    To determine any request for payment of administrative expenses;

g.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

h.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before, on, or after the Effective Date;

i.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

35

DEBTOR'S DISCLOSURE STATEMENT

j.        To modify the Plan under 11 U.S.C. § 1127 in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

k.        Except as otherwise provided in the Plan, the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

l.        To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

m.       To enter a final decree closing this Case.

## 8.    Miscellaneous Provisions

### a.    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same parties.

### b.    Post-Confirmation Conversion/Dismissal

A creditor or any other party in interest may bring a motion to convert or dismiss the Case under 11 U.S.C. § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Case converted to a Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Confirmation

36

Order.

### c.      Post-Confirmation UST Fees

The Reorganized Debtor through the Disbursing Agent shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date, if any, to the extent required by 28 U.S.C. § 1930(a)(6). The Reorganized Debtor may, in its discretion, seek to close the case post-confirmation.

### d.      Risk Factors

HOLDERS OF CLAIMS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

#### i.      Risk of Non-Confirmation of the Plan

Although Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

#### ii.      Risk of Non-Occurrence of the Effective Date

Although Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date have not occurred or been waived and, therefore, the Effective Date does not occur, upon notification submitted by Debtor to the Bankruptcy Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) Debtor and all holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation

Date as though the Confirmation Date had never occurred, and (d) the Estate's obligations with respect to the Claims shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other person or to prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

### iii.    Risks to recovery by holders of Claims

With respect to recovery by creditors under the Plan, Debtor's ability to fully fund the Plan and the ultimate distribution to unsecured creditors, depends on a variety of factors, including whether Debtor is able to meet its projections.. Debtor is unaware of any other specific risk factors that may ultimately affect distributions to creditors. Nevertheless, that does not mean that such risk factors do not exist. Each creditor must assess potential risks factors to determine how to vote on the Plan.

### e.    Final Decree

The Reorganized Debtor, or another party as the Court shall designate in the Confirmation Order, may file a motion with the Court to obtain a final decree to close the case pursuant Federal Rule of Bankruptcy Procedure 3022 after confirmation of Plan, even if all payments to creditors have not been made.

Dated: June 10, 2026                              MARSHACK HAYS WOOD LLP


                                                  By:  _/s/ David A. Wood_____
                                                       DAVID A. WOOD,
                                                       MATTHEW W. GRIMSHAW
                                                       AARON E. DE LEEST
                                                       SARAH R. HASSELBERGER
                                                       Attorneys for
                                                       Pappas Piping Service Inc.

DEBTOR'S DISCLOSURE STATEMENT

## Declaration of Joshua Teeple

I, JOSHUA TEEPLE, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the Chief Restructuring Officer of the debtor, Pappas Piping Service, Inc. ("Debtor").

5.      I make this declaration in support of the Disclosure Statement ("Disclosure Statement") which describes the Chapter 11 Plan of Reorganization ("Plan").

6.      All terms not defined herein are used as they are defined in the Disclosure Statement.

7.      A true and correct copy of this Court's webPACER Claims Register Docket for Case No. 8:26-bk-10033-MH as June 10, 2026, is attached here as Exhibit "1."

8.      A true and correct copy of the Plan Projections are attached here as Exhibit "2."

9.      A true and correct copy of the First Amended Pirs Settlement is attached here as Exhibit "3."

10.      A true and correct copy of the Unsecured Creditor List is attached here as Exhibit "4."

11.      A true and correct copy of the liquidation analysis is attached here as Exhibit "5."

12.      I have reviewed the information contained within the Disclosure Statement, including related financial information.  To the best of my knowledge, information, and belief, I believe that the information contained in this Disclosure Statement is accurate.

///

///

///

///

///

39

DEBTOR'S DISCLOSURE STATEMENT

13.     I have agreed to the terms set forth in the Disclosure Statement and Plan.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 10 , 2026.

_____
JOSHUA TEEPLE

DEBTOR'S DISCLOSURE STATEMENT

**Defined Terms**

The following terms (which appear in this Plan as capitalized terms), when used in the Plan or the accompanying Disclosure Statement, have the meanings set forth below:

"**Administrative Claim**" means a Claim against a Debtor for administrative costs or expenses that are allowable under Bankruptcy Code Section 503(b).  These costs or expenses may include, without limitation: (a) actual costs or expenses that were incurred after the Petition Date and that were necessary to preserve a Debtor's Estate and operate a Debtor's business (such as employee wages); (b) Professional Fee Claims; (c) Administrative Tax Claims; (d) Ordinary Course Administrative Claims; or (e) other Administrative Claims (such as fees or charges assessed against a Debtor's Estate under 28 U.S.C. § 1930 or Rejected Lease Administrative Claims).

"**Administrative Tax Claim**" means a Claim against the Debtor asserted by a governmental unit for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

"**Allowed Claim**" means a Claim against a Debtor to the extent that:

(a)    either: (1) a proof of Claim was timely Filed; or (2) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

(b)    either: (1) the Claim is not a Disputed Claim; (2) the Claim is allowed by a Final Order; or (3) the Claim is allowed under the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied or otherwise released during the course of this case is not an Allowed Claim.

"**Avoidance Action**" means an avoidance action under Bankruptcy Code Sections 544(b), 547, or 548.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, et seq.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means a day that is not a Saturday, Sunday, or legal holiday.

41

"**Case**" means the above-captioned Chapter 11 bankruptcy case pending in the Central District of California Bankruptcy Court – Case No. 8:26-bk-10033-MH.

"**Civil Action**" means any and all of the Debtor's and Estate's claims, causes of action, demands, rights, actions, suit, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law of the Debtor or its Estate, including but not limited to (1) rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law, (2) the right to object to claims or equity interests, (3) claims pursuant to sections 362, 510, 542, or 543 of the Bankruptcy Code, (4) such claims and defenses as fraud, mistake, duress and usury, and (5) all Avoidance Actions and all rights and remedies under, relating to, or similar to sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code or any fraudulent transfer or preference law.

"**Claim**" means a claim as the term "claim" is defined in Bankruptcy Code Section 101(5).

"**Claiming Period**" means the checks issued by the Reorganized Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means a hearing where the Court considers Plan confirmation.

"**Confirmation Hearing Date**" means the first date on which the Court holds a hearing regarding Plan confirmation.

"**Confirmation Order**" means the Court order confirming the Plan under Bankruptcy Code Section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California or any other court that exercises jurisdiction over this case.

"**Debtor**" refers to Papas Piping Service, Inc..

"**Disbursing Agent**" means Joshua Teeple.

DEBTOR'S DISCLOSURE STATEMENT

"**Disclosure Statement**" means this Chapter 11 Disclosure Statement describing Debtor's Chapter 11 Plan filed on June 10, 2026 as Dk. No. XX.

"**Disputed Claim**" means a Claim:

(a)      As to which a proof of Claim was Filed or is deemed Filed under Bankruptcy Rule 3003(b)(1); and

(b)      As to which the Reorganized Debtor or any party in interest entitled to do so has Filed a notice of designation as a Disputed Claim by the Claims Objection Deadline and as to which (a) that objection has not been waived on account of a failure to timely file and serve a claim objection; and (b) that objection has not been overruled, denied by a Final Order, or withdrawn.

Before the Claims Objection Deadline—and except to the extent that a Claim may have been allowed by a Final Order—a Claim is a Disputed Claim only to the extent that:

(a)      The Claim amount specified in the Proof of Claim exceeds the Claim amount listed on the Debtor's Schedules;

(b)      The Claim is listed on the Debtor's Schedules as disputed, unliquidated, or contingent; or

(c)      The Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Proof of Claim, differs from the Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Debtor's Schedules.

Notwithstanding the above, to the extent that the Debtor disputes the amount owed pursuant to a Claim but do not dispute some portion of the Claim, the undisputed portion of the Claim shall be treated as an Allowed Claim and only the disputed portion shall be treated as a Disputed Claim.

"**Effective Date**" means the first business day which is at least fifteen (15) days following the date of the entry of the Confirmation Order, assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order.

"**Estate**" means the estate created in this bankruptcy Case pursuant to 11 U.S.C. § 541 for Papas Piping Service, Inc.

"**Filed**" means duly and properly filed with the Court and reflected on the Court's official docket.

"**Final Order**" means an order or judgment of the Court entered on the Court's docket:

(a)     That has not been reversed, rescinded, stayed, modified, or amended;

(b)     That is in full force and effect; and

(c)     With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such an appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

"**FRBP**" means the Federal Rules of Bankruptcy Procedure.

