DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for
PAPPAS PIPING SERVICE, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor. | Case No. 8:26-bk-10033-MH<br><br>Chapter 11<br><br>DEBTOR-IN-POSSESSION'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION<br><br><u>Disclosure Statement Hearing</u><br>Date: August 4, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6C – Via Zoom Gov<br>411 W. Fourth St., Santa Ana, CA 92701<br><br><u>Plan Confirmation Hearing</u><br>Date: October 27, 2026<br>Time: 1:30 p.m.<br>Ctrm: 6C<br>Place: 411 W. Fourth St., Santa Ana, CA 92701 |

/ / /

## TABLE OF CONTENTS


**1. Introduction** .......... **2**

**2. Exhibits to the Plan** .......... **3**

**3. Deadline for Objecting to confirmation of the Plan** .......... **3**

**4. Who to contact for more information regarding the Plan** .......... **4**

**5. Classification and Treatment of Claims and Interests** .......... **4**

- **A. Overview** .......... **4**
- **B. Treatment of Unclassified Claims** .......... **5**
  - **i. Administrative Expenses** .......... 5
  - **ii. Priority Tax Claims** .......... 6
- **C. Treatment of Classified Claims and Interests** .......... **7**
  - **i. Classes of Secured Claims – Classes Class 1(a), 1(b), and 1(c)** .......... 7

**ii. Priority Unsecured Claims** .......... **9**

  - **iii. Classes** of **General Unsecured Claims – Class 2(a) & 2(b)** .......... 9
  - **iv. Class of Equity Interest Holders** .......... 10

6. **Means of Effectuating the Plan and other provisions** .......... **11**

- **A. Funding for the Plan** .......... **11**
- **B. Disbursing Agent** .......... **11**
- **C. Debtor's Post-Confirmation Management** .......... **11**
- **D. Avoidance Actions and other Litigation Claims** .......... **12**
- **E. Revesting of Property in the Reorganized Debtor** .......... **13**
- **F. Executory Contracts and Unexpired Leases** .......... **13**
- **G. Objection to Claims** .......... **15**
- **H. Amendments to Claims; Claims Filed After the Confirmation Hearing** .......... **15**
- **I. Estimation of Claims** .......... **16**
- **J. Distributions to be Made Pursuant to the Plan** .......... **16**
- **K. Fractional Dollars, *De Minimis* Distributions** .......... **17**

**L. Disposition of Assets ..... 18**

**7. Effect of Confirmation of Plan ..... 18**

**A. Discharge ..... 18**

**B. Continuing Stay/Injunction ..... 18**

**C. No Liability for Solicitation or Participation ..... 19**

**D. Limitation of Liability ..... 19**

**E. Revesting of Property in the Reorganized Debtor ..... 20**

**F. Preservation of all Litigation and Causes of Action ..... 20**

**G. Modification of the Plan ..... 21**

**H. Changes in Rates subject to Regulatory Commission Approval ..... 22**

**I. Retention of Jurisdiction ..... 22**

**8. Miscellaneous Provisions ..... 23**

**A. Post-Confirmation Status Report ..... 23**

**B. Post-Confirmation Conversion/Dismissal ..... 23**

**C. Post-Confirmation UST Fees ..... 24**

**D. Risk Factors ..... 24**

**E. Final Decree ..... 24**

**9. Defined Terms and Rules of Construction ..... 24**

**A. Defined Terms ..... 24**

**10. Rules of Construction ..... 29**

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C §507(a)(5) ........ 8
11 U.S.C. § 101(5) ........ 12
11 U.S.C. § 1112(b) ........ 23
11 U.S.C. § 1123(b)(2) ........ 13
11 U.S.C. § 1125 ........ 21
11 U.S.C. § 1125(e) ........ 19
11 U.S.C. § 1127 ........ 22
11 U.S.C. § 1127(f)(2) ........ 21
11 U.S.C. § 1141 ........ 18
11 U.S.C. § 365(a) ........ 13
11 U.S.C. § 502 ........ 18
11 U.S.C. § 502(c) ........ 15
11 U.S.C. § 502(g) ........ 18
11 U.S.C. § 502(h) ........ 18
11 U.S.C. § 502(i) ........ 18
11 U.S.C. § 503(b) ........ 24
11 U.S.C. § 507(a) ........ 9
11 U.S.C. § 507(a)(2) ........ 5
11 U.S.C. § 507(a)(8) ........ 6
11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7) ........ 9
11 U.S.C. §§ 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) ........ 9
11 U.S.C. §§ 510, 541, 542, 544, 547, 548, 549, 550, 551, and/or 553 ........ 12
11 U.S.C. §§ 544, 547 and 548 ........ 11
11 U.S.C. §507(a)(3) ........ 8
11 U.S.C. §507(a)(4) ........ 8
11 U.S.C. §507(a)(6) ........ 8

11 U.S.C. §507(a)(7) ........ 8
28 U.S.C. § 1930 ........ 24
28 U.S.C. § 1930(a)(6) ........ 24

**Rules**

Fed. R. Bank. P. 1009 ........ 16
Fed. R. Bankr. P. 9019 ........ 17

TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

Debtor and Debtor-in-Possession, Papas Piping Service, Inc., ("Pappas" or "Debtor") proposes this First Amended Chapter 11 Plan of Reorganization Dated August 11, 2026 ("Plan") as follows:

## 1. Introduction

On January 6, 2026, a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Petition Date") was filed by Debtor and Debtor-in-Possession, Papas Piping Service, Inc.