"**FTB**" means the Franchise Tax Board.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Unsecured Claim, or a Secured Claim.

"**Impaired**" means that a creditor's legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor. A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.

"**Indemnified Person**" refers to the Reorganized Debtor, the Estate, or any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order.

"**IRS**" means the Internal Revenue Service.

"**MHW**" means Marshack Hays Wood LLP, Debtor's special litigation and reorganization counsel.

"**Ordinary-Course Administrative Claims**" means Administrative Claims, other than Non-Ordinary-Course Administrative Claims, based upon liabilities incurred by the Debtor and/or Estate in the ordinary course.  Ordinary-Course Administrative Claims include fees or charges assessed against the Estate under 28 U.S.C. § 1930 or by the Court Clerk.

"**Person**" means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government,

DEBTOR'S DISCLOSURE STATEMENT

political subdivision, governmental unit (as defined in the Bankruptcy Code), or entity.

"**Petition Date**" means January 6, 2026, which is the date on which the Debtor filed this case.

"**Plan**" means Debtor's Chapter 11 plan as it may be subsequently amended.

"**Plan Proponent**" means Debtor.

"**Priority Unsecured Claim**" means an Allowed Claim entitled to priority against the Estate under Bankruptcy Code Sections 507(a)(3), 507(a)(4), or 507(a)(6).

"**Priority Tax Claim**" means an Allowed Claim entitled to priority against the Estate under Bankruptcy Code Section 507(a)(8).

"**Professional Fee Claim**" means:

(a)     A Claim under Bankruptcy Code Sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on an Estate's behalf; or

(b)     A Claim either under Bankruptcy Code Section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code Section 503(b)(3)(D) for expenses incurred in making a substantial contribution to an Estate.

"**Reorganized Debtor**" means the post-confirmation Debtor.

"**Schedules**" means the schedules and statement of financial affairs filed by the Debtor on January 6, 2026, as Dk. No. 1 and the Schedules filed on January 20, 2026, as Dk. No. 40.

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code Section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in that property or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code Section 506(a).

"**UST**" means the Office of the United States Trustee.

4868-5936-2422, v. 4

45

DEBTOR'S DISCLOSURE STATEMENT

# Exhibit "1"

# Central District of California
# Claims Register

### 8:26-bk-10033-MH Pappas Piping Service, Inc.

**Judge:** Mark D. Houle        **Chapter:** 11
**Office:** Santa Ana           **Last Date to file claims:** 04/10/2026
**Trustee:**                    **Last Date to file (Govt):** 07/06/2026

| | | |
|---|---|---|
| *Creditor:* (42869863) | **Claim No: 1** | Status: |
| Hitachi Global Air Power US LLC | *Original Filed* | *Filed by:* CR |
| 4659 Las Positas Rd. | *Date*: 01/13/2026 | *Entered by:* AUTP |
| Suite A | *Original Entered* | *Modified:* |
| Livermore, CA 94551 | *Date*: 01/13/2026 | |

Amount claimed: $81166.68

*History:*
Details   1-1   01/13/2026 Claim #1 filed by Hitachi Global Air Power US LLC, Amount claimed: $81166.68 (AUTP)
*Description:*
*Remarks:* (1-1) Account Number (last 4 digits):1316

| | | |
|---|---|---|
| *Creditor:* (42869885) | **Claim No: 2** | Status: |
| Puretec Industrial Water | *Original Filed* | *Filed by:* CR |
| 3151 Sturgis Road | *Date*: 01/22/2026 | *Entered by:* JL |
| Oxnard, CA 93031-5387 | *Original Entered* | *Modified:* |
| | *Date*: 01/22/2026 | |

Amount claimed: $50813.98

*History:*
Details   2-1   01/22/2026 Claim #2 filed by Puretec Industrial Water, Amount claimed: $50813.98 (JL)
*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (42869876) | **Claim No: 3** | Status: |
| Michael P. Pappas | *Original Filed* | *Filed by:* CR |
| 3063 Salisbury Dr | *Date*: 02/05/2026 | *Entered by:* TS |
| Santa Cruz, CA 95065 | *Original Entered* | *Modified:* |
| | *Date*: 02/05/2026 | |

Amount claimed: $400000.00

*History:*
Details   3-1   02/05/2026 Claim #3 filed by Michael P. Pappas, Amount claimed: $400000.00 (TS)
*Description:* (3-1) The Sale of the Business, see attached agreement
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (42926295) | **Claim No: 4** | Status: |
| GreatAmerica Financial Services Corporation | *Original Filed* | *Filed by:* CR |

*History:*
Details   4-1   02/11/2026 Claim #4 filed by GreatAmerica Financial Services Corporation, Amount claimed: $12496.90 (AUTP)
*Description:*
*Remarks:* (4-1) Account Number (last 4 digits):4736

EXHIBIT 1, PAGE 46

ATTN: Peggy Upton
625 First St. SE
Cedar Rapids, IA 52401

*Date*: 02/11/2026
*Original Entered*
*Date*: 02/11/2026

*Entered by:* AUTP
*Modified:*

Amount claimed: $12496.90

*History:*

Details  ⚫  4-1    02/11/2026 Claim #4 filed by GreatAmerica Financial Services Corporation, Amount claimed: $12496.90 (AUTP)

*Description:*

*Remarks:* (4-1) Account Number (last 4 digits):4736

---

*Creditor:*        (42869864)
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**Claim No: 5**
*Original Filed*
*Date*: 02/17/2026
*Original Entered*
*Date*: 02/17/2026

*Status:*
*Filed by:* CR
*Entered by:* Timothy C Schakow
*Modified:*

Amount  claimed: $1000.00
Secured claimed:      $0.00
Priority   claimed: $1000.00

*History:*

Details  ⚫  5-1    02/17/2026 Claim #5 filed by Internal Revenue Service, Amount claimed: $1000.00 (Schakow, Timothy)

*Description:*

*Remarks:*

---

*Creditor:*        (42869872)
Live Oak Banking Company
1741 Tiburon Dr.
Wilmington, NC 28403

**Claim No: 6**
*Original Filed*
*Date*: 02/19/2026
*Original Entered*
*Date*: 02/19/2026

*Status:*
*Filed by:* CR
*Entered by:* AUTP
*Modified:*

Amount  claimed: $3189601.40
Secured claimed: $3189601.40

*History:*

Details  ⚫  6-1    02/19/2026 Claim #6 filed by Live Oak Banking Company, Amount claimed: $3189601.40 (AUTP)

*Description:*

*Remarks:* (6-1) Account Number (last 4 digits):2433

---

*Creditor:*        (42955619)
American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

**Claim No: 7**
*Original Filed*
*Date*: 02/27/2026
*Original Entered*
*Date*: 02/27/2026

*Status:*
*Filed by:* CR
*Entered by:* Greg Deegan
*Modified:*

Amount claimed: $5144.50

*History:*

Details  ⚫  7-1    02/27/2026 Claim #7 filed by American Express National Bank, Amount claimed: $5144.50 (Deegan, Greg)

*Description:*

*Remarks:*

EXHIBIT 1, PAGE 47

| | | |
|---|---|---|
| *Creditor:*   (42969426)<br>PG&E<br>PO BOX 8329<br>C/O BANKRUPTCY<br>STOCKTON, CA 95208 | **Claim No: 8**<br>*Original Filed*<br>*Date*: 03/06/2026<br>*Original Entered*<br>*Date*: 03/06/2026 | Status:<br>*Filed by:* CR<br>*Entered by:* AUTP<br>Modified: |

  Amount claimed: $696.59

*History:*

Details  ◕  8-1   03/06/2026 Claim #8 filed by PG&E, Amount claimed: $696.59 (AUTP)

*Description:*

*Remarks:* (8-1) Account Number (last 4 digits):7659

| | | |
|---|---|---|
| *Creditor:*   (42869859)<br>Guillermo Silva<br>1610 Maiden Cane Way<br>Los Banos, CA 93635 | **Claim No: 9**<br>*Original Filed*<br>*Date*: 03/09/2026<br>*Original Entered*<br>*Date*: 03/09/2026 | Status:<br>*Filed by:* CR<br>*Entered by:* AM<br>Modified: |

  Amount claimed: $400000.00

*History:*

Details  ◕  9-1   03/09/2026 Claim #9 filed by Guillermo Silva, Amount claimed: $400000.00 (AM)

*Description:* (9-1) Sale of Pappas Piping Service, Inc.