Chapter 11 allows Debtor, creditors, and other parties interest to propose a plan of reorganization. A plan may provide for Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.

Here, the Debtor of the above captioned bankruptcy estate ("Estate") proposes this Plan. Debtor as the Plan Proponent has also sent you in the same envelope as this document, a disclosure statement ("Disclosure Statement"), which has been approved by the Court, and which is provided to assist you in understanding the Plan. The Disclosure Statement is explanatory only; the language used in this Plan is binding. **THE DOCUMENT YOU ARE READING IS THE PLAN. YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAYS WISH TO CONSULT ONE).**

Debtor believes this Plan of reorganization, which seeks to satisfy the claims of creditors as set forth in detail below, best serves the interest of the Estate and its creditors. Debtor strongly urges all creditors and interested parties to support confirmation of this Plan.

The Plan is a plan of reorganization with the intent to pay all allowed unsecured creditors 100.0% on account of any ***allowed*** claims. The primary purpose is to pay the Debtor's secured, administrative, priority unsecured, and unsecured creditors in full.

The Effective Date of the Plan will be the first business day of the first full calendar month which is at least fifteen (15) days following the date of the entry of an order by the Bankruptcy Court ("Court") confirming the Plan ("Confirmation Order"), assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order ("Effective Date").

The Plan is proposing payment to allowed creditors in full with interest at the federal rate. Debtor believes that Class 1(a), 1(b), and 2(a) creditors are impaired and entitled to vote on the Plan. Class 1(c) and 2(b) are unimpaired, and under applicable law, deemed to have accepted the Plan.

## 2. Exhibits to the Plan

A summary of the exhibits attached to the Disclosure Statement, which are incorporated herein by reference are as follows:

1. A true and correct copy of this Court's webPACER Claims Register Docket for Case No. 8:26-bk-10033-MH as August 11, 2026, is attached here as Exhibit "1."

2. A true and correct copy of the Plan Projections are attached to the Disclosure Statement as Exhibit "2."

3. A true and correct copy of the First Amended Pirs Settlement is attached to the Disclosure Statement as Exhibit "3."

4. A true and correct copy of the Unsecured Creditors List is attached to the Disclosure Statement as Exhibit "4."

5. A true and correct copy of the Liquidation Analysis is attached to the Disclosure Statement as Exhibit "5."

## 3. Deadline for Objecting to confirmation of the Plan

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the claim held by the objector. Any such objection must be filed with the Court and served so that it is received by the Court, the Office of the United States Trustee ("UST"), counsel for Debtor at the addresses listed in the upper left-hand corner of the first page of this Plan on or before October 6, 2026.

Objections to confirmation of the Plan are governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## 4. Who to contact for more information regarding the Plan

Any interested party desiring further information about the Plan should contact Debtor's counsel of record: David A. Wood, Matthew W. Grimshaw, and Aaron E. de Leest of Marshack Hays Wood LLP, 870 Roosevelt Ave., Irvine, CA 92620, telephone: (949) 333-7777, facsimile: (949) 333-7778; and email: dwood@marshackhays.com, mgrimshaw@marshackhays.com, and adeleest@marshackhays.com.

## 5. Classification and Treatment of Claims and Interests

### A. Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

Under the Plan, there are three (3) Classes of Creditors, as follows:

(a) Class 1(a), 1(b), and 1(c) consists of Debtor's secured pre-petition claims.

  a. Class 1(a) consists of the secured claim of Live Oak Banking Company, and the Plan treats them as impaired, and entitled to vote to accept or reject the Plan.
  b. Class 1(b) consists of the secured claim of West American Finance Corporation and/or Steve Harmson, and the Plan treats them as impaired, and entitled to vote to accept or reject the Plan.
  c. Class 1(c) consists of the secured claim of Pirs Capital LLC, and the Plan treats them as not impaired, and therefore Class 1(c) is not entitled to vote to accept or Reject the Plan.

(b) Class 2(a) consists of the convenience class of general unsecured claim(s) Class 2(a) option. Class 2(a) is impaired and is entitled to vote to accept or reject the Plan.

(c) Class 2(b) consists of general unsecured claims. Class 2(b) creditors are impaired under the Plan and are entitled to vote to accept or reject the Plan.

(d) Class 3 consists of equity interest holders. Class 3 interest holders are not impaired

under the Plan and are not entitled to vote to accept or reject the Plan.

## B. Treatment of Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Plan Proponents have not placed the following claims in a class:

### i. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under 11 U.S.C. § 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all the known Section 507(a)(2) administrative claims and their treatment under the Plan:

| **Name** | **Amount Currently Owed** | **Treatment** |
|---|---|---|
| Marshack Hays Wood, LLP –Debtor's Special Litigation and Reorganization Counsel | Current fees through the hearing on Plan Confirmation are estimated to be $100,000. Additional fees may be incurred through the duration of this Chapter 11. | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |
| Grobstein Teeple LLP – CRO and Financial Advisor | $35,000 (estimate) | Paid in full on the Effective Date, unless claimant agrees to a different treatment. |
| Clerk's Office Fees | $0.00 (estimate) | Paid in full on the Effective Date. |
| Stretto, Claims Agent | $25,000 | Paid in full on the Effective Date, unless claimant agrees to a different treatment. |
| Office of the U.S. Trustee Fees | $0.00 (estimate) | Paid in full on the Effective Date. |

| | | |
|---|---|---|
| **TOTAL** | $160,000 (estimate) | |

By supporting confirmation of the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any of these Administrative Claims. By supporting confirmation the Plan, creditors also understand the final amount of allowed fees and expenses of the professionals employed in this case may be higher or lower than the figures set forth above, which are just estimates.