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*   (42975562)<br>Able Plumbing Sewer & Drain<br>1020 Ruff Drive<br>San Jose, CA 95110 | **Claim No: 10**<br>*Original Filed*<br>*Date*: 03/10/2026<br>*Original Entered*<br>*Date*: 03/10/2026 | Status:<br>*Filed by:* CR<br>*Entered by:* AUTP<br>Modified: |

  Amount claimed: $7368.00

*History:*

Details  ◕  10-1   03/10/2026 Claim #10 filed by Able Plumbing Sewer & Drain, Amount claimed: $7368.00 (AUTP)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*   (42980837)<br>American Contractors Indemnity Company<br>801 S. Figueroa St., Ste. 700<br>Los Angeles, CA 90017 | **Claim No: 11**<br>*Original Filed*<br>*Date*: 03/12/2026<br>*Original Entered*<br>*Date*: 03/12/2026 | Status:<br>*Filed by:* CR<br>*Entered by:* AUTP<br>Modified: |

  Amount claimed: $0.00

*History:*

Details  ◕  11-1   03/12/2026 Claim #11 filed by American Contractors Indemnity Company, Amount claimed: $0.00
                    (AUTP)

*Description:*

*Remarks:* (11-1) Account Number (last 4 digits):9631 Filer Comment: Unliquidated/undetermined damages.

EXHIBIT 1, PAGE 48

| | | |
|---|---|---|
| *Creditor:*        (42869903)    [History] | **Claim No: 12** | Status: |
| West American Finance Corporation | *Original Filed* | *Filed by:* CR |
| 26 North State Street | *Date*: 03/23/2026 | *Entered by:* VN |
| Salt Lake City, UT 84103 | *Original Entered* | *Modified:* |
| | *Date*: 03/23/2026 | |

Amount claimed: $1485000.00

*History:*

[Details]   ⬛ [12-1]   03/23/2026 Claim #12 filed by West American Finance Corporation, Amount claimed: $1485000.00 (VN)

*Description:* (12-1) Money Loaned

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*        (43023583) | **Claim No: 13** | Status: |
| Sheppard, Mullin, Richter & Hampton LLP | *Original Filed* | *Filed by:* CR |
| 650 Town Center Drive, 10th Floor | *Date*: 04/02/2026 | *Entered by:* AUTP |
| Costa Mesa, CA 92626 | *Original Entered* | *Modified:* |
| | *Date*: 04/02/2026 | |

Amount claimed: $69949.57

*History:*

[Details]   ⬛ [13-1]   04/02/2026 Claim #13 filed by Sheppard, Mullin, Richter & Hampton LLP, Amount claimed: $69949.57 (AUTP)

*Description:*

*Remarks:* (13-1) Account Number (last 4 digits):94FC

| | | |
|---|---|---|
| *Creditor:*        (42892825) | **Claim No: 14** | Status: |
| WEX | *Original Filed* | *Filed by:* CR |
| 1 Hancock Street | *Date*: 04/07/2026 | *Entered by:* AUTP |
| Portland, ME 04101 | *Original Entered* | *Modified:* |
| | *Date*: 04/07/2026 | |

Amount claimed: $8031.43

*History:*

[Details]   ⬛ [14-1]   04/07/2026 Claim #14 filed by WEX, Amount claimed: $8031.43 (AUTP)

*Description:*

*Remarks:* (14-1) Account Number (last 4 digits):7030

| | | |
|---|---|---|
| *Creditor:*        (42869905) | **Claim No: 15** | Status: |
| William Butler | *Original Filed* | *Filed by:* CR |
| 730 Mora Dr. | *Date*: 04/07/2026 | *Entered by:* AUTP |
| Los Altos, CA 94024 | *Original Entered* | *Modified:* |
| | *Date*: 04/07/2026 | |

Amount  claimed: $537923.70

Secured claimed: $537923.70

*History:*

[Details]   ⬛ [15-1]   04/07/2026 Claim #15 filed by William Butler, Amount claimed: $537923.70 (AUTP)

*Description:*

*Remarks:*

EXHIBIT 1, PAGE 49

| | | |
|---|---|---|
| *Creditor:*    (42869905)<br>William Butler<br>730 Mora Dr.<br>Los Altos, CA 94024 | **Claim No: 16**<br>*Original Filed*<br>*Date*: 04/10/2026<br>*Original Entered*<br>*Date*: 04/10/2026 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |

Amount claimed: $20786.00

*History:*

Details    🌐   16-1   04/10/2026 Claim #16 filed by William Butler, Amount claimed: $20786.00 (AUTP)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (42869856)<br>Franchise Tax Board<br>Bankruptcy Section, MS:A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | **Claim No: 17**<br>*Original Filed*<br>*Date*: 04/14/2026<br>*Original Entered*<br>*Date*: 04/14/2026 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Cathy Saechao<br>*Modified:* |

Amount claimed: $2764.21
Priority  claimed: $2553.31

*History:*

Details    🌐   17-1   04/14/2026 Claim #17 filed by Franchise Tax Board, Amount claimed: $2764.21 (Saechao, Cathy)

*Description:*

*Remarks:* (17-1) 2785

# Claims Register Summary

**Case Name:** Pappas Piping Service, Inc.
**Case Number:** 8:26-bk-10033-MH
**Chapter:** 11
**Date Filed:** 01/06/2026
**Total Number Of Claims:** 17

| | |
|---|---|
| **Total Amount Claimed\*** | $6272742.96 |
| **Total Amount Allowed\*** | |

*\*Includes general unsecured claims*

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $3727525.10 | |
| **Priority** | $3553.31 | |
| **Administrative** | | |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 06/10/2026 11:07:02 |

EXHIBIT 1, PAGE 50

| PACER Login: | atty272406 | Client Code: | 9999-001 |
|---|---|---|---|
| Description: | Claims Register | Search Criteria: | 8:26-bk-10033-MH Filed or Entered From: 1/1/1900 Filed or Entered To: 6/10/2026 |
| Billable Pages: | 2 | Cost: | 0.20 |

EXHIBIT 1, PAGE 51

# Exhibit "2"

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

6/10/2026

1 of 14

| | Post-Confirmation - Year 1 | | | Post-Confirmation - Year 1 | | |
|---|---|---|---|---|---|---|
| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |
| Operating Cash - Beginning of Period | $ 750,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 707,859 | 707,859 | 707,859 | 707,859 | 707,859 | 707,859 |
| **Total Sources of Cash** | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 |
| **Uses of Cash:** | | | | | | |
| Materials/Job Accts/Subs | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 |
| **Operating Expenses** | | | | | | |
| Payroll | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 |
| Travelers - Company Insurance | 19,413 | 19,413 | 19,413 | 19,413 | 19,413 | 19,413 |
| Kaiser - Employee Insurance | 19,580 | 19,580 | 19,580 | 19,580 | 19,580 | 19,580 |
| Fuel Expense | 7,145 | 7,145 | 7,145 | 7,145 | 7,145 | 7,145 |
| Dollinger - Rent | 12,776 | 12,776 | 12,776 | 12,776 | 12,776 | 12,776 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 13,409 | 13,409 | 13,409 | 13,409 | 13,409 | 13,409 |
| Legal Fees | 6,556 | 6,556 | 6,556 | 6,556 | 6,556 | 6,556 |
| Disbursing Agent | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Miscellaneous | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Net Income** | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 |
| **Secured Creditor Payments** | | | | | | |
| PIRS - Lender | 18,182 | 18,182 | 18,182 | 18,182 | 36,364 | |
| Live Oak - Lender (a) | 49,490 | 49,490 | 49,490 | 49,490 | 49,490 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| **Priority Claims** | 3,553 | | | | | |
| **Administrative Expenses** | | | | | | |
| Chief Restructuring Officer | 35,000 | | | | | |
| Debtor Counsel | 100,000 | | | | | |
| Claims Agent | 25,000 | | | | | |
| **Total Uses of Cash:** | $ 840,766 | $ 677,213 | $ 677,213 | $ 677,213 | $ 695,394 | $ 634,286 |
| **Net Cash Inflow (Outflow)** | (132,907) | 30,646 | 30,646 | 30,646 | 12,464 | 73,573 |
| **Less: Creditor Pool Estimated Monthly Payment** | (117,093) | (30,646) | (30,646) | (30,646) | (12,464) | (73,573) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