The Court must rule on all fees listed in this chart before the fees will be allowed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Plan Proponents best estimate as to the amount of allowed administrative claims estimated to be incurred by professionals prior to the Effective Date. The actual administrative claims may be higher or lower.

### ii. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires each holder of Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored non-priority unsecured claim provided for under the Plan. All Priority Tax Claims will be paid as set forth in the below chart. The Reorganized Debtor (as appropriate) reserves all rights to object to any such Priority Tax Claims.

The following chart lists all of the § 507(a)(8) priority tax claims and their treatment under

the Plan:[1] The chart is based on the filed and scheduled claims in this case.

| **Description** | **Amount Owed** | **Treatment** |
|---|---|---|
| Internal Revenue Service | $1,000 (est.)[2] | Paid in full on the Effective Date. |
| Franchise Tax Board | $2,553.31 (est.)[3] | Paid in full on the Effective Date. |
| **TOTAL** | **$3,553.31 (est.)** | |

### C. Treatment of Classified Claims and Interests

The Classes below classify Claims (except for Administrative Claims and Priority Tax Claims) against the Estate for all purposes, including voting, confirmation and distribution pursuant to the Plan.

#### i. Classes of Secured Claims – Classes Class 1(a), 1(b), and 1(c)

Secured claims are claims secured by liens on property of the Estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan.

| **CLASS#** | **DESCRIPTION** | **IMPAIRED (Y/N)** | **TREATMENT** |
|---|---|---|---|
| 1(a) | Live Oak Banking Company ("Live Oak")<br><br>Claim Amount - $3,189,601.40<br><br>Collateral – All assets of the Debtor pursuant to a perfected UCC-1 dated March 18, 2022, as Document Number U220175905829 | Yes | Live Oak's will be paid according to the terms of the underling loan documents with a monthly payment of approximately $49,490 per month, with interest shall accrue on Live Oak's at the contractual rate.<br><br>Additionally, Live Oak has an approximate $1.25 million claim against Mr. Butler's personal residence, which is currently being marketed for sale. Upon the sale of the residence and the payment to Live Oak of the $1.25 million, the Plan will then adjust to pay monthly payments to Live Oak in the amount of $24,745 per month, |

[1] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.
[2] *See* Teeple Decl., Ex. 1, pgs. 46-51.
[3] *Id.*, at Ex. 9 (asserting a priority unsecured claim for $2,553.31 and a general unsecured claim for $210.90).

| | | | |
|---|---|---|---|
| | | | with interest at the contractual rate until Live Oak is paid in full. Pursuant to the projections attached to the Teeple Declaration as Exhibit "2," Live Oak is anticipated to be paid within three (3) years of the Effective Date.<br><br>Live Oak shall retain its lien against its collateral, with a replacement lien arising as to such assets to the extent permitted by non-bankruptcy law. |
| 1(b) | West American Finance Corporation and/or Steve Harmsen ("West American")<br><br>Claim Amount - $469,000<br><br>Collateral – All assets of the Debtor pursuant to a perfected UCC-1 dated March 21, 2024, as Document Number U240026990432 | Yes | Debtor will pay the allowed amount of West American's claim in full with monthly payments of $13,805.00 through the duration of the Plan until West American is paid in full, with 3.8% simple interest.<br><br>Mr. Harmsen shall retain its lien against Debtor's collateral. |
| 1(c) | Pirs Capital, LLC ("Pirs Capital")<br><br>Claim Amount – approximate $295,346.00<br><br>Collateral- Junior priority lien on all assets of the Debtor pursuant to a perfected UCC-1 dated January 8, 2025, as Document Number U250101451421 | No | Pirs Capital and the Debtor entered into a pre-petition first amended settlement agreement on or about November 4, 2025 ("First Amended Pirs Settlement"). A true and correct copy of the First Amended Pirs Settlement is attached to the Teeple Declaration as Exhibit "3."<br><br>In the Cash Collateral Motion and Final Cash Collateral Order, Pirs Capital was to be paid in accordance with the First Amended Pirs Settlement. The Plan incorporates the treatment of Pirs Capital as set forth in the First Amended Pirs Settlement herein. |

### ii. Priority Unsecured Claims

Certain priority claims that are referred to under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Debtor does not have any creditors with claims entitled to priority under 11 U.S.C. §§ 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7). If it is determined that there are priority claims referred to in 11 U.S.C. §§ 507(a)(3), (4), (5), (6), and (7), such claims will be paid on the Effective Date.