]

EXHIBIT 2, PAGE 52

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

2 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

|  | Post-Confirmation - Year 1 | | | Post-Confirmation - Year 1 | | |
|---|---|---|---|---|---|---|
|  | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |
| Add: Estimated Monthly Payment | 117,093 | 30,646 | 30,646 | 30,646 | 12,464 | 73,573 |
| Monthly GUC Distribution | (117,093) | (30,646) | (30,646) | (30,646) | (12,464) | (73,573) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 53

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

3 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 1 | | | Post-Confirmation - Year 1 | | |
|---|---|---|---|---|---|---|
| | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
| **Operating Cash - Beginning of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 707,859 | 707,859 | 707,859 | 707,859 | 707,859 | 707,859 |
| **Total Sources of Cash** | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 | $ 707,859 |
| **Uses of Cash:** | | | | | | |
| Materials/Job Accts/Subs | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 |
| **Operating Expenses** | | | | | | |
| Payroll | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 | 255,429 |
| Travelers - Company Insurance | 19,413 | 19,413 | 19,413 | 19,413 | 19,413 | 19,413 |
| Kaiser - Employee Insurance | 19,580 | 19,580 | 19,580 | 19,580 | 19,580 | 19,580 |
| Fuel Expense | 7,145 | 7,145 | 7,145 | 7,145 | 7,145 | 7,145 |
| Dollinger - Rent | 12,776 | 12,776 | 12,776 | 12,776 | 12,776 | 12,776 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 13,409 | 13,409 | 13,409 | 13,409 | 13,409 | 13,409 |
| Legal Fees | 6,556 | 6,556 | 6,556 | 6,556 | 6,556 | 6,556 |
| Disbursing Agent | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Miscellaneous | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Net Income** | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 | $ 112,123 |
| **Secured Creditor Payments** | | | | | | |
| PIRS - Lender | | | | | | |
| Live Oak - Lender (a) | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| **Priority Claims** | | | | | | |
| **Administrative Expenses** | | | | | | |
| Chief Restructuring Officer | | | | | | |
| Debtor Counsel | | | | | | |
| Claims Agent | | | | | | |
| **Total Uses of Cash:** | $ 634,286 | $ 634,286 | $ 634,286 | $ 634,286 | $ 634,286 | $ 634,286 |
| **Net Cash Inflow (Outflow)** | 73,573 | 73,573 | 73,573 | 73,573 | 73,573 | 73,573 |
| **Less: Creditor Pool Estimated Monthly Payment** | (73,573) | (73,573) | (73,573) | (73,573) | (73,573) | (73,573) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

EXHIBIT 2, PAGE 54

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

4 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 1 | | | Post-Confirmation - Year 1 | | |
|---|---|---|---|---|---|---|
| | **Month 7** | **Month 8** | **Month 9** | **Month 10** | **Month 11** | **Month 12** |
| Add: Estimated Monthly Payment | 73,573 | 73,573 | 73,573 | 73,573 | 73,573 | 73,573 |
| Monthly GUC Distribution | (73,573) | (73,573) | (73,573) | (73,573) | (73,573) | (73,573) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 55

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

5 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 2 | | | Post-Confirmation - Year 2 | | |
|---|---|---|---|---|---|---|
| | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 |
| **Operating Cash - Beginning of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 729,095 | 729,095 | 729,095 | 729,095 | 729,095 | 729,095 |
| **Total Sources of Cash** | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 |
| **Uses of Cash:** | | | | | | |
| Materials/Job Accts/Subs | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 |
| **Operating Expenses** | | | | | | |
| Payroll | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 |
| Travelers - Company Insurance | 19,995 | 19,995 | 19,995 | 19,995 | 19,995 | 19,995 |
| Kaiser - Employee Insurance | 20,167 | 20,167 | 20,167 | 20,167 | 20,167 | 20,167 |
| Fuel Expense | 7,359 | 7,359 | 7,359 | 7,359 | 7,359 | 7,359 |
| Dollinger - Rent | 13,159 | 13,159 | 13,159 | 13,159 | 13,159 | 13,159 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 13,811 | 13,811 | 13,811 | 13,811 | 13,811 | 13,811 |
| Legal Fees | 6,753 | 6,753 | 6,753 | 6,753 | 6,753 | 6,753 |
| Disbursing Agent | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 |
| Miscellaneous | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 |
| **Net Income** | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 |
| **Secured Creditor Payments** | | | | | | |
| PIRS - Lender | | | | | | |
| Live Oak - Lender (a) | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| **Priority Claims** | | | | | | |
| **Administrative Expenses** | | | | | | |
| Chief Restructuring Officer | | | | | | |
| Debtor Counsel | | | | | | |
| Claims Agent | | | | | | |
| **Total Uses of Cash:** | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 |
| **Net Cash Inflow (Outflow)** | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 |
| **Less: Creditor Pool Estimated Monthly Payment** | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

EXHIBIT 2, PAGE 56

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

6 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 2 | | | Post-Confirmation - Year 2 | | |
|---|---|---|---|---|---|---|
| | **Month 13** | **Month 14** | **Month 15** | **Month 16** | **Month 17** | **Month 18** |
| Add: Estimated Monthly Payment | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 |
| Monthly GUC Distribution | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 57

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

7 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 2 | | | Post-Confirmation - Year 2 | | |
|---|---|---|---|---|---|---|
| | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 |
| **Operating Cash - Beginning of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 729,095 | 729,095 | 729,095 | 729,095 | 729,095 | 729,095 |
| **Total Sources of Cash** | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 | $ 729,095 |
| **Uses of Cash:** | | | | | | |
| **Materials/Job Accts/Subs** | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 |
| **Operating Expenses** | | | | | | |
| Payroll | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 | 263,092 |
| Travelers - Company Insurance | 19,995 | 19,995 | 19,995 | 19,995 | 19,995 | 19,995 |
| Kaiser - Employee Insurance | 20,167 | 20,167 | 20,167 | 20,167 | 20,167 | 20,167 |
| Fuel Expense | 7,359 | 7,359 | 7,359 | 7,359 | 7,359 | 7,359 |
| Dollinger - Rent | 13,159 | 13,159 | 13,159 | 13,159 | 13,159 | 13,159 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 13,811 | 13,811 | 13,811 | 13,811 | 13,811 | 13,811 |
| Legal Fees | 6,753 | 6,753 | 6,753 | 6,753 | 6,753 | 6,753 |
| Disbursing Agent | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 |
| Miscellaneous | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 |
| **Net Income** | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 | $ 115,487 |
| **Secured Creditor Payments** | | | | | | |
| PIRS - Lender | | | | | | |
| Live Oak - Lender (a) | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| **Priority Claims** | | | | | | |
| **Administrative Expenses** | | | | | | |
| Chief Restructuring Officer | | | | | | |
| Debtor Counsel | | | | | | |
| Claims Agent | | | | | | |
| **Total Uses of Cash:** | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 | $ 652,158 |
| **Net Cash Inflow (Outflow)** | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 |
| **Less: Creditor Pool Estimated Monthly Payment** | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

EXHIBIT 2, PAGE 58

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

8 of 14

*Note: amounts reflected herein are management's best estimates*
*of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 2 | | | Post-Confirmation - Year 2 | | |
|---|---|---|---|---|---|---|
| | **Month 19** | **Month 20** | **Month 21** | **Month 22** | **Month 23** | **Month 24** |
| Add: Estimated Monthly Payment | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 | 76,937 |
| Monthly GUC Distribution | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) | (76,937) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through*
*their Chapter 11 bankruptcy in or about October 2026 which should*
*eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 59