### iii. Classes of General Unsecured Claims – Class 2(a) & 2(b)

Class 2(a) and 2(b) consists of general unsecured claims. General unsecured claims are unsecured claims not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies this Plan's treatment of the classes containing the general unsecured claims:

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2(a) | Convenience Class – Allowed General Unsecured Claim(s) Class 2(a) Option<br><br>Total Claims: Unknown | No. There may be some insider General Unsecured Claims. To the extent that any holder of an allowed insider General Unsecured Claim votes on the Plan, such vote will not be counted. | Yes (Creditors in this class are entitled to vote on the Plan). | Each holder of an Allowed General Unsecured Claim may voluntarily elect to receive 50% of their Allowed General Unsecured Claim not to exceed $25,000 on the Effective Date or as soon as reasonably practicable after the Disbursing Agent has sufficient cash on hand to pay 50.0% of the claim. Any Allowed General Unsecured Claim holder who opts into this Class 2A will expressly waive any of the creditor's Allowed General Unsecured Claim in excess of $25,000.<br><br>If an Allowed General Unsecured Claim holder fails to submit a ballot or if the submitted ballot does not |

| **CLASS** | **DESCRIPTION** | **INSIDER (Y/N)** | **IMPAIRED (Y/N)** | **TREATMENT** |
|---|---|---|---|---|
| | | | | affirmatively elect to be treated as a Class 2(a) creditor, then such Allowed General Unsecured Claim holder will be treated as Class 2(b) General Unsecured Claim Holder. |
| 2(b) | General Unsecured Claims. A true and correct copy of the General Unsecured Claimants in this class is attached to the Teeple Declaration as Exhibit "4." As set forth in Exhibit "4," the total amount of general unsecured claims are estimated to be $3,233,621.58. | No. There may be some insider General Unsecured Claims. To the extent that any holder of an allowed insider General Unsecured Claim votes on the Plan, such vote will not be counted. | Yes (Creditors in this class are entitled to vote on the Plan). | Unless otherwise agreed by individual claimholders, in full and complete satisfaction of all Class 2(b) claims, claimants shall receive payment of their Allowed General Unsecured Claims in full, including interest at the federal judgment rate as of the Petition Date (3.8%), from the Petition Date until paid in full over the duration of the Plan. A true and correct copy of the Plan Projections are attached to the Teeple Declaration as Exhibit "2."<br><br>The foregoing treatment shall be in full settlement and satisfaction of all Class 2(B) claims.<br><br>As set forth in Exhibit "4" attached to the Teeple Declaration, the total amount of general unsecured claims are $3,233,621.58. |

### iv. Class of Equity Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. Here, Ormond Corp shall retain their ownership of all existing interests in the Debtor without impairment.

## 6. Means of Effectuating the Plan and other provisions

### A. Funding for the Plan

It is projected that the Estate will have cash on hand at the Effective Date to make the necessary Effective Date payments and a percentage of the allowed administrative professional fees on the Effective Date. Thereafter, the Reorganized Debtor will fund the Plan payments through continued operations. A true and correct copy of the Plan Projections are attached to the Teeple Declaration as Exhibit "2." The Debtor's projections demonstrate that through cash on hand and income generated by the Debtor over the life of the Plan, the Debtor will have the ability to make payments due: (1) on the Effective Date; (2) to administrative claim holders; (3) to Class 1(a), 1(b), and 1(c) claim holders; and (4) to Class 2(a) and 2(b) class holders. These projections are based upon the historical income and expenses of the Debtor, as well as the actual income and expenses incurred during the course of the Bankruptcy Case.

As set forth in Class 2(b), general unsecured creditors are expected to be paid in full, and will receive interest (3.8%) at the federal judgment rate, which is significantly more then the approximately 0% general unsecured creditors would receive in a hypothetical chapter 7 liquidation. The Plan term is approximately three (3) years. *See* Teeple Decl., Ex. 2, pgs. 52-65.

### B. Disbursing Agent

Joshua Teeple shall act as the disbursing agent for the purpose of making all the distributions provided for under the Plan ("Disbursing Agent"). The Disbursing Agent shall be bonded at the expense of the Estate. The Disbursing Agent will receive compensation on an hourly basis at its normal hourly rates. The Disbursing Agent's fees and expenses will be paid as an administrative expense from the Plan payments. The Disbursing Agent may employ professionals, including Grobstein Teeple LLP and Marshack Hays Wood LLP to the extent necessary at their normal hourly rates.

### C. Debtor's Post-Confirmation Management

The Debtor will become the Reorganized Debtor on the Effective Date. The Reorganized Debtor will be responsible for managing its assets and financial affairs.

**D. Avoidance Actions and other Litigation Claims**

The Debtor reserves for the Estate, the Reorganized Debtor, and any Chapter 11 or Chapter 7 Trustee that may hereafter be appointed, all rights to commence and pursue, as appropriate, any and all causes of action and avoidance actions, whether arising prior to or after the Petition Date, in any court or other tribunal, including without limitation, in an adversary proceeding filed in the Court, except for as otherwise provided in the Plan. On the Effective Date, the Reorganized Debtor will be vested with authority to enforce, file, litigate, prosecute, settle, and collect on any claim or cause of action, including actions under 11 U.S.C. §§ 544, 547 and 548.