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

9 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 3 | | | Post-Confirmation - Year 3 | | |
|---|---|---|---|---|---|---|
| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 |
| **Operating Cash - Beginning of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 750,967 | 750,967 | 750,967 | 750,967 | 750,967 | 750,967 |
| **Total Sources of Cash** | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 |
| **Uses of Cash:** | | | | | | |
| **Materials/Job Accts/Subs** | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 |
| **Operating Expenses** | | | | | | |
| Payroll | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 |
| Travelers - Company Insurance | 20,595 | 20,595 | 20,595 | 20,595 | 20,595 | 20,595 |
| Kaiser - Employee Insurance | 20,772 | 20,772 | 20,772 | 20,772 | 20,772 | 20,772 |
| Fuel Expense | 7,580 | 7,580 | 7,580 | 7,580 | 7,580 | 7,580 |
| Dollinger - Rent | 13,554 | 13,554 | 13,554 | 13,554 | 13,554 | 13,554 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 14,226 | 14,226 | 14,226 | 14,226 | 14,226 | 14,226 |
| Legal Fees | 6,956 | 6,956 | 6,956 | 6,956 | 6,956 | 6,956 |
| Disbursing Agent | 1,061 | 1,061 | 1,061 | 1,061 | 1,061 | 1,061 |
| Miscellaneous | 5,305 | 5,305 | 5,305 | 5,305 | 5,305 | 5,305 |
| **Net Income** | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 |
| **Secured Creditor Payments** | | | | | | |
| PIRS - Lender | | | | | | |
| Live Oak - Lender (a) | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| **Priority Claims** | | | | | | |
| **Administrative Expenses** | | | | | | |
| Chief Restructuring Officer | | | | | | |
| Debtor Counsel | | | | | | |
| Claims Agent | | | | | | |
| **Total Uses of Cash:** | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 |
| **Net Cash Inflow (Outflow)** | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 |
| **Less: Creditor Pool Estimated Monthly Payment** | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

EXHIBIT 2, PAGE 60

## Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

10 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 3 | | | Post-Confirmation - Year 3 | | |
|---|---|---|---|---|---|---|
| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 |
| Add: Estimated Monthly Payment | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 |
| Monthly GUC Distribution | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 61

**Pappas Piping Service, Inc.**

6/10/2026

Post-Confirmation Projected Cash Flow

11 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 3 | | | Post-Confirmation - Year 3 | | |
|---|---|---|---|---|---|---|
| | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 |
| Operating Cash - Beginning of Period | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| | | | | | | |
| **Sources of Cash:** | | | | | | |
| Project Revenue | 750,967 | 750,967 | 750,967 | 750,967 | 750,967 | 750,967 |
| **Total Sources of Cash** | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 | $ 750,967 |
| | | | | | | |
| **Uses of Cash:** | | | | | | |
| Materials/Job Accts/Subs | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 |
| Operating Expenses | | | | | | |
| Payroll | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 | 270,984 |
| Travelers - Company Insurance | 20,595 | 20,595 | 20,595 | 20,595 | 20,595 | 20,595 |
| Kaiser - Employee Insurance | 20,772 | 20,772 | 20,772 | 20,772 | 20,772 | 20,772 |
| Fuel Expense | 7,580 | 7,580 | 7,580 | 7,580 | 7,580 | 7,580 |
| Dollinger - Rent | 13,554 | 13,554 | 13,554 | 13,554 | 13,554 | 13,554 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 14,226 | 14,226 | 14,226 | 14,226 | 14,226 | 14,226 |
| Legal Fees | 6,956 | 6,956 | 6,956 | 6,956 | 6,956 | 6,956 |
| Disbursing Agent | 1,061 | 1,061 | 1,061 | 1,061 | 1,061 | 1,061 |
| Miscellaneous | 5,305 | 5,305 | 5,305 | 5,305 | 5,305 | 5,305 |
| **Net Income** | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 | $ 118,951 |
| | | | | | | |
| Secured Creditor Payments | | | | | | |
| PIRS - Lender | | | | | | |
| Live Oak - Lender (a) | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 | 24,745 |
| West American Finance Corporation | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 | 13,805 |
| Priority Claims | | | | | | |
| Administrative Expenses | | | | | | |
| Chief Restructuring Officer | | | | | | |
| Debtor Counsel | | | | | | |
| Claims Agent | | | | | | |
| **Total Uses of Cash:** | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 | $ 670,566 |
| **Net Cash Inflow (Outflow)** | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 |
| Less: Creditor Pool Estimated Monthly Payment | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

## Pappas Piping Service, Inc.

6/10/2026

**Post-Confirmation Projected Cash Flow**

12 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Post-Confirmation - Year 3 | | | Post-Confirmation - Year 3 | | |
|---|---|---|---|---|---|---|
| | **Month 31** | **Month 32** | **Month 33** | **Month 34** | **Month 35** | **Month 36** |
| Add: Estimated Monthly Payment | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 | 80,401 |
| Monthly GUC Distribution | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) | (80,401) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 63

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

13 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Year 1 | Year 2 | Year 3 | Grand Total |
|---|---|---|---|---|
| **Operating Cash - Beginning of Period** | $ 750,000 | $ 500,000 | $ 500,000 | $ 750,000 |
| | | | | |
| **Sources of Cash:** | | | | |
| Project Revenue | 8,494,306 | 8,749,135 | 9,011,609 | 26,255,050 |
| **Total Sources of Cash** | $ 8,494,306 | $ 8,749,135 | $ 9,011,609 | $ 26,255,050 |
| | | | | |
| **Uses of Cash:** | | | | |
| Materials/Job Accts/Subs | 3,065,146 | 3,157,101 | 3,251,814 | 9,474,061 |
| **Operating Expenses** | | | | |
| Payroll | 3,065,146 | 3,157,101 | 3,251,814 | 9,474,061 |
| Travelers - Company Insurance | 232,953 | 239,941 | 247,140 | 720,034 |
| Kaiser - Employee Insurance | 234,956 | 242,005 | 249,265 | 726,226 |
| Fuel Expense | 85,737 | 88,309 | 90,958 | 265,004 |
| Dollinger - Rent | 153,306 | 157,905 | 162,642 | 473,854 |
| Other Operating Costs (IT, Supplies, Trucks, Etc) | 160,910 | 165,737 | 170,709 | 497,355 |
| Legal Fees | 78,677 | 81,037 | 83,468 | 243,183 |
| Disbursing Agent | 12,000 | 12,360 | 12,731 | 37,091 |
| Miscellaneous | 60,000 | 61,800 | 63,654 | 185,454 |
| **Net Income** | $ 1,345,475 | $ 1,385,839 | $ 1,427,414 | $ 4,158,727 |
| | | | | |
| **Secured Creditor Payments** | | | | |
| PIRS - Lender | 109,091 | - | - | 109,091 |
| Live Oak - Lender (a) | 420,663 | 296,938 | 296,938 | 1,014,539 |
| West American Finance Corporation | 165,661 | 165,661 | 165,661 | 496,982 |
| **Priority Claims** | 3,553 | - | - | 3,553 |
| **Administrative Expenses** | | | | |
| Chief Restructuring Officer | 35,000 | - | - | 35,000 |
| Debtor Counsel | 100,000 | - | - | 100,000 |
| Claims Agent | 25,000 | - | - | 25,000 |
| **Total Uses of Cash:** | $ 8,007,798 | $ 7,825,895 | $ 8,046,794 | $ 23,880,488 |
| **Net Cash Inflow (Outflow)** | 486,507 | 923,240 | 964,815 | 2,374,562 |
| **Less: Creditor Pool Estimated Monthly Payment** | (736,507) | (923,240) | (964,815) | (2,624,562) |
| **Operating Cash - End of Period** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 |
| **Creditor Pool - Beginning of Period** | $ - | $ - | $ - | $ - |

]

EXHIBIT 2, PAGE 64

# Pappas Piping Service, Inc.

**Post-Confirmation Projected Cash Flow**

6/10/2026

14 of 14

*Note: amounts reflected herein are management's best estimates of future operations. Actual results may differ significantly from*

| | Year 1 | Year 2 | Year 3 | Grand Total |
|---|---|---|---|---|
| Add: Estimated Monthly Payment | 736,507 | 923,240 | 964,815 | 2,624,562 |
| Monthly GUC Distribution | (736,507) | (923,240) | (964,815) | (2,624,562) |
| **Creditor Pool - End of Period** | $ - | $ - | $ - | $ - |

*(a) Assumes that the Butler's personal residence will be sold through their Chapter 11 bankruptcy in or about October 2026 which should eliminate approximately half of Live Oak's secured debt.*

]

EXHIBIT 2, PAGE 65

# Exhibit "3"

**AMA | RECOVERY GROUP**

November 4, 2025

William D Butler
Pappas Piping Service, Inc. dba Pappas Piping Service
1450 Koll Circle Ste 108
San Jose, CA 95112

## <u>FIRST AMENDED SETTLEMENT AGREEMENT</u>

RE: PIRS Capital, LLC
Balance: $295,346.00
Reference Number: ████ 2638

Dear Mr. Butler,

This company is the servicing and collection agent for PIRS Capital, LLC ("PIRS Capital, LLC"). This letter will set out the terms by which our client will accept a settlement of your account.