Unless a claim for relief or avoidance action against any person is expressly waived, relinquished, released, compromised, or settled as provided or identified in the Plan, any confirmation order, or prior order of the Court, the Debtor expressly reserves all claims for relief and avoidance actions for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims for relief or avoidance actions upon or after confirmation or consummation of the Plan. All avoidance actions and other claims for relief are preserved under the Plan for the benefit of the Estate, except as otherwise provided for in the Plan.

"Avoidance action" means causes of action arising under 11 U.S.C. §§ 510, 541, 542, 544, 547, 548, 549, 550, 551, and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action. This specifically includes the transfers listed on the Debtor's SOFA made during the 90 days, 1 year and 2 years prior to the Petition Date.

"Claim for Relief" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims (as defined in 11 U.S.C. § 101(5)) and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise that the Debtor and/or the Estate may hold against any person as of the Effective Date.

This specifically includes, but is not limited to, non-bankruptcy claims such as breach of fiduciary duty, embezzlement, fraud, and malpractice claims.

ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF THAT IS AVOIDABLE UNDER THE CODE OR THAT HOLD A CLAIM AGAINST THE ESTATE THAT COULD BE SUBJECT TO AN OBJECTION BASED UPON FAILURE TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE DIRECTED TO REVIEW THEIR RECORDS AND/OR THE DEBTOR'S SCHEDULES FOR FURTHER INFORMATION, HOWEVER, ALL RIGHTS OF THE DEBTOR AND THE ESTATE ARE RESERVED WITH RESPECT TO ANY AND ALL TRANSFERS OR SETOFF WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY CODE.

All professional fees incurred in pursuing the avoidance actions or other causes of action shall be paid by the Reorganized Debtor without the necessity of a Court order. However, the Court will reserve exclusive jurisdiction to decide any and all disputes regarding the payment of the fees and costs related to post-confirmation professional fees, upon request of a party-in-interest and after notice and a hearing.

### E. Revesting of Property in the Reorganized Debtor

Except as otherwise provided in the Plan, on the Effective Date, all property and rights of the Debtor or the Estate will revest in, or be transferred to, the Reorganized Debtor, free and clear of all claims, liens, and rights of creditors and interests of interest holders. As of the Effective Date, all property of the Reorganized Debtor will be free and clear of all claims, liens, and other rights of creditors and interests of interest holders, except as otherwise expressly provided in this section or otherwise in the Plan.

### F. Executory Contracts and Unexpired Leases

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date. The entry of the Confirmation Order by the Court shall constitute approval of such assumption and/or rejection as appropriate pursuant to 11 U.S.C. §§

365(a) and 1123(b)(2).

Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed. Presently, Debtor is unaware of any executory contracts or unexpired leases that will be rejected.

To the extent the following are executory contracts and unexpired leases, Debtor seeks to assume such agreements as of the Effective Date:

| **Party** | **Subject of Executory Contract** | **Cure Amount** |
|---|---|---|
| Azuga | Lease of automobile(s) for Fleet Trucking | $0.00 |
| Dollinger Properties, Inc. | Commercial Lease located at 1450 Koll Circle, Suites, 106, 107, 108, San Jose, CA 95112 | $0.00 |
| Shamrock | Printer | $0.00 |
| Spectrum VOIP | Office Phones | $0.00 |
| U.S. Bank Equipment | Plotter Lease | $0.00 |
| BBSI | Employee Benefits, HR & Payroll | $0.00 |

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under this section of the Plan, or that are the subject of a pending motion to assume, and if applicable assign, Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

Any claim for damages arising from the rejection of an executory contract or unexpired lease must be filed and served on counsel for Debtor within thirty (30) days after the Confirmation Order is entered. Any Claim based on the rejection of an Executory Contract will be forever barred from receiving any distribution under the Plan if the proof of claim is not timely filed.

### G. Objection to Claims

The Reorganized Debtor through the Disbursing Agent, and any party in interest, may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this Case. The deadline to file objections to claims shall be six months (180 days) after the Effective Date. The Court shall retain jurisdiction over this case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any claim. The Reorganized Debtor will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

The Reorganized Debtor, and any party in interest may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this Case. The Court shall retain jurisdiction over this case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any claim.

### H. Amendments to Claims; Claims Filed After the Confirmation Hearing

Except as otherwise provided in the Plan, after the Confirmation Hearing, a proof of claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the amount set forth therein. Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of Claim (whether filed to assert a new Claim or to amend a previously filed Claim) filed after the Confirmation Hearing shall be deemed disallowed in full and expunged without any action by the Debtor or Reorganized Debtor.

## I. Estimation of Claims

The Reorganized Debtor through the Disbursing Agent may, at any time, request that the Court estimate any contingent or unliquidated General Unsecured Claim pursuant to 11 U.S.C. § 502(c) regardless of whether the Reorganized Debtor previously objected to such claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, that estimated amount will constitute the allowed amount of such claim or a maximum limitation on such claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim.

## J. Distributions to be Made Pursuant to the Plan

### i. Distributions on Allowed Claims

Distributions on allowed claims under the Plan will be made by the Disbursing Agent beginning on the Effective Date or as promptly thereafter as practicable. The Disbursing Agent's fees shall be paid from continued operations or the proceeds of any sale. Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Debtor.

Except as otherwise agreed to by the Reorganized Debtor through the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in Debtor's schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure, or if a different address is stated in a proof of claim duly filed with the Court, to such address. Nothing contained in the Plan shall require Debtor to attempt to locate any holder of an allowed claim.