Our client agrees that it will not pursue legal action on your account provided you pay as set forth in this letter. You agree to pay PIRS Capital, LLC the sum of $234,000.00. This amount will be paid with an initial payment in the amount of $20,000.00 paid to AMA Recovery Group via wire transfer on or before July 11th, 20225. Thereafter, you agree to pay the remaining settlement balance in accordance with the following payment schedule:

- August 10st - $4,000.00
- September 10th - $4,000.00
- October 10th - 6,000.00
- November 10th - $10,000
- December 10th - $10,000
- January 10th, 2026 through September 10th, 2026 - $18,181.81 Per Month each month
- October 10th, 2026 - Final payment of $34,545.43

Cash, cashier's checks, and money orders are accepted forms of payment and must be mailed to AMA Recovery Group, LLC at 3131 Eastside St., Suite 350, Houston, TX 77098. You may also pay by wire or direct deposit into our Wells Fargo client trust account. Instructions to pay in this manner are enclosed. In addition, AMA confirms that any payments received from any UCC demand shall be credited towards the settlement amount.



EXHIBIT 3, PAGE 66



**RECOVERY GROUP**

The terms of the Merchant Agreement (the "Merchant Agreement") between Pirs Capital, LLC and Pappas Piping Service, Inc. dated on or about July 1st, 2024, the personal guaranty set forth therein, and any amendments thereto, are expressly reaffirmed and incorporated herein by this reference, and shall remain in full force and effect and continue to govern and control the relationship between the parties hereto except to the extent said agreements are inconsistent with, amended or superseded by this Settlement Agreement. To the extent of any inconsistency, this Settlement Agreement shall govern and control.

Once all payments are made as described in the paragraph above, PIRS Capital, LLC will close your account as settled and cease all collection efforts. However, if payments are not received on or before the due dates outlined above, Pirs Capital, LLC may, without further notice, pursue any and all rights it has under the Merchant Agreement and/or this Settlement Agreement, including but not limited to seeking to recover all amounts due under the Merchant Agreement, less a credit for any amounts paid pursuant to this Settlement Agreement.

Please sign below to confirm your agreement of the above terms and return to me. This offer expires if this letter is not signed and returned by November 6, 2025. If you have any questions concerning this matter, please contact Jacob Scott at (713) 352-0741 or jscott@amarecovery.com.

Regards,

By: Michael S. Kelleher, Esq.
Corporate Counsel

AGREED TO:

_____          ___11/5/2025_____
William D Butler                          Date
Individually and as authorized agent for
Pappas Piping Service, Inc. dba Pappas Piping Service

 Encl.:   *Direct Deposit and Wiring Instructions*



AMA Recovery Group, LLC
3131 Eastside St., #435, Houston, TX 77098 | (713) 524-2162 Tel. | (713) 268-0769 Fax
www.amarecovery.com
Ref. Number R2501022638

EXHIBIT 3, PAGE 67



## DIRECT DEPOSIT & WIRING INSTRUCTIONS

Wire payments or direct cash deposits may be made to the following trust account at Wells Fargo.

AMA RECOVERY GROUP LLC
Wells Fargo Bank

**Routing #** ▮▮▮▮▮▮ **(Wire)**
**Routing #** ▮▮▮▮▮ **(ACH)**
**Account #** ▮▮▮▮▮▮

**\*\*\*  Please write** ▮▮▮▮**2638 and the name of your business on \*\*\***
**the top of the deposit slip for identification purposes.**

**Zelle Transfers:** Send to AMA Recovery Group using the email info@amarecovery.com. You must include your reference number in the memo line for your payment to post to your account.

**Wire Transfers:** Use the above routing and account number to initiate a wire transfer to our Wells Fargo account. Please check with the originating bank regarding any fees applicable to this transaction. AMA Recovery Group is not responsible for fees assessed by other financial insitutions.

**Walk-in Direct Cash Deposit:** If you wish to save wiring fees from the originating bank, you can walk a cash deposit in to any Wells Fargo branch by providing the branch manager the above account number. This method ensures same-day payment.

**\*\*\*  Make sure to SEND CONFIRMATION OF YOUR PAYMENT to your \*\*\***
**account representative to verify the payment is posted to your account.**



AMA Recovery Group, LLC
3131 Eastside St., #435, Houston, TX 77098 | (713) 524-2162 Tel. | (713) 268-0769 Fax
www.amarecovery.com