Checks issued by Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof ("Claiming Period"). Requests for reissuance of any check shall be made to Debtor by the holder of the allowed claim to whom such check originally was

issued, prior to the expiration of the Claiming Period. After such date, the unclaimed property held on account of such voided check or such claim shall revest in the Reorganized Debtor free and clear of all claims and interests and be applied in accordance with the terms of the Plan.

#### ii. No Distribution Pending Allowance of a Claim or Ongoing Litigation

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a disputed claim unless and until all objections to such disputed claim have been settled or withdrawn or have been determined by final order, and the disputed claim, or some portion thereof, has become an allowed claim; provided, however, that if the only dispute regarding a disputed claim is to the amount of the disputed claim, the holder of a disputed claim shall be entitled to a distribution on account of that portion of the disputed claim which the Disbursing Agent does not dispute at the time and in the manner that the Disbursing Agent makes distributions to the holders of allowed claims pursuant to the provisions of the Plan.

A disputed claim is a claim that has not been allowed or disallowed and to which either: (i) a proof of claim has been filed or deemed filed and the Disbursing Agent or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the claim was not scheduled or the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

The Disbursing Agent will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure unless the amount allowed by the compromise does not exceed $5,000, in which case no Court approval is necessary.

### K. Fractional Dollars, *De Minimis* Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down. Debtor shall have the discretion not to make payments of less than twenty-five dollars ($25) on account of any allowed General Unsecured Claim, unless a specific request is made in writing to the Debtor on or before ninety days after

allowance of such claim.

### L. Disposition of Assets

From and after the Effective Date, and consistent with the terms of the Plan, the Debtor or Reorganized Debtor, as applicable, will be entitled to sell, transfer, encumber, or otherwise dispose of any interest in any of the assets of the Estate, the Debtor, or the Reorganized Debtor, as the case may be, without the need for any notice to creditors or other parties in interest, and without the need for obtaining approval of the Bankruptcy Court. The Reorganized Debtor reserves the right to sell all or substantially all of its assets after the Effective Date. In the event of such a sale of all or substantially all of the Debtor's assets, the proceeds of any sale will be held in a segregated account by the Disbursing Agent and distributed pursuant to the Plan.

## 7. Effect of Confirmation of Plan

### A. Discharge

On the Effective Date, the Debtor and the Reorganized Debtor, to the fullest extent permitted by 11 U.S.C. § 1141, shall be deemed discharged and released from all claims and interests including, without limitation, demands, liabilities, claims, and interests that arose before the Effective Date and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i) regardless of whether: (1) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed; (2) a claim or interest based on such a debt or interest is allowable under 11 U.S.C. § 502 ; or (3) the person holding the claim or interest based on such debt or interest has accepted the Plan.

### B. Continuing Stay/Injunction

The automatic stay is lifted upon confirmation as to property of the bankruptcy Estate. However, as of the Effective Date and subject to the terms of the Plan and the Disclosure Statement, the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all persons and entities that have held, currently hold or may hold a claim or other debt or liability that

is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against Debtor, the Reorganized Debtor, the Estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section, and jurisdiction of the Bankruptcy Court.

### C. No Liability for Solicitation or Participation

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### D. Limitation of Liability

To the maximum extent permitted by law, neither the Reorganized Debtor, the Estate, the Disbursing Agent, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the

solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

**E. Revesting of Property in the Reorganized Debtor**

Except as otherwise provided in the Plan, on the Effective Date, all property and rights of the Debtor or the Estate will revest in, or be transferred to, the Reorganized Debtor, free and clear of all claims, liens, and rights of creditors and interests of interest holders. As of the Effective Date, all property of the Reorganized Debtor will be free and clear of all claims, liens, and other rights of creditors and interests of interest holders, except as otherwise expressly provided in this section or otherwise in the Plan..

**F. Preservation of all Litigation and Causes of Action**

After confirmation of the Plan, the Reorganized Debtor shall retain all rights to commence and pursue, as appropriate, any and all claims or causes of action and the Civil Actions, including objections to claims, whether arising before or after the date on which Debtor filed its petition, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Case. The failure to list any potential or existing claims or causes of action is not intended to limit the rights of the Reorganized Debtor to pursue any claims or causes of action not listed or identified. After the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims, including the Civil Actions, without the need for approval by the Court.

Unless a claim, cause of action or Civil Action against a creditor or other entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any other final order of the Court, Debtor expressly reserves such claim, cause of action, or Civil Action for later adjudication (including, without limitation, claims and causes of action not specifically identified or which the Debtor or its Estate may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtor, or the Estate at this time or facts or circumstances which may change or be different from those which Debtor or the Estate now believe to exist). No

preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, causes of action, or Civil Actions upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the order confirming the Plan, except where such claims, causes of action, or Civil Actions have been explicitly released in the Plan. In addition, Debtor, and the Estate expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits.

Delivery (by any means) of the Plan or this Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of Debtor, or who has transacted business with Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by Debtor subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by Debtor as disputed, contingent, or unliquidated.

## G. Modification of the Plan

Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification is non-material or relates only to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting of the Plan.