Ref. Number R2501022638

EXHIBIT 3, PAGE 68

# Exhibit "4"

| Claim Number | Creditor | Attn | Address | Amount | Type | Basis of Claims | Disputed | Contingent | Unliquidated | Claim Filed Y/N? | Amount of Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claims Register** | | | | | | | | | | | |
| 1 | Hitachi Global Air Power US LLC | | 4569 Las Positas Rd. Suite A Livermore, CA 94551 | 81,166.68 | Unsecured | Unsecured | | | | | |
| 2 | Puretec Industrial Water | | 3151 Sturgis Road Oxnard, CA 93031 | 50,813.98 | Unsecured | Unsecured | | | | | |
| 3 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | 400,000.00 | Unsecured | Unsecured | | | | | |
| 4 | GreatAmerica Financial Services Corp | Peggy Upton | 625 First St. SE Cedar Rapids, IA 52401 | 12,496.90 | Unsecured | Unsecured | | | | | |
| 5 | Internal Revenue Service | | PO Box 7346 Philadelphia, PA 19101 | 1,000.00 | Priority | Priority | | | | | |
| 6 | Live Oak Banking Company | | 1741 Tiburon Dr. Wilmington, NC 28403 | 3,189,601.40 | Secured | Secured | | | | | |
| 7 | American Express National Bank | c/o Becket and Lee LLP | PO Box 3001 Malvern PA 19355 | 5,144.50 | Unsecured | Unsecured | | | | | |
| 8 | PG&E | c/o Bankruptcy | PO Box 8329 Stockton, CA 95208 | 696.59 | Unsecured | Unsecured | | | | | |
| 9 | Guillermo Silva | | 1610 Maiden Cane Way Los Banos, CA 93635 | 400,000.00 | Unsecured | Unsecured | | | | | |
| 10 | Able Plumbing Sewer & Drain | | 1020 Ruff Drive San Jose, CA 95110 | 7,368.00 | Unsecured | Unsecured | | | | | |
| 11 | American Contractors Indemnity Company | | 801 S. Figueroa St. Ste. 700 Los Angeles, CA 90017 | - | Unsecured | Unsecured | | | | | |
| 12 | West American Finance Corporation | | 26 North State Street Salt Lake City, UT 84103 | 1,485,000.00 | Unsecured | Unsecured | | | | | |
| 13 | Sheppard, Mullin, Richter & Hampton LLP | | 650 Town Cetner Drive, 10th Floor Costa Mesa, CA 92626 | 69,949.57 | Unsecured | Unsecured | | | | | |
| 14 | WEX | | 1 Hancock Street Portland, ME 04101 | 8,031.43 | Unsecured | Unsecured | | | | | |
| 15 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 537,923.70 | Secured | Secured | | | | | |
| 16 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 20,786.00 | Unsecured | Unsecured | | | | | |
| 17 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | 210.90 | Unsecured | Unsecured | | | | | |
| 17 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | 2,553.31 | Priority | Priority | | | | | |
| | | | **TOTAL** | **6,272,742.96** | | | | | | | |
| **Part 1 : Priority Unsecured Claims** | | | | | | | | | | | |
| 2.1 | Adhara A. Lopez | | 2651 Aida Ave San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.2 | Alexis J. Rincon Cortes | | 1430 S. Wolfe Rd Richmond, CA 94807 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.3 | Alfredo Lucio Fernandez | | 1555 Marburg Way Apt. 15C San Jose, CA 9513 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.4 | Andrea T. Carabello | | 2717 Keppler Ct. San Jose, CA 95148 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.5 | Andy R. Mendex-Mellado | | 5365 St. Mark Ave Newark, CA 94560 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.6 | CA Dept of Tax and Fee Admin | Account Info Group, MIC: 29 | PO Box 942789 Sacramento, CA 94279 | - | Unsecured | - | | | | No | |
| 2.7 | Carlos Suacedo-Chavez | | 2745 Ophelia Ave San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.8 | Cristobal Rodriguez | | 5300 Verner Ave Sacramento, CA 95841 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.9 | Daniel Suarez | | 982 Princess Ann Dr. San Jose, CA 95128 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.10 | Darelyn Youngker | | 59 Bella Flora Lane Patterson, CA 95363 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.11 | Eduardo Hernandez Gonzalez | | 1525 Marbury Way #3E San Jose, CA 95133 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.12 | Employment Development Dept | Bankruptcy Group MIC 92E | PO Box 826880 Sacramento, CA 94280 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.13 | Faustino T. Gonzalez | | 3323 Coachlight Dr San Jose, CA 9511 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.14 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | - | Unsecured | - | | | | YES | $2,764.21 |
| 2.15 | Gary L. Barnes | | 9104 Brea Way Roseville, CA 95747 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.16 | Hector Hugo Acosta Macias | | 1801 Bermuda Way San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.17 | Internal Revenue Service | | PO Box 7346 Philadelphia, PA 19101 | - | Unsecured | - | | | | YES | $1,000 |
| 2.18 | Isaac Martinez Perez | | 57 Berkshire Ave., Apt 4 Redwood City, CA 94063 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.19 | Jorge F. Cisneros | | 5290 Great oaks Drive San Jose, CA 9511 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.20 | Juan Guevara | | 450 Bell St. Palo Alto, CA 94303 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.21 | Julio C. Pena Alvarez | | 540 E Maude Ave., Apt 24 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.22 | Julio Cesar Herrera Martinez | | 620 E. Maude Ave., #205 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.23 | Kevin M. Kashishian | | 2460 Benton Street Santa Clara, CA 95051 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.24 | Leonard Rodriguez Lopez | | 5300 Verner Ave Sacramento, CA 95841 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.25 | Luis Suarez | | 3210 Pearl Ave., #526 San Jose, CA 95136 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.26 | Luke S. Sanchez | | 1899 MacDuee Way San Jose, CA 95121 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.27 | Maynor Rodriquez Valdez | | 540 E. Mandue Ave., Apt 18 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.28 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.29 | Miriana De Rosas Silva | | 2175 Aborn Rd., #119 San Jose, CA 95121 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.30 | Olises Rivera Vargas | | 4469 Hanalei Place San Jose, CA 95118 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.31 | Rigoberto Lopez Hernandez | | 26361 Regal Ave Hayward, CA 94544 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.32 | Robert Delgado | | 3161 Cadillac Dr., Apt 2 San Jose, CA 95117 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.33 | Santa Clara County Dept of Tax | | 110 W. Tasman Dr San Jose., CA 95134 | - | Unsecured | Notice purpose | | | | No | |
| 2.34 | Steven Kitzerow | | 2435 Azevedo Pkwy San Jose, CA 95125 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.35 | Vincente Quiej Cal | | 1748 Norando Dr., #2 Sunnyvale, CA 94087 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.36 | Vinicio Cruz | | 5365 Saint Mark Ave Newark, CA 94560 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.37 | Wilfred T. Goo | | 16 Lavonne Drive Campbell, CA 95008 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.38 | William D. Butler | | 730 Mora Dr. Los Altos, CA 94024 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| | | | **TOTAL** | | | | | | | | **$3,764** |
| **Part 2: Nonpriority Unsecured Claims** | | | | | | | | | | | |
| 3.1 | A&B Concrete Pumping | | PO Box 981 San Jose, CA 95108 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.2 | Able Septic Tank Service | | 1020 Ruff Drive San Jose, CA 95110 | - | Unsecured | Notice purpose only | | | | YES | 7,368.00 |
| 3.3 | Alamedo Co. Recorder's Office | | 1106 Madison St. Oakland, CA 94607 | 105.00 | Unsecured | Vendor | | | | No | |
| 3.4 | American Express | | 200 Vesey Street New York, NY 10285 | 5,000.00 | Unsecured | Credit Card | | | | YES | $5,144.50 |
| 3.5 | AT&T | | 208 S. Akard Street Dallas, TX 75202 | - | Unsecured | Utility | | | | No | |
| 3.6 | Azuga Inc | | PO Box 735291 Chicago, IL 60673 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.7 | Bay Area Asphalt & Cement Work | | 545 Nipper Avenue San Jose, CA 95133 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.8 | Bayshore Automotive | | 1394 N. Fourth St. San Jose, CA 95112 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.9 | Bennett Marine Utility | | PO Box 11710 Burlingame, CA 94010 | - | Unsecured | Notice purpose only | | | | No | |
| 3.10 | Berlin Food & Lab Equip Co | c/o Mark Cottonaro | 43 S. Linden Ave South San Francisco., CA 94080 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.11 | Bruce Tire, Inc. | c/o GB Auto Service | PO Box 280942 Dallas, Tx 75320 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.12 | Burdick Painting | | 705 Nuttman Street Santa Clara, CA 95054 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.13 | Business Telephone Exchange | | 929 Berryessa Rd., #10 San Jose, CA 95133 | 876.00 | Unsecured | Vendor | | | | No | |