The Reorganized Debtor may also seek to modify the Plan at any time after confirmation of the Plan only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

Moreover, pursuant to 11 U.S.C. § 1127(f)(2), the Plan, as modified, shall become the Plan only after there has been disclosure under 11 U.S.C. § 1125 as the Court may direct, notice and a hearing, and such modification is approved.

### H. Changes in Rates subject to Regulatory Commission Approval

To the best of Debtor's knowledge, Debtor is not subject to governmental regulatory commission approval of its rates.

### I. Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a. To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b. To determine the allowability, classification, or priority of claims and interests upon objection by Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c. To determine the extent, validity and priority of any lien asserted against property of Debtor, Reorganized Debtor, or property of the Estate;

d. To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

e. To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f. To determine any request for payment of administrative expenses;

g. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

h. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before, on, or after the Effective Date;

i. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

j. To modify the Plan under 11 U.S.C. § 1127 in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

k. Except as otherwise provided in the Plan, the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

l. To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

m. To enter a final decree closing this Case.

## 8. Miscellaneous Provisions

### A. Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same parties.

### B. Post-Confirmation Conversion/Dismissal

A creditor or any other party in interest may bring a motion to convert or dismiss the Case under 11 U.S.C. § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Case converted to a Chapter 7 after the Plan is confirmed, then all property that

had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Confirmation Order.

### C. Post-Confirmation UST Fees

The Reorganized Debtor through the Disbursing Agent shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date, if any, to the extent required by 28 U.S.C. § 1930(a)(6). The Reorganized Debtor may, in its discretion, seek to close the case post-confirmation.

### D. Risk Factors

With respect to recovery by creditors under the Plan, Debtor's ability to fully fund the Plan and the ultimate distribution to unsecured creditors, depends on a variety of factors, including whether Debtor is able to meet its projections. Debtor is unaware of any other specific risk factors that may ultimately affect distributions to creditors. Nevertheless, that does not mean that such risk factors do not exist. Each creditor must assess potential risks factors to determine how to vote on the Plan.

### E. Final Decree

The Reorganized Debtor, or another party as the Court shall designate in the Confirmation Order, may file a motion with the Court to obtain a final decree to close the case pursuant Federal Rule of Bankruptcy Procedure 3022 after confirmation of Plan, even if all payments to creditors have not been made.

## 9. Defined Terms and Rules of Construction

### A. Defined Terms

The following terms (which appear in this Plan as capitalized terms), when used in the Plan or the accompanying Disclosure Statement, have the meanings set forth below:

"**Administrative Claim**" means a Claim against a Debtor for administrative costs or

expenses that are allowable under Bankruptcy Code Section 503(b). These costs or expenses may include, without limitation: (a) actual costs or expenses that were incurred after the Petition Date and that were necessary to preserve a Debtor's Estate and operate a Debtor's business (such as employee wages); (b) Professional Fee Claims; (c) Administrative Tax Claims; (d) Ordinary Course Administrative Claims; or (e) other Administrative Claims (such as fees or charges assessed against a Debtor's Estate under 28 U.S.C. § 1930 or Rejected Lease Administrative Claims).

"**Administrative Tax Claim**" means a Claim against the Debtor asserted by a governmental unit for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

"**Allowed Claim**" means a Claim against a Debtor to the extent that:

(a) either: (1) a proof of Claim was timely Filed; or (2) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

(b) either: (1) the Claim is not a Disputed Claim; (2) the Claim is allowed by a Final Order; or (3) the Claim is allowed under the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any portion of a Claim that is satisfied or otherwise released during the course of this case is not an Allowed Claim.

"**Avoidance Action**" means an avoidance action under Bankruptcy Code Sections 544(b), 547, or 548.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, et seq.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means a day that is not a Saturday, Sunday, or legal holiday.

"**Case**" means the above-captioned Chapter 11 bankruptcy case pending in the Central District of California Bankruptcy Court – Case No. 8:26-bk-10033-MH.

"**Civil Action**" means any and all of the Debtor's and Estate's claims, causes of action, demands, rights, actions, suit, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, contingent or

noncontingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law of the Debtor or its Estate, including but not limited to (1) rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law, (2) the right to object to claims or equity interests, (3) claims pursuant to sections 362, 510, 542, or 543 of the Bankruptcy Code, (4) such claims and defenses as fraud, mistake, duress and usury, and (5) all Avoidance Actions and all rights and remedies under, relating to, or similar to sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code or any fraudulent transfer or preference law.

"**Claim**" means a claim as the term "claim" is defined in Bankruptcy Code Section 101(5).

"**Claiming Period**" means the checks issued by the Reorganized Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means a hearing where the Court considers Plan confirmation.

"**Confirmation Hearing Date**" means the first date on which the Court holds a hearing regarding Plan confirmation.

"**Confirmation Order**" means the Court order confirming the Plan under Bankruptcy Code Section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California or any other court that exercises jurisdiction over this case.

"**Debtor**" refers to Papas Piping Service, Inc..

"**Disbursing Agent**" means Joshua Teeple.

"**Disclosure Statement**" means this Chapter 11 Disclosure Statement describing Debtor's First Amended Chapter 11 Plan filed on August 11, 2026, as Dk. No. 149.