EXHIBIT 4, PAGE 69

| # | Creditor | Account | Address | Amount | | Description | | Value |
|---|---|---|---|---|---|---|---|---|
| 3.14 | Capital One | | 1680 Capital One Dr. Mc Lean VA, 22102 | 180,000.00 | Unsecured | Credit Card | No | |
| 3.15 | Cintas | | 6800 Cintas Blvd. Mason, OH 45040 | - | Unsecured | Medical Supplies | No | |
| 3.16 | Cintas | | PO Box 631025 Cincinnati, OH 45263 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.17 | City & County of San Francisco | | PO Box 7425 San Francisco, CA 94120 | - | Unsecured | Vendor | No | |
| 3.18 | Colonia Life Insurance | | PO Box 903 Columbia, SC 29202 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.19 | County of San Mateo - Env Health | | 2000 Alameda de Las Pulgas St. 100 San Mateo, CA 94403 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.20 | Dahl's Equipment Rentals Inc | | 1110 N. Tenth St. San Jose, CA 95112 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.21 | De Lage Landen | | PO Box 825736 Philadelphi, PA 19182 | 782.24 | Unsecured | Vendor | No | |
| 3.22 | Digital Concrete Scanning Serv | | 2257 Harbor Bay Pkwy Alameda, CA 94502 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.23 | Earl's Pest Control | | 1040 Commercial Ave., Ste 101 San Jose, CA 95112 | - | Unsecured | Vendor | No | |
| 3.24 | Exxell Fire Systems | | 360 Grand Ave. #355 Oakland, CA 94610 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.25 | Faultline Marketing | | 1821 S. Bascom Ave., #301 Campbell, CA 95008 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.26 | FedEx | | PO Box 7221 Duarte, CA 91009 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.27 | Grainger | | 2261 Ringwood Ave San Jose, CA 95131 | 935.01 | Unsecured | Vendor | No | |
| 3.28 | Grant Phillips Law, PLLC | | 670 Long Beach Blvd Long Beach, NY 11561 | 27,000.00 | Unsecured | Legal | No | |
| 3.29 | Guillermo Silva | | 1610 Maiden Cane Way Los Banos, CA 93635 | 400,000.00 | Unsecured | Sale Agreement with Former Owner | YES | $0.00 |
| 3.30 | Harrington Industrial Plastics | | PO Box 676273 Dallas Tx, 75267 | - | Unsecured | Notice Purpose Only | No | |
| 3.31 | Haynie & Company | | 1785 West 2300 South 2nd Floor Salt Lake City, UT 84119 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.32 | HDS White Cap Const. Supply | | PO Box 4944 Orlando, FL 32802 | - | Unsecured | Notice Purpose Only | No | |
| 3.33 | Heffernan Insurance Brokers | | PO Box 4006 Walnut Creek, CA 94596 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.34 | Hilti, Inc. | | PO Box 70299 Philadelphia, PA 19176 | 240.93 | Unsecured | Vendor | No | |
| 3.35 | Hitachi Global Air Power US LLC | | 4659 Las Positas RD Suite A Livermore, CA 94551 | - | Unsecured | Notice Purpose Only | YES | $81,166.68 |
| 3.36 | Home Depot | Dept 32-2188824647 | PO Box 9001030 Louisville, KY 40290 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.37 | Kad Technical Services, Inc. | c/o Kenneth Demers | 5566 Tyler Place Fremont, CA 94538 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.38 | Kaiser Foundation Health Plan | | File 5915 Los Angles, CA 90074 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.39 | Lefevre Welding Inc | | 2511 Isabelle Ave San Mateo, CA 94403 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.40 | Linde Gas & Equipment, Inc | | Dept LA 21511 Pasadena, CA 91185 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.41 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | 400,000.00 | Unsecured | Sale Agreement | YES | $400,000 |
| 3.42 | Microsoft One | | Microsoft Way Redmond, WA 98052 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.43 | Milpitas Materials Co | | 1125 N. Milpitas Blvd Milpitas, CA 95035 | - | Unsecured | Notice Purpose Only | No | |
| 3.44 | MRC - Rabbit | | PO Box 843760 Los Angeles, CA 90084 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.45 | Oil Changers | | PO Box 847488 Los Angeles, CA 90084 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.46 | On-Site Health & Safety | | PO Box 248947 Oklahoma City, OK 73124 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.47 | Pavion | | 4151 Lafayette Center Drive Suite 700 Chantilly, VA 20151 | - | Unsecured | Security System | No | |
| 3.48 | Pearl Capital | | Washington Blvd 22nd Fl Jersey City, NJ 07310 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.49 | PG&E | | 300 Lakeside Dr. Oakland, CA 94612 | - | Unsecured | Notice Purpose | YES | $696.59 |
| 3.50 | Pirtek SFO | | 1997 Burroughs Ave San Leandro, CA 94577 | 390.51 | Unsecured | Vendor | No | |
| 3.51 | Printos Studio | | 74 Race St. San Jose, CA 95126 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.52 | Puretec Industrial Water | | 3151 Sturgis Road Oxnard, CA 93031 | - | Unsecured | Notice Purpose | YES | $50,813.98 |
| 3.53 | Red Wing Bus. Advantage | | PO Box 844329 Dallas, TX 75284 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.54 | Republic Services | | 18500 N. Allied Way Phoenix, AZ 85054 | - | Unsecured | Trash Services | No | |
| 3.55 | Ryan Herco Products Corp | | PO Box 74007459 Chicago, IL 60674 | - | Unsecured | Notice Purpose | No | |
| 3.56 | Santa Clara Windustrial | | 1525 Walsh Ave Santa Clara, CA 95050 | - | Unsecured | Notice Purpose | No | |
| 3.57 | Sheppard Mullin Richter & Hampton | | PO Box 840728 Los Angeles, CA 90084 | 66,871.23 | Unsecured | Attorneys Fees | YES | $69,949.57 |
| 3.58 | Spectrum VOIP | | 7600 Windrose Ave St. 350 Plano, TX 75024 | - | Unsecured | Phone Services | No | |
| 3.59 | Steve Harmsen | | 26 N. State Street Salt Lake City, UT 84103 | 439,000.00 | Unsecured | Loans to Company | No | |
| 3.60 | Swagelok | | PO Box 51624 Los Angeles, CA 90051 | 2,090.38 | Unsecured | Vendor | No | |
| 3.61 | Sweeny Mason | | 983 University Ave., Ste. C104 Los Gatos, CA 95032 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.62 | SYS IT | | 303 Twin Dolphin Dr. Suite 600 Redwood City, CA 94065 | - | Unsecured | IT Dept | No | |
| 3.63 | Traveler's Claim | | 13607 Collections Center Chicago, IL 60693 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.64 | Travelers CL Remittance Center | | PO Box 660317 Dallas, TX 75266 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.65 | U Line | | 8800 Military Rd Reno, NV 89506 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.66 | U-Save Rockery | | 598 E. Gish Rd San Jose, CA 95112 | - | Unsecured | Notice Purpose | No | |
| 3.67 | Unified Cleaning Services | | 3000 Haas Drive Aptos, CA 95003 | 1,570.00 | Unsecured | Vendor | No | |
| 3.68 | United Concrete Cutting Inc | | 2127 Jamaica Way San Jose, CA 95122 | 31,757.00 | Unsecured | Vendor | No | |
| 3.69 | University Electric | | 1500 Martin Ave Santa Clara, CA 95050 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.70 | Verizon Wireless | | PO Box 660108 Dallas, TX 752266 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.71 | VRC | | 5384 Poplar Ave Suite 500 Memphis, TN 38119 | - | Unsecured | Shredding Services | No | |
| 3.72 | VRC Companies LLC | Vital Records Dept 5874 | PO Box 11407 Birmingham, AL 35246 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.73 | West America Finance | | 26 North State Street Salt Lake City, UT 84103 | 50,000.00 | Unsecured | Loans to Company | YES | $1,485,000.00 |
| 3.74 | Western States Fire Protection Co | Attn Brad Smith | 470 Division Street Campbell, CA 95008 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.75 | Wex Bank | | PO Box 6293 Carol Stream, IL 60197 | 6,502.02 | Unsecured | Vendor | YES | $8,031.43 |
| 3.76 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 495,000.00 | Unsecured | Loans to Company | YES | 558,709.70 |
| 3.77 | WinSupply of Silicon Valley | | 2514 Channing Ave San Jose, CA 95131 | - | Unsecured | Vendor | No | |
| 3.78 | Wolfpack Insurance Services | | PO Box 156 Belmont, CA 94002 | - | Unsecured | Vendor - Notice purpose only | No | |
| | | | | | | **TOTAL** | | **$3,233,621.58** * |

**\* This does not include the following unsecured claims:**

| | |
|---|---|
| **Claim 4 - Great Americawn Financial Services** | **$12,496.00** |
| **Claim 11 - American Contractors Indemnity Co.** | **$0.00** |
| **TOTAL** | **$12,496.00** |

EXHIBIT 4, PAGE 70

# Exhibit "5"

**Pappas Piping Service, Inc.**
**Liquidation Analysis**

| | Estimated Market Value | Chapter 7 Liquidation | | Chapter 11 Plan |
|---|---|---|---|---|
| **Sources of Cash** | | | | |
| **Cash** | 750,000 | 750,000 | | |
| **Personal Property** | | | | |
| Accounts Receivable | 4,500,000 | 2,250,000 | a | |
| Prepaid Expenses | 35,000 | 17,500 | a | |
| Office Funiture, Fixtures & Equipment | 10,000 | 5,000 | a | |
| Machinery, Equipment & Vehicles | 50,000 | 25,000 | a | |
| **Estimated GUC Distributions from Excess Cash from Operations** | | | | (2,624,562) |
| **Liquidated Cash Available for Creditors** | | **3,047,500** | | **(2,624,562)** |
| | | | | |
| **Uses of Cash** | | | | |
| **Chapter 7 Administrative Fees** | | | | |
| Bankruptcy Trustee | | (25,000) | | |
| Trustee Counsel | | (50,000) | | **Not Applicable** |
| Trustee Financial Advisor | | (15,000) | | |
| **Cash Available for Chapter 11 Administrative Fees** | | **2,957,500** | | |
| | | | | |
| **Subchapter V Administrative Fees** | | | | |
| Chief Restructuring Officer | | 25,000 | | |
| Debtor Counsel | | 75,000 | | |
| Claims Agent | | 50,000 | | **Included in Projections** |
| **Cash Available for Secured Claims** | | **3,107,500** | | |
| | | | | |
| **Secured Claims** | | 5,216,000 | | |
| | | | | |
| **Cash Available for Unsecured Creditors** | | **-** | | **2,624,562** |
| | | | | |
| **Priority Claims** | | **3,553** | | **Included in Projections** |
| **General Unsecured Claims** | | **2,541,665** | | **2,541,665** |
| | | | | |
| **% Recovery for GUC** | | **0.0%** | | **103.3%** |

a) Amounts shown are based upon scheduled amounts, the validity of which cannot be independently verified.  Assumes a 50% recovery under a Chapter 7 liquidation.

EXHIBIT 5, PAGE 71

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **DISCLOSURE STATEMENT DESCRIBING DEBTOR-IN-POSSESSION'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 10, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR: Aaron E. De Leest**    adeleest@marshackhays.com,
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR LIVE OAK BANKING COMPANY:** Bernard J Kornberg
  bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **US TRUSTEE: United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood**    dwood@marshackhays.com,
  dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **June 10, 2026**, I delivered the document described above via email to Stretto, Debtor's claims and noticing agent, for service on all interested parties at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. Upon completion of the service by Stretto to Debtor, Stretto will file a Certificate of Service listing the address served.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
23832 ROCKFIELD BLVD., SUITE 245
LAKE FOREST, CA 92630-2884

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 10, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK D. HOULE
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 10, 2026 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**