"**Disputed Claim**" means a Claim:

(a) As to which a proof of Claim was Filed or is deemed Filed under Bankruptcy Rule 3003(b)(1); and

(b) As to which the Reorganized Debtor or any party in interest entitled to do so has Filed a notice of designation as a Disputed Claim by the Claims Objection Deadline and as to which (a) that objection has not been waived on account of a failure to timely file and serve a claim objection; and (b) that objection has not been overruled, denied by a Final Order, or withdrawn.

Before the Claims Objection Deadline—and except to the extent that a Claim may have been allowed by a Final Order—a Claim is a Disputed Claim only to the extent that:

(a) The Claim amount specified in the Proof of Claim exceeds the Claim amount listed on the Debtor's Schedules;

(b) The Claim is listed on the Debtor's Schedules as disputed, unliquidated, or contingent; or

(c) The Claim’s priority or status as a Secured Claim or Unsecured Claim, as listed on the Proof of Claim, differs from the Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Debtor's Schedules.

Notwithstanding the above, to the extent that the Debtor disputes the amount owed pursuant to a Claim but do not dispute some portion of the Claim, the undisputed portion of the Claim shall be treated as an Allowed Claim and only the disputed portion shall be treated as a Disputed Claim.

“**Effective Date**” means the first business day which is at least fifteen (15) days following the date of the entry of the Confirmation Order, assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order.

“**Estate**” means the estate created in this bankruptcy Case pursuant to 11 U.S.C. § 541 for Papas Piping Service, Inc.

“**Filed**” means duly and properly filed with the Court and reflected on the Court's official docket.

“**Final Order**” means an order or judgment of the Court entered on the Court's docket:

(a) That has not been reversed, rescinded, stayed, modified, or amended;

(b) That is in full force and effect; and

(c) With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review,

rehearing, remand, or writ of certiorari is pending; or (2) any such an appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

"**FRBP**" means the Federal Rules of Bankruptcy Procedure.

"**FTB**" means the Franchise Tax Board.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Unsecured Claim, or a Secured Claim.

"**Impaired**" means that a creditor's legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor. A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.

"**Indemnified Person**" refers to the Reorganized Debtor, the Estate, or any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order.

"**IRS**" means the Internal Revenue Service.

"**MHW**" means Marshack Hays Wood LLP, Debtor's special litigation and reorganization counsel.

"**Ordinary-Course Administrative Claims**" means Administrative Claims, other than Non-Ordinary-Course Administrative Claims, based upon liabilities incurred by the Debtor and/or Estate in the ordinary course. Ordinary-Course Administrative Claims include fees or charges assessed against the Estate under 28 U.S.C. § 1930 or by the Court Clerk.

"**Person**" means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), or entity.

"**Petition Date**" means January 6, 2026, which is the date on which the Debtor filed this case.

"**Plan**" means Debtor's Chapter 11 plan as it may be subsequently amended.

"**Plan Proponent**" means Debtor.

"**Priority Unsecured Claim**" means an Allowed Claim entitled to priority against the Estate under Bankruptcy Code Sections 507(a)(3), 507(a)(4), or 507(a)(6).

"**Priority Tax Claim**" means an Allowed Claim entitled to priority against the Estate under Bankruptcy Code Section 507(a)(8).

"**Professional Fee Claim**" means:

(a) A Claim under Bankruptcy Code Sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on an Estate's behalf; or

(b) A Claim either under Bankruptcy Code Section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code Section 503(b)(3)(D) for expenses incurred in making a substantial contribution to an Estate.

"**Reorganized Debtor**" means the post-confirmation Debtor.

"**Schedules**" means the schedules and statement of financial affairs filed by the Debtor on January 6, 2026, as Dk. No. 1 and the Schedules filed on January 20, 2026, as Dk. No. 40.

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code Section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in that property or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code Section 506(a).

"**UST**" means the Office of the United States Trustee.

## 10. Rules of Construction

For purposes of this Plan, unless otherwise provided elsewhere herein, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing document, Exhibit or schedule filed or to be filed means such document or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to an entity as a holder of a Claim includes that entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and

Exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; and (viii) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan.

Dated: August 11, 2026

By: *Signature to follow*
WILLIAM BUTLER,
President, Chief Financial Officer, and Secretary of the Debtor, Pappas Piping Service, Inc.

Dated: August 11, 2026

By: *Signature to follow*
JOSHUA TEEPLE,
Chief Restructuring Officer, of the Debtor, Pappas Piping Service, Inc.

Dated: August 11, 2026

MARSHACK HAYS WOOD LLP

By: */s/ David A. Wood*
DAVID A. WOOD,
MATTHEW W. GRIMSHAW
AARON E. DE LEEST
SARAH R. HASSELBERGER
Attorneys for
Pappas Piping Service Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **DEBTOR-IN-POSSESSION'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 11, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR: Aaron E. De Leest** adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR: LIVE OAK BANKING COMPANY:** Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **US TRUSTEE: United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood** dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **August 11, 2026**, I delivered the document described above via email to Stretto, Debtor's claims and noticing agent, for service on all interested parties at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. Upon completion of the service by Stretto to Debtor, Stretto will file a Certificate of Service listing the address served.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
23832 ROCKFIELD BLVD., SUITE 245
LAKE FOREST, CA 92630-2884

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 11, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY - VIA PERSONAL DELIVERY**
HONORABLE MARK D. HOULE
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 11, 2026 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| Date | Printed Name | Signature |